1  Robert V. Prongay (SBN 270796)
     rprongay@glancylaw.com
2  Charles Linehan (SBN 307439)
     clinehan@glancylaw.com
3  Pavithra Rajesh (SBN 323055)
     prajesh@glancylaw.com
4  GLANCY PRONGAY & MURRAY LLP
   1925 Century Park East, Suite 2100
5  Los Angeles, California 90067
   Telephone: (310) 201-9150
6  Facsimile: (310) 201-9160

7  *Counsel for Plaintiff Leslie Kangas*

8  [Additional Counsel on Signature Page]

9                **UNITED STATES DISTRICT COURT**

10               **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | LESLIE KANGAS, Individually and on Behalf of All Others Similarly Situated, | Case No. **'23CV2082 LL    MMP** |
   |---|---|
13 | | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
   | Plaintiff, | |
14 | | |
   | v. | |
15 | | |
   | ILLUMINA, INC., FRANCIS A. DESOUZA, and JOHN THOMPSON, | |
16 | | |
17 | Defendant. | |

Plaintiff Leslie Kangas ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Illumina, Inc. ("Illumina" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Illumina; and (c) review of other publicly available information concerning Illumina.

**NATURE OF THE ACTION AND OVERVIEW**

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Illumina securities between May 1, 2023 and October 16, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Illumina is a genetic and genomic analysis company with a portfolio of integrated sequencing and microarray systems, consumables, and analysis tools designed to accelerate and simplify genetic analysis. In 2015, Illumina formed GRAIL, Inc. ("GRAIL") as a corporate subsidiary to develop a blood-based cancer detection test. After several capital financing rounds, Illumina spun off GRAIL in February 2017 and retained a stake of approximately 20%.

3. After GRAIL raised $1.9 billion through venture capital and strategic partners, Illumina announced plans to reacquire GRAIL in September 2020. The acquisition was completed on August 18, 2022 over the objection of the European Union's European Commission.

4. On August 10, 2023, after the market closed, Illumina revealed that the SEC was investigating the Company's statements regarding GRAIL, including "conduct and compensation of certain members of Illumina and GRAIL management."

5. On this news, the Company's stock price fell $4.64, or 2.5%, to close at $180.48 per share on August 11, 2023.

6. On October 17, 2023, Carl Icahn ("Icahn") filed a complaint against current and former directors of Illumina, alleging direct and derivative claims of breaches of fiduciary duty. The complaint was filed under seal, but according to *Reuters*, Icahn "told the 13D Monitor Active-Passive Investor Summit in New York on Tuesday that the lawsuit pertained to Illumina completing its acquisition of cancer diagnostic test maker Grail."

7. On this news, the Company's stock price fell $7.42, or 5.6%, to close at $124.45 per share on October 18, 2023.

8. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that certain of the Company's insiders had personal financial motives for acquiring GRAIL; (2) that, contrary to Illumina's attempts to discount Icahn's criticism, Icahn had accurately concluded that insiders' interests did not align with the Company's best interests; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in

substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14. Plaintiff Leslie Kangas, as set forth in the accompanying certification, incorporated by reference herein, purchased Illumina securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant Illumina is incorporated under the laws of Delaware with its principal executive offices located in San Diego, California. Illumina's common stock trades on the NASDAQ exchange under the symbol "ILMN."

16. Defendant Francis A. deSouza ("deSouza") was the Company's Chief Executive Officer ("CEO") from 2016 to June 11, 2023.

17. Defendant John Thompson ("Thompson") was the Chairman of the Company's Board of Directors from May 2021 to May 25, 2023 when he was voted off the Board at the 2023 annual stockholder meeting.

18. Defendants deSouza and Thompson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that

Case 3:23-cv-02082-LL-MMP   Document 1   Filed 11/10/23   PageID.5   Page 5 of 20

the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Illumina is a genetic and genomic analysis company with a portfolio of integrated sequencing and microarray systems, consumables, and analysis tools designed to accelerate and simplify genetic analysis. In 2015, Illumina formed GRAIL, Inc. ("GRAIL") as a corporate subsidiary to develop a blood-based cancer detection test. After several capital financing rounds, Illumina spun off GRAIL in February 2017 and retained a stake of approximately 20%.

20. After GRAIL raised $1.9 billion through venture capital and strategic partners, Illumina announced plans to reacquire GRAIL in September 2020. The acquisition was completed on August 18, 2022 over the objection of the European Union's European Commission ("EC").

21. On April 24, 2023, a post on *Nongaap Investing* entitled "Illumina: Malignant Governance" posited that Illumina insiders reaped a financial windfall "in excess of $500 million" from the divestiture and reacquisition of GRAIL. Tracing the changes in Illumina's equity stake of GRAIL, the author alleged that "up to 70 million Grail shares went to insiders, right out-of-the-gate."

22. On April 28, 2023, Carl C. Icahn ("Icahn"), who was the beneficial owner of approximately 1.4% of the outstanding shares of the Company as of February 17, 2023, issued an open letter to Illumina shareholders. Therein, he drew attention to the "Malignant Governance" blog post and called for Illumina to conduct an unbiased investigation into the issues, stating:

> Additionally, we read an interesting piece recently on Illumina, entitled "Malignant Governance," which asks the question that has been on the mind of virtually every long term shareholder with whom we have spoken: "***How much money did Illumina insiders (past and present) make from splitting-off and subsequently re-acquiring Grail?***" We have no idea if the allegations are true. However, based on what we <u>do</u> know of the past actions and lack of transparency exhibited by Illumina CEO Francis deSouza and the incumbent directors, we would not be surprised at all if some or all of the assertions turned out to be accurate. <u>We therefore implore the board to bring in an outside – and demonstrably independent – law firm and forensic accounting team to investigate and address these questions publicly, with enough time prior to the upcoming annual meeting to allow shareholders to take the results into account when casting their votes for directors.</u> We believe that an unbiased investigation into these murky issues is necessary and appropriate, given the fact that the director

4

election will in effect be a referendum on the entire GRAIL fiasco. Unfortunately, we believe that we will see pigs fly before we see such an investigation conducted by this board.

## Materially False and Misleading

## Statements Issued During the Class Period

23. The Class Period begins on May 1, 2023. On that day, Illumina issued a press release and shareholder letter in connection with the annual stockholder meeting to be held on May 25, 2023. Therein, the Company stated:[1]

### 2016 GRAIL spin-out from Illumina

An inflammatory blog post, repeated by Icahn, incorrectly suggested that Illumina spun out and reacquired GRAIL in order to enrich Illumina's directors and executives. Icahn himself, however, admits "We have no idea if the allegations are true."

The allegations are completely false.

The facts are as follows:

- ***None of Illumina's directors involved in either the decision to sign or the decision to close the GRAIL acquisition*** – including our former CEO and Executive Chairman Jay Flatley, our current CEO Francis deSouza and each of Illumina's current directors – ***has ever held any equity interests in GRAIL.***

- ***At the time of Illumina's various investment rounds in GRAIL, no individuals at Illumina were investors in GRAIL***. Illumina's employees, executive officers and Board members were not permitted to participate in GRAIL investment rounds and did not otherwise receive any GRAIL equity.

- Illumina, Inc. was the founder of GRAIL and individuals employed by Illumina moved to GRAIL as part of the spin-out in 2016. Those who moved to GRAIL terminated their relationship with Illumina at the time of transition and directors and employees who remained at Illumina could not invest in GRAIL nor did they receive any GRAIL equity.

- ***No executive officers of Illumina held GRAIL shares at the signing or closing of the GRAIL acquisition***, other than Alex Aravanis, who Illumina had hired from GRAIL, and Mostafa Ronaghi, Illumina's former CTO, who received GRAIL shares upon joining GRAIL's board in May 2020. The economic interests and relationships of these individuals with GRAIL were fully disclosed to, and known by, Illumina and its Board, and, consistent with good corporate governance practices, both were recused from any decisions to sign and close the GRAIL acquisition.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

24. On May 18, 2023, Illumina issued a press release in advance of the 2023 stockholder meeting, which contained a letter from Defendant Thompson, stating in relevant part:

> On conflicts of interest, there is an important question I would like to put to bed: "Did any Illumina directors have a financial interest in GRAIL at the time of the acquisition?" This question is not a matter of interpretation or explanation. The answer is simply no. ***As we have said before, no director who oversaw any part of the GRAIL transaction has ever owned any equity interest in GRAIL – that includes Jay Flatley, Francis deSouza, myself, and any member of the Board now or at the time of acquisition.*** In addition, no executive officers of Illumina held GRAIL shares at the signing or closing of the GRAIL acquisition (including indirect ownership interests such as through trusts, LP or GP stakes in investment vehicles, or through derivative securities), other than Alex Aravanis, who Illumina had hired from GRAIL, and Mostafa Ronaghi, Illumina's former CTO, who received GRAIL shares upon joining GRAIL's Board in May 2020. The economic interests and relationships of these individuals with GRAIL were fully disclosed to, and known by, Illumina and its Board, and, consistent with good corporate governance practices, both were recused from any decisions to sign and close the GRAIL acquisition. In addition, Illumina's Board engaged Goldman Sachs as its financial advisor in connection with the GRAIL acquisition and Goldman, acting exclusively for Illumina, delivered a customary fairness opinion to Illumina's Board immediately prior to Illumina entering into the GRAIL acquisition agreement.

25. The above statements identified in ¶¶ 23-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that certain of the Company's insiders had personal financial motives for acquiring GRAIL; (2) that, contrary to Illumina's attempts to discount Icahn's criticism, Icahn had accurately concluded that insiders' interests did not align with the Company's best interests; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

26. On August 10, 2023, after the market closed, Illumina revealed that the SEC was investigating the Company's statement regarding GRAIL. Specifically, in its Form 10-Q for the period ended July 2, 2023, Illumina stated:

> In July 2023, we were informed that the staff of the SEC was conducting an investigation relating to Illumina and was requesting documents and communications primarily related to Illumina's acquisition of GRAIL and certain statements and disclosures concerning GRAIL, its products and its acquisition, and related to the conduct and compensation of certain members of Illumina and GRAIL management, among other things. Illumina is cooperating with the SEC in this investigation.

27.     On this news, the Company's stock price fell $4.64, or 2.5%, to close at $180.48 per share on August 11, 2023.

28.     On October 17, 2023, Icahn filed a complaint against current and former directors of Illumina, alleging direct and derivative claims of breaches of fiduciary duty. The complaint was filed under seal, but according to *Reuters*, Icahn "told the 13D Monitor Active-Passive Investor Summit in New York on Tuesday that the lawsuit pertained to Illumina completing its acquisition of cancer diagnostic test maker Grail."

29.     On this news, the Company's stock price fell $7.42, or 5.6%, to close at $124.45 per share on October 18, 2023.

30.     Then, on October 20, 2023, after the market closed, Icahn filed a public version of his complaint against Illumina's insiders, alleging that "[t]he conflicted directors, poisoned by their personal stake in the matter, cannot be entrusted" with "matters of vital importance to Illumina." The complaint states that "Illumina's extraordinary decision to close the GRAIL Acquisition has long given rise to questions regarding whether Illumina's directors and officers had personal financial motives for closing the deal." The next sentence of the same paragraph is redacted from the public version of the complaint.  The complaint also refers to other "Undisclosed Matters," which are also redacted from public view. However, the complaint alleges that Illumina's insiders "Entrench[ed] Themselves on the Board Through Misleading Disclosures and Other Machinations."

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Illumina securities between May 1, 2023 and October 16, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Illumina's shares actively traded on the NASDAQ.

1  While the exact number of Class members is unknown to Plaintiff at this time and can only be
2  ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or
3  thousands of members in the proposed Class. Millions of Illumina shares were traded publicly
4  during the Class Period on the NASDAQ. Record owners and other members of the Class may be
5  identified from records maintained by Illumina or its transfer agent and may be notified of the
6  pendency of this action by mail, using the form of notice similar to that customarily used in securities
7  class actions.

8       33.    Plaintiff's claims are typical of the claims of the members of the Class as all members
9  of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that
10 is complained of herein.

11      34.    Plaintiff will fairly and adequately protect the interests of the members of the Class
12 and has retained counsel competent and experienced in class and securities litigation.

13      35.    Common questions of law and fact exist as to all members of the Class and
14 predominate over any questions solely affecting individual members of the Class. Among the
15 questions of law and fact common to the Class are:

16          (a)    whether the federal securities laws were violated by Defendants' acts as
17 alleged herein;

18          (b)    whether statements made by Defendants to the investing public during the
19 Class Period omitted and/or misrepresented material facts about the business, operations, and
20 prospects of Illumina; and

21          (c)    to what extent the members of the Class have sustained damages and the
22 proper measure of damages.

23      36.    A class action is superior to all other available methods for the fair and efficient
24 adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
25 damages suffered by individual Class members may be relatively small, the expense and burden of
26 individual litigation makes it impossible for members of the Class to individually redress the wrongs
27 done to them. There will be no difficulty in the management of this action as a class action.

28

**UNDISCLOSED ADVERSE FACTS**

37. The market for Illumina's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Illumina's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Illumina's securities relying upon the integrity of the market price of the Company's securities and market information relating to Illumina, and have been damaged thereby.

38. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Illumina's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Illumina's business, operations, and prospects as alleged herein.

39. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Illumina's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

40. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Illumina's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Illumina, their control over, and/or receipt and/or modification of Illumina's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Illumina, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Illumina's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Illumina's securities traded at artificially inflated prices during the Class Period. On May 24, 2023, the Company's share price closed at a Class Period high of $212.65 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Illumina's securities and market information relating to Illumina, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Illumina's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Illumina's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Illumina and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45. At all relevant times, the market for Illumina's securities was an efficient market for the following reasons, among others:

(a) Illumina shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Illumina filed periodic public reports with the SEC and/or the NASDAQ;

(c) Illumina regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Illumina was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for Illumina's securities promptly digested current information regarding Illumina from all publicly available sources and reflected such information in Illumina's share price. Under these circumstances, all purchasers of Illumina's securities during the Class Period suffered similar injury through their purchase of Illumina's securities at artificially inflated prices and a presumption of reliance applies.

47. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Illumina who knew that the statement was false when made.

# FIRST CLAIM

## Violation of Section 10(b) of The Exchange Act and

## Rule 10b-5 Promulgated Thereunder

## Against All Defendants

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Illumina's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Illumina's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Illumina's financial well-being and prospects, as specified herein.

53. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Illumina's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the

statements made about Illumina and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.  Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.  Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Illumina's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Illumina's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Illumina's securities during the Class Period at artificially high prices and were damaged thereby.

57. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Illumina was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Illumina securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

60. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61. Individual Defendants acted as controlling persons of Illumina within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Illumina and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: November 10, 2023

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Pavithra Rajesh*
Robert V. Prongay
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE PORTNOY LAW FIRM**
Lesley Portnoy
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: 310-692-8883
lesley@portnoylaw.com

*Counsel for Plaintiff Leslie Kangas*

CLASS ACTION COMPLAINT
17

## SWORN CERTIFICATION OF PLAINTIFF
## ILLUMINA, INC. (ILMN) SECURITIES LITIGATION

I, Leslie Kangas, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2. I did not purchase the Illumina, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Illumina, Inc. securities during the period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/7/2023
Date

Leslie Kangas
(DocuSigned by: 97E37C59E6A24D9...)

**Leslie Kangas' Transactions in Illumina, Inc. (ILMN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/2/2023 | Bought | 42 | $207.1500 |
| 10/19/2023 | Sold | -42 | $120.2718 |