**MOTLEY RICE LLC**
GREGG S. LEVIN (admitted *pro hac vice*)
glevin@motleyrice.com
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000

*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE KANGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., FRANCIS A. DESOUZA, and JOHN THOMPSON,<br><br>Defendants. | Case No. 3:23-cv-02082-LL-MMP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO MOTIONS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date: February 13, 2024<br>Courtroom: 5D<br>Judge: Hon. Linda Lopez |

ANAND ROY, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

v.

ILLUMINA, INC., FRANCIS A. DESOUZA, and JOHN THOMPSON,

                Defendants.

Case No. 3:23-cv-02327-BEN-BGS

LOUISIANA SHERIFFS' PENSION & RELIEF FUND, on behalf of itself and all others similarly situated,

                Plaintiff,

v.

ILLUMINA, INC., FRANCIS A. DESOUZA, JOHN THOMPSON, SAM A. SAMAD, and JOYDEEP GOSWAMI,

                Defendants.

Case No. 3:23-cv-02328-LL-MMP

KBC Asset Management NV ("KBC") respectfully submits this memorandum of points and authorities in further support of its motion for consolidation of the above-referenced actions, appointment of lead plaintiff, and approval of its selection of lead counsel, and in response to the competing motions.  *See* ECF No. 8 (Camelot Event Driven Fund, A Series of Frank Funds Trust ("Camelot")); ECF No. 9 (KBC); ECF No. 10 (Wayne County Employees' Retirement System, Macomb County Employees' Retirement System, Macomb County Retiree Health Care Fund, Macomb County Intermediate Retirees Medical Benefits Trust, and Jackson County Employees' Retirement System (together, the "Retirement Funds")); and ECF No. 12 (Universal-Investment-Gesellschaft mbH ("Universal-Investment") and UI BVK Kapitalverwaltungsgesellschaft mbH ("UI BVK" and, with Universal-Investment, "Universal") and ACATIS Investment Kapitalverwaltungsgesellschaft mbH ("ACATIS")).[1]

## ARGUMENT

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), district courts are to adopt a presumption that the movant with the largest financial interest in the relief sought by the class is the "most adequate plaintiff" ***if that movant makes a satisfactory showing that it also satisfies the requirements of Fed. R. Civ. P. 23***.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### A.   Did BLBG Provide the *Symantec* Order to the "Decision-Makers"?

As a preliminary matter, none of the individuals from Universal-Investment, UI BVK, or ACATIS attested in their Joint Declaration (ECF No. 12-5) that their proposed lead counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLBG"), submitted Judge Alsup's Order in *SEB Investment Management AB v. Symantec*

---

[1]   Camelot filed a Notice of Non-Opposition on January 30, 2024, noting it "does not oppose the lead plaintiff motions of movants with larger financial interests."  ECF No. 22.

MEM. OF POINTS & AUTH. IN RESP. TO MOTS.
FOR APPOINTMENT AS LEAD PL.
CASE NO. 3:23-CV-02082-LL-MMP

*Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ("*Symantec* Order") to "the attention of the assigned judge and the ***decision-maker for the lead plaintiff who is to select counsel***." *Id.* at *2 (emphasis added). In fact, they did not mention it at all.[2]

By way of background, in the *Symantec* Order, Judge Alsup found that BLBG had misled the court regarding matters relevant to its appointment as class counsel in a then-pending securities fraud class action. 2021 WL 1540996, at *1. Judge Alsup found that BLBG's employment relationship with the individual representative of the lead plaintiff tasked with supervising BLBG raised concerns about an improper "pay to play" quid pro quo between BLBG and the lead plaintiff representative. *Id.* Consequently, Judge Alsup ordered BLBG to notify all class members of the underlying issues at its own cost and further ordered that, for the next three years, BLBG "must bring this order to the attention of the assigned judge and the decision-maker for the lead plaintiff who is to select counsel" in cases in which BLBG seeks appointment as class counsel. *Id.* at *2.

The Court should ask: Why does the Joint Declaration not mention the *Symantec* Order? Was it provided to the "***decision-maker***" for each of Universal-Investment, UI BVK, and ACATIS? If so, who are those decision-makers? When were they provided with a copy? If it was not provided to the "decision-maker," but instead only a client contact, why not?[3]

These concerns are far from speculative or hypothetical. On at least two prior occasions, BLBG has failed to comply with Judge Alsup's unambiguous directive.

---

2    A copy of the *Symantec* Order is attached at ECF No. 12-9.

3    While Universal and ACATIS's memorandum of law—written by BLBG—states that "Universal and ACATIS are aware of the order, and affirm their selection of Bernstein Litowitz as proposed Lead Counsel," ECF No. 12-1 at 15 n.7, that is not the question. The question is are the "decision-makers" aware of it?

In *Nykredit Portefølje Administration A/S v. ProPetro Holding Corp.*, Case No. MO:19-CV-00217-DC (W.D. Tex. July 22, 2022), ECF No. 144, defendants opposed class certification on the basis BLBG and its co-counsel

> *acknowledged that their prior declaration was false because they never provided Judge Alsup's order to three of the Plaintiffs* (OPPRS, OLERS and OCERS); did not provide the order to OFPRS in this case; and that none of the Oklahoma Funds had considered the order or reaffirmed their selection of counsel at the time the initial declaration was filed.

*Id.* at 8 (emphasis added). Accordingly, it "appear[ed] that BLBG['s] . . . intention from the outset was merely to notify their individual contacts at each Plaintiff that they planned to represent to the Court that their selection as counsel had been reaffirmed, without any such action being taken by each Plaintiffs' decisionmakers." *Id.* A few weeks later, on August 11, 2022, the parties reached an agreement to settle for just $30 million, before the court could rule on the motion for class certification. Will the class suffer a similar fate here after the Universal and ACATIS depositions?

A recent decision from the Delaware Court of Chancery is equally troubling. In *In re AMC Entertainment Holdings, Inc. Stockholder Litigation*, 2023 WL 5165606 (Del. Ch. Aug. 11, 2023), BLBG once again flouted Judge Alsup's command. There, the Vice Chancellor held that BLBG "did not notify this Court of that [*Symantec*] decision when it sought appointment as lead counsel or in Plaintiffs' opening brief in support of the Proposed Settlement" and rightly found that BLBG's "lack of candor to the Court is unacceptable." *Id.* at *39.[4]

This litigation is likely to last for years. If these issues cannot be resolved conclusively *now*, the Court should deny Universal and ACATIS's motion as it will only become a sideshow as the litigation proceeds. Indeed, that has already occurred

---

[4]     While KBC serves as a lead plaintiff with investors represented by BLBG and its counsel serves as co-lead counsel with BLBG in other actions, those actions commenced before the *AMC* decision.

in *ProPetro*, where the defendants raised this issue. *See In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (courts may exercise "maximum flexibility to select a lead plaintiff who will best represent the interests of the class and exercise control of the litigation.").

## B.    The *Louisiana Sheriffs* Complaint Lacks Plausibility

Regarding the complaints on file, on November 10, 2023, Plaintiff Leslie Kangas filed the first of the three above-captioned related actions, asserting a class period of May 1, 2023 through October 16, 2023. The movants' respective claimed losses under this class period are as follows:[5]

| | |
|---|---|
| Camelot | $248,794 |
| **KBC** | **$3,261,224** |
| The Retirement Funds | $827,286 |
| Universal-Investment, UI BVK, and ACATIS | $2,618,438 |

On December 21, 2023, Plaintiff Anand Roy filed the second of the above-captioned related actions, asserting a class period of August 18, 2021 through October 16, 2023. The movants' respective claimed losses under this class period are as follows:

| | |
|---|---|
| Camelot | $248,794 |
| KBC | $7,967,196 |
| The Retirement Funds | $2,991,006 |
| **Universal-Investment, UI BVK, and ACATIS** | **$19,790,959** |

---

[5]    The following tables present the claimed loss where a movant provided one for the class period in question and a loss calculated based on the movant's trade data where it did not. All losses use or purport to use last-in first-out (LIFO) accounting and all figures are rounded to the nearest dollar.

Also on December 21, 2023, Plaintiff Louisiana Sheriffs' Pension and Relief Fund ("Louisiana Sheriffs") filed the third of the above-captioned related actions, asserting a class period of September 21, 2020 through November 9, 2023.[6] The movants' respective claimed losses under this class period are as follows:

| | |
|---|---|
| Camelot | $260,648 |
| KBC | $16,736,945 |
| The Retirement Funds | $4,922,451 |
| **Universal-Investment, UI BVK, and ACATIS** | **$35,084,716** |

Movants Universal and ACATIS, represented by the same counsel as the Louisiana Sheriffs, BLBG, claim the largest losses under the *Roy* and *Louisiana Sheriffs* class periods, while KBC claims the largest loss under the class period asserted in *Kangas*. In such circumstances, where there are multiple class periods, courts typically apply the longest class period when determining which movant claims the largest loss. *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("The complaints filed against Fusion-io thus assert different class periods. For purposes of appointing a lead plaintiff, the longest class period governs."); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) ("courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period"). Universal and ACATIS are

---

6     While BLBG filed the complaint on behalf of the Louisiana Sheriffs, that plaintiff has apparently been jettisoned now that BLBG has been retained by Universal and ACATIS, presumably because they claim larger losses than the Louisiana Sheriffs and thus increase the likelihood that BLBG will be appointed as lead counsel.

MEM. OF POINTS & AUTH. IN RESP. TO MOTS.
FOR APPOINTMENT AS LEAD PL.
CASE NO. 3:23-CV-02082-LL-MMP

thus the presumptive lead plaintiffs under the class period in *Louisiana Sheriffs*.[7]

KBC wishes to apprise the Court of its concerns that the class period in *Louisiana Sheriffs* may have been artificially extended by counsel for the Louisiana Sheriffs (BLBG, the same counsel for Universal and ACATIS) in order to assert inflated losses for Universal and ACATIS at the lead plaintiff stage. To be sure, KBC also benefits from the expanded class period in the *Louisiana Sheriffs* action, but is skeptical of both the class period and allegations therein.[8] While KBC's counsel had concerns about the *Louisiana Sheriffs* class period prior to the filing of the motions, those concerns—and the likely motivations for the pleading of that class period—were confirmed following an analysis of Universal and ACATIS's losses under the respective class periods.

A review of the stock drops (which determine the movants' asserted losses) pleaded during the period between the start of the *Louisiana Sheriffs* (longest) class period and the start of the *Roy* (second longest) class period demonstrates those concerns. In particular, the *Louisiana Sheriffs* complaint alleges:

> The truth began to emerge on March 30, 2021, when the U.S. Federal Trade Commission (the "FTC") sued in U.S. Federal Court to block Illumina's acquisition of GRAIL. In response, Illumina published a press release stating it "disagrees with, and will oppose, the [FTC]'s challenge to its previously announced acquisition of GRAIL." On this news, the price of Illumina common stock declined nearly 6.6%, from a closing price of $395.00 per share on March 29, 2021, to a closing price of $368.96 on March 30, 2021.

---

[7]   Interestingly, in expanding the class period in *Louisiana Sheriffs*, BLBG has in fact **decreased** the losses of certain of Universal-Investment's funds. Were those funds informed of the impact of that filing, or do they just have to like it or lump it? Regardless, because each of Universal-Investment's funds "are considered separate estates," ECF No. 12-5 at ¶ 5, it appears BLBG has already jeopardized the interests of several of one of its client's funds. What hope for the passive class members?

[8]   As noted *infra* at 9, there is a risk "to blindly accepting the longest class period."

MEM. OF POINTS & AUTH. IN RESP. TO MOTS.
FOR APPOINTMENT AS LEAD PL.
CASE NO. 3:23-CV-02082-LL-MMP

*Louisiana Sheriffs* Compl. ¶ 6.  This stock drop (and thus alleged damages) appears completely untethered to the theory of fraud articulated by the Louisiana Sheriffs (that Defendants misled investors regarding the reasons for the GRAIL transaction), and no fair reading of this announcement shows any partial disclosure of Defendants' undisclosed interests in Illumina.  *See id.* ¶ 31 (alleging statements prior to the March 30, 2021 stock drop actionable because "(i) certain Illumina insiders had personal financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests.").  Indeed, the FTC did not sue to block the transaction because "certain Illumina insiders had personal financial motives for acquiring GRAIL" or because "acquiring GRAIL was not in the Company's best interests."  Rather, the FTC initiated litigation in order to block Illumina's purchase of GRAIL because "the proposed acquisition will diminish innovation in the U.S. market for MCED tests."[9]  In other words, that "corrective disclosure" did not "correct" any previous statement.  The basis for damages associated with that corrective disclosure is thus, to put it charitably, speculative and untethered to the fraud alleged therein.

Similarly, the *Louisiana Sheriffs* complaint alleges that:

> [R]ight before the market closed on July 13, 2021, *Reuters* published an article reporting that European Union regulators were demanding concessions from GRAIL as part of its review of the acquisition.  This news caused the price of Illumina common stock to decline over 4.6%, from a closing price of $483.52 per share on July 13, 2021, to a closing price of $460.92 per share on July 14, 2021.

*Louisiana Sheriffs* Compl. ¶ 7.  Again, this disclosure does not correct any of the alleged misstatements before that date that "(i) certain Illumina insiders had personal

---

9    FTC Challenges Illumina's Proposed Acquisition of Cancer Detection Test Maker Grail,   https://www.ftc.gov/news-events/news/press-releases/2021/03/ftc-challenges-illuminas-proposed-acquisition-cancer-detection-test-maker-grail.

MEM. OF POINTS & AUTH. IN RESP. TO MOTS.
FOR APPOINTMENT AS LEAD PL.
CASE NO. 3:23-CV-02082-LL-MMP

financial motives for acquiring GRAIL; and (ii) acquiring GRAIL was not in the Company's best interests." *Id.* ¶ 31.

As another example, the *Louisiana Sheriffs* complaint alleges that "[a]fter the market closed on August 18, 2021, Illumina announced that it had closed its acquisition of GRAIL.   On this news, the price of Illumina common stock declined nearly 7.9%, from a closing price of $510.61 on August 18, 2021, to a closing price of $470.36 on August 19, 2021." *Louisiana Sheriffs* Compl. ¶ 8.  Once again, this is untethered to the pertinent theory of fraud alleged therein, as opposed to representing the market's negative reaction to the transaction.

The U.S. Supreme Court's recent holding in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 141 S. Ct. 1951 (2021), exemplifies the concerns here when one considers the nature of the purportedly false statements and "corrective" disclosures in the September 21, 2020 to August 18, 2021 time period pleaded only by the Louisiana Sheriffs.  There, the Supreme Court held that the "final inference—that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure." *Id.* at 1961. So too here. *Compare Louisiana Sheriffs* Compl. ¶ 29 (alleging as false the October 29, 2020 statement "[w]e believe our planned acquisition of GRAIL will accelerate a new era of cancer detection, transforming cancer survivability and opening up the largest clinical application of genomics we've seen."), *with id.* ¶ 6 (alleging that "[t]he truth began to emerge on March 30, 2021, when the [FTC] sued in U.S. Federal Court to block Illumina's acquisition of GRAIL.").[10]

*Villare v. ABIOMED, Inc.*, 2020 WL 3497285 (S.D.N.Y. June 29, 2020), is

---

[10]   As discussed above, the FTC sued to block Illumina's purchase of GRAIL because "the proposed acquisition will diminish innovation in the U.S. market for MCED tests."

MEM. OF POINTS & AUTH. IN RESP. TO MOTS. FOR APPOINTMENT AS LEAD PL. CASE NO. 3:23-CV-02082-LL-MMP

instructive of the gamesmanship that can occur when, as is likely the case here, class periods are improperly extended. There, the court held that a movant "persuasively argue[d] that there is a risk that the longer class period is a product of gamesmanship. . . . Tellingly, Barry's certification of loss indicates that but for the expanded period, his loss would plummet to $38,654.42 from $222,251.60. . . . Therefore, the Court finds, on balance, that the shorter class period—January 31, 2019 through July 31, 2019—should be used for purposes of the lead-plaintiff analysis." *Id.* at \*5. *See also Bodri v. GoPro, Inc.*, 2016 WL 1718217, at \*2 n.2 (N.D. Cal. Apr. 28, 2016) (recognizing "'[t]here is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest'" and declining to use longer class period in assessing lead plaintiff motions (citing *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010))); *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at \*3 (S.D.N.Y. May 5, 2008) (assessing "plausibility" of two class periods at lead plaintiff stage and finding longer period "not plausible" because the complaint "pleads no facts that make th[e] allegation[s] plausible"); *MGIC Inv.*, 256 F.R.D. at 625 ("simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination").

A manipulated class period may be the work of counsel whose interests do not lie with the class as a whole—a very relevant fact at this stage. *See In re Diamond Food, Inc., Sec. Litig.*, 295 F.R.D. 245, 256 (N.D. Cal. 2013) ("The lead plaintiff has a fiduciary duty to the class to select appropriate counsel who will diligently represent the interests of the class, not those of counsel, or of MSPERS alone."); *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 482 (N.D. Cal. 2001) ("if a representative plaintiff does not select competent counsel, he cannot meet the adequacy requirement of FRCP 23 and the PSLRA."). Indeed, just last summer, in

MEM. OF POINTS & AUTH. IN RESP. TO MOTS. FOR APPOINTMENT AS LEAD PL. CASE NO. 3:23-CV-02082-LL-MMP

*AMC*, the Delaware Court of Chancery noted that BLBG "seemed at times to forget its role as counsel for the putative class," that the issues "were a net negative on the progress of this litigation," and concluded that BLBG has "burnt reputational capital." 2023 WL 5165606, at \*39. The same may be true here, and the Court should treat its arguments accordingly given Judge Alsup found its "explanation to the Court proved misleading." *Symantec* Order, 2021 WL 1540996, at \*2.

KBC would have preferred not to have had to submit this brief. Indeed, it has filed non-oppositions when other movants in securities actions have claimed greater losses. Unfortunately, it feels compelled to submit the foregoing to assist the Court with its analysis. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 215 (D.D.C. 1999) ("Congress envisioned that courts still would play an independent, gatekeeping role to implement the PSLRA."); *In re Versata, Inc., Sec. Litig.*, 2001 WL 34012374, at \*3 (N.D. Cal. Aug. 20, 2001) ("Although the procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are most capable of representing the interests of the class members." (internal quotation marks omitted)).

## CONCLUSION

In conclusion, should the Court find Universal and ACATIS are in any way inadequate or atypical to serve as lead plaintiffs, or its proposed counsel unsuitable based on the foregoing, KBC, as the movant with the second largest loss, would be the presumptive lead plaintiff and stands ready and willing to serve in that role.[11]

---

11    As discussed in its opening memorandum, KBC also readily satisfies the requirements of Rule 23 at this stage. *See* ECF No. 9-1 at 7-10.

Dated: January 30, 2024

Respectfully submitted,[12]

**MOTLEY RICE LLC**

By: */s/ Christopher F. Moriarty*
GREGG S. LEVIN
(admitted *pro hac vice*)
glevin@motleyrice.com
CHRISTOPHER F. MORIARTY
(admitted *pro hac vice*)
cmoriarty@motleyrice.com
ANDREW P. ARNOLD
(*pro hac vice* forthcoming)
aarnold@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel:  (843) 216-9000
Fax: (843) 216-9450

*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

---

[12]    KBC was originally represented by Saxena White P.A. as local counsel.  KBC will file a notice of substitution of local counsel as soon as possible.

MEM. OF POINTS & AUTH. IN RESP. TO MOTS. FOR APPOINTMENT AS LEAD PL.
CASE NO. 3:23-CV-02082-LL-MMP