# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| PEMBROKE PINES FIREFIGHTERS & POLICE OFFICERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ABBOTT LABORATORIES, ROBERT B. FORD, ROBERT E. FUNCK, JR., JOSEPH MANNING, and CHRISTOPHER J. CALAMARI,<br><br>        Defendants. | Case No. 1:22-cv-04661<br><br>District Judge Steven C. Seeger |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**KBC ASSET MANAGEMENT NV AND QUONIAM ASSET MANAGEMENT GMBH**
**FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ...................................................................................................................... 5

I.    KBC and Quoniam Should Be Appointed Lead Plaintiff ................................................. 5

    A.    KBC and Quoniam's Motion is Timely ................................................................. 6

    B.    KBC and Quoniam Have the Largest Financial Interest of Any Movant ............... 6

    C.    KBC and Quoniam Satisfy the Requirements of Rule 23 ...................................... 6

        1.    KBC and Quoniam Are Typical ................................................................. 7

        2.    KBC and Quoniam Are Adequate ............................................................. 8

        3.    KBC and Quoniam Are Precisely the Type of Lead Plaintiff Envisioned By the PSLRA ......................................................................... 11

II.    The Court Should Approve KBC and Quoniam's Selection of Counsel ......................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

CASES PAGE(S)

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................7

*Bang v. Acura Pharms., Inc.*,
2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ...............................................................7

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) .....................................................10

*Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*,
2012 WL 5471110 (N.D. Ill. Nov. 9, 2012) .....................................................12, 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..............................................................................7, 11

*City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*,
2014 WL 4799659 (D. Colo. Sept. 26, 2014).......................................................10

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ...............................................2, 9, 11

*Faris v. Longtop Fin. Techs. Ltd.*,
2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ..........................................................10

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019)...........................................................11

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
2017 WL 4297450 (D.S.C. Sept. 28, 2017)............................................................9

*Leventhal v. Chegg, Inc.*,
2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) .........................................................8

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
2009 WL 1458234 (D. Minn. May 26, 2009)...................................................10, 15

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
2022 WL 3571995 (N.D. Cal. July 26, 2022)..........................................................8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) .......................................................15

*Sokolow v. LJM Funds Mgmt., Ltd.*,
2018 WL 3141814 (N.D. Ill. June 26, 2018).....................................................7, 13

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) ..........................................................................9

*In re Versata, Inc. Sec. Litig.*,
    2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ...................................................................13

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)..................................................................................................8

**STATUTES**

15 U.S.C. § 78u-4 *et seq.* ..................................................................................... *passim*

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...............................11

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679....................................................11

KBC Asset Management NV ("KBC") and Quoniam Asset Management GmbH ("Quoniam") respectfully submit this memorandum of law in support of their Motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order:  (i) appointing KBC and Quoniam as Lead Plaintiff; (ii) approving KBC and Quoniam's selection of Motley Rice LLC ("Motley Rice") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") to serve as Lead Counsel for the class; and (iii) granting any further relief as the Court may deem just and proper.

## INTRODUCTION

On August 31, 2022, plaintiff Pembroke Pines Firefighters & Police Officers Pension Fund ("Pembroke Pines"), though its counsel, Bernstein Litowitz, filed the above-captioned action on behalf of a proposed class consisting of all persons and entities who purchased or otherwise acquired the publicly traded common stock of Abbott Laboratories ("Abbott" or the "Company") between February 19, 2021, and June 8, 2022, both dates inclusive (the "Class Period").  This action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Abbott and certain of its senior executives (collectively, "Defendants").  Specifically, the complaint currently on file alleges that Defendants made materially false and misleading statements and/or failed to disclose material adverse facts concerning the safety and salability of Abbott's infant formula amid multiple violations of federal and state health and safety regulations at the Company's Sturgis, Michigan facility.  This action further alleges that Defendants put profitability ahead of children's safety and that Abbott engaged in a scheme to maximize revenues and inflate the Company's stock price while disregarding, and then concealing, lapses in safety protocols that ultimately were linked to serious infant illnesses

and even deaths. When the fraud was revealed to the investing public, the market value of Abbott common stock declined, damaging class members.

The PSLRA directs courts to appoint as lead plaintiff the movant with the "largest financial interest" in the relief sought by the class that also meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") at this stage in the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). KBC and Quoniam respectfully submit that, pursuant to the PSLRA, they should be appointed to serve as Lead Plaintiff on behalf of the putative class. KBC and Quoniam have the largest financial interest of any movant they know to be before the Court, their funds having suffered losses of approximately $10.1 million on a last-in, first-out ("LIFO") basis on their purchases of over 2 million shares of Abbott common stock during the Class Period.[1]

In addition to asserting the largest financial interest, KBC and Quoniam also satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the class and because they will fairly and adequately represent the class. Moreover, KBC and Quoniam—sophisticated institutional investors with a significant financial interest in the litigation—are the prototypical Lead Plaintiff envisioned by Congress when enacting the PSLRA and their appointment would therefore fulfill the important legislative purpose behind the statute. Further, as set forth in greater detail in their Joint Declaration submitted herewith, KBC and Quoniam fully understand the Lead Plaintiff's obligations to the class under the PSLRA, and are willing and able

---

[1] KBC's and Quoniam's PSLRA-required Certifications are provided as Exhibit A to the Declaration of Avi Josefson ("Josefson Decl."), submitted herewith. In addition, charts setting forth calculations of KBC's and Quoniam's losses are provided as Exhibit B to the Josefson Decl. All references to "Ex. __" are to the exhibits accompanying the Josefson Decl. Prior to filing this Motion, KBC and Quoniam received assignments of their funds' claims. *See* Ex. C (declarations of assignment). Although most courts consider a movant's LIFO loss when assessing financial interest at the lead plaintiff selection stage, in the interest of transparency, KBC and Quoniam suffered losses of approximately $20.7 million on a first-in, first-out ("FIFO") basis. *See* Exs. A & B; *see also City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *5 (N.D. Ill. Apr. 18, 2012) (noting "courts in this district and others have preferred LIFO over FIFO as the appropriate method to calculate losses").

2

to undertake the responsibilities of the Lead Plaintiff and to work collaboratively to ensure the vigorous prosecution of this action.[2]

Finally, KBC and Quoniam have retained experienced and competent counsel to represent the class. Motley Rice and Bernstein Litowitz have substantial experience prosecuting securities class actions and a history of obtaining significant recoveries for investors. In addition, Bernstein Litowitz developed and filed the only action asserting these claims against Defendants. Accordingly, KBC and Quoniam respectfully request that the Court approve their selection of Motley Rice and Bernstein Litowitz to serve as Lead Counsel for the class.

### FACTUAL BACKGROUND

Abbott provides a broad line of health care products, with four reporting segments: Established Pharmaceutical Products, Diagnostic Products, Nutritional Products, and Medical Devices. Abbott's Nutritional Products segment manufactures various forms of infant formula, including formula sold under the brand names Similac, Alimentum, and EleCare.

The complaint currently on file alleges that, throughout the Class Period, Defendants made numerous materially false and misleading statements and omitted material information concerning what the U.S. Food and Drug Administration ("FDA") called "egregiously unsanitary" conditions at the Company's manufacturing facility in Sturgis, Michigan, which, prior to February 2022, produced approximately one-sixth of the United States' infant formula. Specifically, Defendants repeatedly informed investors about the safety and salability of Abbott's infant formula brands and their contribution to the Company's sales and revenue growth. In truth, Abbott's Sturgis facility was in flagrant violation of multiple federal and state health and safety regulations. Those

---

[2] The Joint Declaration of Bart Elst, Dr. Carsten Fischer, and Jochen Riechwald in Support of the Motion of KBC Asset Management NV and Quoniam Asset Management GmbH for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel ("Joint Declaration") is attached as Exhibit D to the Josefson Decl.

violations, which Defendants willfully or recklessly concealed from investors, put Abbott's infant formula business in jeopardy and exposed the Company to the risk of severe regulatory action, including the recall of its products and closure of the Sturgis facility. No later than February 2021 and throughout the Class Period, Defendants received direct warnings, communications, FDA inspection reports, and consumer complaints identifying in detail the safety and regulatory violations that were rampant at the Sturgis facility. As a result of Defendants' misrepresentations and omissions, Abbott common stock traded at artificially inflated prices during the Class Period.

On February 17, 2022, the FDA publicly announced that it was investigating four consumer complaints of infant illness related to Abbott powdered infant formula produced in Sturgis. The FDA stated that it had initiated an onsite inspection at the facility, and to date had found several positive contamination results from environmental samples for a bacteria, Cronobacter sakazakii ("Cronobacter"), which has been linked to infant illnesses and death. The FDA also revealed that its review of Abbott's internal records indicated "environmental contamination with Cronobacter and the firm's destruction of product due to the presence of Cronobacter." As a result of these disclosures, the price of Abbott common stock declined $3.79 per share, or 3.14%.

Shortly thereafter, Abbott was forced to close the Sturgis plant due to the severe safety problems. This closure triggered a widespread formula shortage across the United States. One month later, on March 22, 2022, the FDA released reports from its three inspections of the Sturgis facility conducted from 2019 through 2022. Those reports indicated that Abbott (i) failed to establish process controls "designed to ensure that infant formula does not become adulterated due to the presence of microorganisms in the formula or in the processing environment"; and (ii) failed to "ensure that all surfaces that contacted infant formula were maintained to protect infant formula

4

from being contaminated by any source." On this news, the price of Abbott common stock declined $4.97 per share, or approximately 4.0%.

On April 28, 2022, a redacted copy of a whistleblower complaint that had been sent to the FDA in October 2021 was made public. Among other things, the whistleblower complaint revealed that the issues disclosed in February and March 2022 were known to Abbott's management far earlier. Upon release of the whistleblower complaint, the price of Abbott common stock declined $4.51 per share, or approximately 3.8%.

Then, on June 8, 2022, investors learned that, contrary to the Company's repeated denials, Abbott was aware of the whistleblower's formal allegations in early 2021 when it received a copy of an earlier complaint. In response, the price of Abbott common stock declined $4.17 per share, or approximately 3.5%.

## ARGUMENT

### I.      KBC and Quoniam Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service "[n]ot later than 20 days after the date on which the complaint is filed." 15 U.S.C. § 78u-4(a)(3)(A)(i). This notice must advise class members of: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the proposed class period; and (iv) the right to move the court to be appointed lead plaintiff within 60 days of the notice's publication. *Id.*

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa)    has either filed the complaint or made a motion in response to a notice . . . ;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated below, KBC and Quoniam meet each of these requirements and therefore should be appointed Lead Plaintiff.

### A.    KBC and Quoniam's Motion is Timely

On August 31, 2022, plaintiff Pembroke Pines filed this action in this District, asserting claims for violations of Sections 10(b) and 20(a) of the Exchange Act against Defendants. That same day, counsel for Pembroke Pines, Bernstein Litowitz, published a notice on *Business Wire* alerting investors to the pendency of this action and the claims asserted therein, and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is October 31, 2022. *See* ECF No. 9-1. Accordingly, KBC and Quoniam's motion is timely.

### B.    KBC and Quoniam Have the Largest Financial Interest of Any Movant

KBC's and Quoniam's funds suffered substantial losses of approximately $10.1 million on a LIFO basis on their purchases of over 2 million shares of Abbott common stock during the Class Period. *See* Exs. A & B. KBC and Quoniam also held Abbott shares they purchased during the Class Period through all corrective disclosures. *See id.* Accordingly, as a qualified movant with the largest financial interest, KBC and Quoniam are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### C.    KBC and Quoniam Satisfy the Requirements of Rule 23

In addition to claiming the largest financial interest, KBC and Quoniam also satisfy the requirements of Rule 23. Courts in this District have held that "[t]he initial Rule 23 analysis focuses on 'whether the movant has made a *prima facie* showing of typicality and adequacy'" and

6

that the court's inquiry "'need not be extensive.'" *Bang v. Acura Pharms., Inc.*, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11, 2011) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)).

The adequacy and typicality requirements "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (citation omitted). Typicality exists when the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Cendant*, 264 F.3d at 264-65. In determining whether the movant satisfies the adequacy requirement, courts consider whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Id.* (citation omitted). KBC and Quoniam satisfy both requirements.

### 1. KBC and Quoniam Are Typical

During the Class Period, KBC's and Quoniam's funds purchased a substantial amount of Abbott common stock at prices artificially inflated by Defendants' alleged materially false and misleading statements and omissions, and suffered damages when the truth was revealed. *See Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at *6 (N.D. Ill. June 26, 2018) (finding that claims "based on the same legal theories and aris[ing] from the same events and course of conduct giving rise to the claims of the other class members" meet the typicality requirement). Because KBC and Quoniam's legal claims are substantially identical to and arise from the same factual predicate as those alleged in the complaint on file in this action, KBC and Quoniam satisfy the typicality requirement.

### 2. KBC and Quoniam Are Adequate

As noted above, KBC and Quoniam seek to recover for substantially the same course of conduct by Defendants and injuries for which the rest of the class seeks recovery. KBC and Quoniam's interests are thus aligned with the interests of the other members of the class. Moreover, the large financial losses suffered by their funds ensures that KBC and Quoniam will vigorously prosecute the litigation.

Moreover, KBC and Quoniam have demonstrated that they possess standing to assert these claims. *See* Ex. D ¶¶2, 5; *see also Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2022 WL 3571995, at *3 (N.D. Cal. July 26, 2022) (finding a sworn declaration sufficient to establish standing). As set forth in the Joint Declaration, KBC serves as the asset manager for the Equity Fund and Institutional Fund. During the Class Period, those funds purchased, and held legal title to, the Abbott common stock on which they incurred substantial losses. Prior to filing this Motion, KBC obtained valid assignments of claim from the Equity Fund and Institutional Fund. *See* Ex. C; *see also Leventhal v. Chegg, Inc.*, 2022 WL 4099454, at *3 (N.D. Cal. Sept. 7, 2022) (appointing KBC lead plaintiff and holding KBC "Funds' assignment of its claims to KBC in this matter is facially valid" and competing movant "failed to provide evidence contesting the validity of the assignment; its speculation about the validity is insufficient to rebut the lead plaintiff presumption").[3] KBC also has authority to represent its funds in class actions under the terms of the funds' management agreements with KBC. *See* Exs. E ¶2.2.2 (Equity Fund agreement) & F ¶2.2.2 (Institutional Fund agreement).[4]

---

[3] The assignments in *Chegg* (as well as in numerous other cases in which KBC has been appointed as lead plaintiff and class representative) are identical to those obtained here.

[4] KBC also has standing to represent its funds under the so-called prudential exception. That doctrine allows third-party standing "where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008). KBC has a close relationship to its funds, as

Against this background, courts throughout the country, including in this District, have repeatedly appointed KBC as lead plaintiff or class representative after finding that it possessed standing to assert the claims at issue. *See, e.g.*, *Hospira*, 2012 WL 1339678 (appointing KBC as lead plaintiff on same standing basis as here); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *2 (N.D. Cal. Apr. 17, 2020) (appointing KBC as a co-class representative on same standing basis as here); *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2017 WL 4297450, at *6 (D.S.C. Sept. 28, 2017) (appointing KBC as sole class representative on same standing basis as here and noting that "KBC has shown substantial commitment and involvement in this litigation and has demonstrated it is adequate in this regard").[5]

For its part, Quoniam, which is a subsidiary of Union Asset Management Holding AG ("Union"), has also provided evidence of its standing to represent its funds in this action. Quoniam serves as the investment manager for Quoniam Funds Selection SICAV ("QFS SICAV"). *See* Ex. D ¶5. QFS SICAV has legal title to the Abbott shares it purchased during the Class Period, and the capacity to sue in, and be brought before, courts of law.[6] *See id*. Prior to filing this Motion, Quoniam obtained a valid assignment of claim from QFS SICAV. *See* Ex. C.

In addition, several investment funds managed by two other Union subsidiaries—Union Investment Institutional GmbH ("UIN") and Union Investment Luxembourg S.A. ("UIL")—also purchased Abbott shares during the Class Period. *See* Ex. D ¶5. The investment funds managed by UIN and UIL are UCITS funds established under German and Luxembourgian law,

---

evidenced by the fact it serves as their management company and there is a barrier to the funds asserting the claims given they have contracted with KBC to do precisely that.

[5] KBC recovered $60 million for class members in *Hospira*; $50 million in *3D Systems*; and a settlement of $809.5 million is pending final approval in *Twitter*.

[6] QFS SICAV is divided into separate portfolios, but those portfolios are not separate legal entities and, as noted, QFS SICAV holds title to the shares invested in each portfolio.

respectively. *See id.* While the investment funds are considered separate estates, they are not independent legal entities and do not have legal capacity to sue in, or be brought before, courts of law. *See id.* Instead, UIN and UIL have the exclusive authority to sue in their own names for damages suffered by the UCITS funds that they manage. *See id*. As such, UIN and UIL qualify for the "prudential exception" and have standing to assert these claims on behalf of their funds. *See City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) (finding a Luxembourg-based asset manager qualifies for the prudential exception and has standing to sue on behalf of its funds); *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017) (holding that a German asset manager "falls within the prudential exception to constitutional standing and may bring these claims on behalf of its funds"). Accordingly, UIN and UIL have standing to assert these claims on behalf of their funds. Prior to filing this Motion, Quoniam also obtained valid assignments of claim from UIN and UIL. *See* Ex. C; *see also Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 2009 WL 1458234, at *2 (D. Minn. May 26, 2009) (finding that Union had standing through assignments of claim); *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *5 (S.D.N.Y. Oct. 4, 2011) (assignment conferring "all rights, title and interest of the Funds in the Funds' claims" found to "conclusively establish [movant's] standing").

KBC and Quoniam have further demonstrated their adequacy by selecting two highly qualified firms with significant experience and success prosecuting federal securities class actions to serve as Lead Counsel for the class. *See infra* Section II; *see also* Exs. G (Motley Rice résumé) & H (Bernstein Litowitz résumé).

10

### 3. KBC and Quoniam Are Precisely the Type of Lead Plaintiff Envisioned By the PSLRA

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, KBC and Quoniam are precisely the type of investors whose participation in securities class actions the PSLRA's lead plaintiff provisions were meant to foster. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see also* S. Rep. No. 104-98 at *6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685. Indeed, Congress stated that the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *Cendant*, 264 F.3d at 244, 264 (citation omitted).

KBC and Quoniam (by virtue of its association with Union and support of Union's legal department) have extensive experience serving as lead plaintiff under the PSLRA and achieving successful recoveries on behalf of investors, and would bring that experience to bear on behalf of the class if appointed here. *See* Ex. D ¶¶3-4, 6, 14. As set forth in their sworn certifications, KBC and Quoniam have affirmed their understanding of the PSLRA's requirements and their willingness to pursue this action for the benefit of the class. *See* Ex. A. Additionally, as discussed in their Joint Declaration, KBC and Quoniam have demonstrated their commitment to working cohesively in the prosecution of this action. *See* Ex. D ¶¶7-12. District courts within the Seventh Circuit and across the country have repeatedly recognized the propriety of appointing groups of investors that "can fairly and adequately represent the class." *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *7, *10 (N.D. Ill. Oct. 8, 2019) (appointing Union, Quoniam's parent company, and another unrelated European institutional investor as lead plaintiff); *Hospira*, 2012 WL 1339678, at *8 (appointing KBC and other institutional investors as lead plaintiff and noting "the recent

11

trend of ali[g]ning small groups of sophisticated investors to serve as lead plaintiff even if they do not have pre-existing relationships").

Here, KBC and Quoniam comprise a small, cohesive group of sophisticated institutional investors that determined that their joint appointment as Lead Plaintiff would advance the class's best interests. *See* Ex. D ¶¶7-10; *see also Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutions that "conferred with one another [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation" (citation omitted)).

Specifically, given the magnitude of their losses, their prior experience serving as lead plaintiff, and the importance of the claims asserted against Defendants, KBC and Quoniam believe that this case should be prosecuted by sophisticated institutional investors with significant resources and a financial interest substantial enough to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the class. *See* Ex. D ¶7. Through the course of their evaluation of this case, and recognizing the benefits that could be realized by working together, KBC and Quoniam each expressed an interest in cooperating with other like-minded institutional investors in seeking appointment as Lead Plaintiff. *See id.* ¶8. Indeed, the decision by KBC and Quoniam to collaborate to prosecute this action was undertaken pursuant to deliberate, established processes for considering participation in securities litigation. *See id.* KBC and Quoniam agreed that their partnership would benefit the representation of the class. *See id.* ¶9.

In particular, based on their prior service as members of lead plaintiff groups, including KBC's ongoing oversight of Motley Rice and Bernstein Litowitz in *In re Intel Corp. Securities Litigation*, No. 20-cv-5194 (N.D. Cal.) ("*Intel*"), and the Quoniam legal department's past experience overseeing both Motley Rice and Bernstein Litowitz in *Minneapolis Firefighters'*

*Relief Association v. Medtronic, Inc.*, No. 08-cv-6324 (D. Minn.) ("*Medtronic*"), and *Hill v. State Street Corporation*, No. 09-cv-12146 (D. Mass.) ("*State Street*"), KBC and Quoniam respectfully submit that their joint leadership would allow for the benefits of joint decision-making and the sharing of experiences and resources, all of which would benefit the class. *See* Ex. D ¶¶9, 14.

Significantly, the Joint Declaration also demonstrates that KBC and Quoniam have already taken (and will continue to take) numerous measures to ensure the vigorous prosecution of this action and oversee their counsel. *See id.* ¶¶10-15. Specifically, before seeking appointment as Lead Plaintiff, representatives of KBC and Quoniam participated in a conference call and discussed together, among other things: their losses arising from Defendants' misconduct and their strategy for prosecuting this case, the strength of the claims against Defendants, as well as their common goals in ensuring that this action is litigated as efficiently as possible and that the class receives the best possible result. *See id.* ¶11.

The evidence submitted by KBC and Quoniam establishing their commitment to zealously and efficiently represent the interests of the class as members of a lead plaintiff group is more than sufficient to satisfy the adequacy and typicality requirements here. *See, e.g.*, *LJM*, 2018 WL 3141814, at *4 (appointing group that submitted joint declaration that "explains how and why the [group] made the decision jointly to seek appointment as lead plaintiff in this matter"); *Allscripts*, 2012 WL 5471110, at *6 (appointing group of institutions that "conferred with one another [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation"); *In re Versata, Inc. Sec. Litig.*, 2001 WL 34012374, at *6-7 (N.D. Cal. Aug. 20, 2001) (finding a group composed of sophisticated investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part

13

of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have "exhibited a cooperative spirit").

## II.     The Court Should Approve KBC and Quoniam's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts should not disturb a lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

KBC and Quoniam have selected as Lead Counsel for the class Motley Rice and Bernstein Litowitz, firms with substantial experience representing defrauded investors and a demonstrated history of success serving as lead counsel in numerous securities fraud class actions, including in this District. *See* Exs. G & H (firm résumés). Motley Rice's experience in the prosecution of securities class actions is derived from, among other things, its service as sole lead and co-class counsel in *In re Twitter, Inc. Securities Litigation*, No. 16-cv-5314 (N.D. Cal.) ($809.5 million recovery (pending final approval)); sole lead and class counsel in *In re Barrick Gold Securities Litigation*, No. 13-cv-3851 (S.D.N.Y.) ($140 million recovery); and co-lead counsel in *Bennett v. Sprint Nextel Corp.*, No. 09-cv-2122 (D. Kan.) ($131 million recovery).

Bernstein Litowitz is among the preeminent securities class action law firms in the country and has extensive experience serving as lead counsel in securities class actions. For example, Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—the second largest recovery in securities class action history—were obtained for the class. Bernstein Litowitz also secured $2.425 billion for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), and, more recently, recovered $1.06 billion for the class

14

in *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.).

Further, Motley Rice and Bernstein Litowitz have a history of successfully prosecuting securities class actions together. For example, the firms served as lead counsel in *Medtronic*, in which they recovered $85 million for investors, and *State Street*, in which they recovered $60 million for investors. Motley Rice and Bernstein Litowitz are currently serving together as lead counsel in *Intel* (with KBC serving as lead plaintiff), and *In re Qualcomm Inc. Securities Litigation*, No. 17-cv-121 (S.D. Cal.). The Court can be assured that the class will receive the highest caliber of legal representation.[7]

Accordingly, the Court should approve KBC and Quoniam's selection of Motley Rice and Bernstein Litowitz as Lead Counsel for the class.

### **CONCLUSION**

For the foregoing reasons, KBC and Quoniam respectfully request that the Court: (i) appoint KBC and Quoniam as Lead Plaintiff pursuant to the PSLRA; (ii) approve KBC and Quoniam's selection of Motley Rice and Bernstein Litowitz to serve as Lead Counsel for the class; and (iii) grant any further relief as the Court may deem just and proper.

---

[7] Separately, KBC and Quoniam bring to the Court's attention an order issued by a court in the United States District Court for the Northern District of California in an unrelated action in which Bernstein Litowitz served as lead counsel for lead plaintiff SEB Investment Management AB, and class counsel for the certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021) (Ex. I). Counsel for an unsuccessful lead plaintiff movant raised questions about Bernstein Litowitz's hiring of a former employee of the lead plaintiff. Following discovery and extensive briefing, the court allowed Bernstein Litowitz to continue as class counsel. *See id.* at *1-2. The court nevertheless ordered Bernstein Litowitz to bring the order to the attention of the court when seeking appointment as class counsel, and also to the decision maker for the proposed lead plaintiff who selects class counsel. *See id.* at *2. Importantly, the *Symantec* court recently granted final approval of a $70 million settlement achieved by SEB Investment Management AB and Bernstein Litowitz. In addition, courts have repeatedly appointed Bernstein Litowitz as lead or class counsel in securities class actions after being apprised of the *Symantec* order. *See* Ex. J (collecting cases).

DATED:  October 31, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, IL 60601
Telephone:  (312) 337 3880
Facsimile:  (312)  794 7801
avi@blbglaw.com

and

Gerald H. Silk
Hannah Ross
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554 1400
Facsimile:  (212) 554 1444
jerry@blbglaw.com
hannah@blbglaw.com
scott.foglietta@blbglaw.com

**MOTLEY RICE LLC**

Gregg S. Levin
Christopher F. Moriarty
Andrew P. Arnold
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
glevin@motleyrice.com
cmoriarty@motleyrice.com
aarnold@motleyrice.com

*Counsel for KBC Asset Management NV and
Quoniam Asset Management GmbH and
Proposed Lead Counsel for the Class*

16