LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
  colleen.smith@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.3985
Facsimile: +1.858.523.5450

Alexander C.K. Wyman (Bar No. 295339)
  alex.wyman@lw.com
355 S. Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

*Attorneys for Defendants GRAIL, LLC (n/k/a GRAIL, Inc.), Hans Bishop, Joshua J. Ofman, and Richard D. Klausner*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Illumina, Inc. Securities Litigation* | CASE NO. 3:23-cv-02082-LL-BJC |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GRAIL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| | Date:  December 17, 2024<br>Courtroom:     5D<br>Judge:            Hon. Linda Lopez |
| | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| | Special Briefing Schedule Ordered |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................... 1

II.    ALLEGED FACTS ........................................................................................................ 3

    A.    GRAIL and Illumina Pursue a Merger to Further Develop Galleri ........................................................................................................... 3

    B.    Antitrust Regulators Object and Prevail on a Narrow Issue ........................................................................................................... 4

III.    ARGUMENT ................................................................................................................. 5

    A.    Plaintiffs Fail to Plead a Section 10(b) Claim ................................................. 5

        1.    The GRAIL Executives' Statements Were Not False ........................................................................................................... 5

            a.    The Challenged Statements Were Not False or Misleading ........................................................................................... 6

            b.    Mr. Bishop's Statements About Accelerated Approval and Adoption of Galleri Are Not Actionable ........................................................................................... 8

            c.    The GRAIL Executives Are Not Liable for Statements They Did Not Make .................................................. 11

        2.    Plaintiffs Fail to Plead Particularized Facts Supporting a Strong Inference of Scienter as to Any GRAIL Executive ........................................................... 12

        3.    Plaintiffs Fail to Plead Loss Causation Associated With Mr. Bishop's and Dr. Ofman's Statements .................... 16

    B.    Plaintiffs' Repackaged "Scheme Liability" Claim Fails ................... 17

    C.    Plaintiffs' Control Person Claim Fails .............................................. 18

IV.    CONCLUSION ............................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997).......................................................................................17

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2023), *cert. granted*, 144 S. Ct. 2655 (2024) ...................6

*EnSource Invs. LLC v. Willis*,
2019 WL 6700403 (S.D. Cal. Dec. 6, 2019).........................................................11

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008)...................................................................................12

*Hadian v. Fate Therapeutics, Inc.*,
2024 WL 4246083 (S.D. Cal. Sept. 19, 2024) ......................................................16

*Hampton v. Aqua Metals*,
2020 WL 6710096 (N.D. Cal. Nov. 16, 2020)......................................................13

*Illumina, Inc. v. FTC*,
88 F.4th 1036 (5th Cir. 2023)............................................................................4, 5, 7

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010).................................................................................8

*In re DotHill Sys. Sec. Litig.*,
2009 WL 734296 (S.D. Cal. Mar. 18, 2009).........................................................6

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015)...............................................................17, 18

*In re InfoSonics Corp. Sec. Litig.*,
2008 WL 11338358 (S.D. Cal. Apr. 28, 2008) ....................................................15

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. Mar. 31, 2023)......................................................10

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022)..............................................................................16, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ...................................................................................13

*In re Opteum, Inc. Sec. Litig.*,
2009 WL 10697706 (S.D. Fla. Sept. 30, 2009) ..........................................................9

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (S.D. Cal. 2012) ..................................................................................15

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
2022 WL 22609807 (S.D. Cal. Apr. 11, 2022) ...........................................................6

*In re Surebeam Corp. Sec. Litig.*,
2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) ................................................................7

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011) ...................................................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ......................................................................................8

*Kipling v. Flex Ltd.*,
2020 WL 7261314 (N.D. Cal. Dec. 10, 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391 (9th Cir. Dec. 21, 2021) ...........................................................................................6

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ....................................................................................16

*Luongo v. Desktop Metal, Inc.*
2023 WL 6142715 (D. Mass. Sept. 20, 2023) ..........................................................12

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) ...............................................................................6

*Metzler Inv. GMBH v. Cornithian Coll., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................................15

*Oregon Pub. Emp. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ....................................................................................16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

GRAIL DEFENDANTS' MPA ISO
MOTION TO DISMISS SAC
CASE NO. 3:23-cv-02082-LL-BJC

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*, *Inc.*,
759 F.3d 1051 (9th Cir. 2014) ........................................................................ 14

*Prodanova v. H.C. Wainwright & Co*,
993 F.3d 1097 (9th Cir. 2021) ........................................................................ 13

*Reidinger v. Zendesk, Inc.*,
2020 WL 6562335 (N.D. Cal. Nov. 9, 2020) .................................................. 11

*Rok v. Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ....................................................... 17

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) .......................................................................... 14

*Smith v. NetApp, Inc.*,
2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ..................................................... 7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........................................................................................ 12

*Trahan v. Interactive Intel. Grp., Inc.*,
308 F. Supp. 3d 977 (S.D. Ind. 2018) ............................................................... 9

*Webb v. SolarCity Corp.*,
884 F.3d 844 (9th Cir. 2018) ..................................................................... 13, 15

*Weston Family P'ship LLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ............................................................................. 8

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ........................................................................... 9

*Xu v. Chinacache Int'l Holdings Ltd.*,
2016 WL 4370030 (C.D. Cal. Aug. 15, 2016) ................................................ 11

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
2022 WL 13800633 (C.D. Cal. Oct. 20, 2022) ............................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......................................................................... 18

## STATUTES

15 U.S.C.
  § 78t ................................................................................................ 18
  § 78u-4(b)(2)(A) .......................................................................... 12

21 USC § 360e-3 ........................................................................... 3, 4

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

GRAIL DEFENDANTS' MPA ISO
MOTION TO DISMISS SAC
CASE NO. 3:23-cv-02082-LL-BJC

## I.     INTRODUCTION

GRAIL is a pioneering biotechnology company that aims to promote the early detection of cancer through the development of a blood test—Galleri—that screens for cancers before they become symptomatic.  Developing a non-invasive blood test that has the potential to offer early screening for multiple different types of cancer is no small undertaking.  Significant funding and hundreds of skilled professionals would be necessary to bring this game-changing technology to patients.  To fund the development and adoption of its technology, GRAIL explored various means of financing, including investment rounds, an initial public offering, and a merger—all in service of the goal of equipping the public with a tool to save lives by detecting potential cancers during the more treatable early stages.

In September 2020, GRAIL was presented with an opportunity to merge with its former parent company, Illumina.  GRAIL and its directors firmly believed that merging with the much larger Illumina would be the best result for its stockholders.  It would provide GRAIL with additional resources—in terms of funding, experience, and know-how—that would allow it to expedite release of its product and get it into the hands of more doctors and patients.

That sentiment is exactly what GRAIL's then-CEO Hans Bishop expressed to the public when discussing the potential merger, emphasizing that Illumina's greater resources would accelerate Galleri's adoption.  GRAIL's President Joshua Ofman likewise expressed excitement about Galleri's promise based on a clinical study suggesting Galleri could detect fifty different types of cancer.  And GRAIL founder and director Richard Klausner put his money behind GRAIL and its promise. (Bishop, Ofman, and Klausner are the "GRAIL Executives," and with GRAIL, the "GRAIL Defendants.") Plaintiffs would have the Court conclude that these actions were part of some elaborate scheme, not to bring Galleri to patients, but to artificially inflate Illumina's stock price.  Nothing could be further from the truth.

***No Falsity.***  Plaintiffs' claims against Mr. Bishop and Dr. Ofman are premised

on five allegedly misleading statements. In four statements, Mr. Bishop expressed optimism that Illumina could accelerate the development and release of GRAIL's life-saving technology. But no allegations establish that these statements were false. Mr. Bishop believed, and common sense supports, that GRAIL would benefit tremendously from Illumina's greater financial and human capital resources as well as its extensive experience developing, commercializing, and obtaining governmental authorizations for genetic tests. And while Plaintiffs point to trial testimony in antitrust proceedings to argue that Mr. Bishop later admitted this acceleration had no basis, that is belied by the very testimony on which Plaintiffs rely. Regardless, these statements were either forward looking or generic statements of corporate optimism that are not actionable under the federal securities laws. Plaintiffs' attack on a single statement made by Dr. Ofman about Galleri's ability to detect fifty types of cancers, as demonstrated by a clinical study with results published in a peer-reviewed journal, is similarly defective. Again, the testimony Plaintiffs cite to say this statement was untrue actually confirms its accuracy. And while Plaintiffs point to a variety of sources questioning Galleri's capabilities, none contradicts Dr. Ofman's statement, which postdates all of these sources.

*No Scienter.* Plaintiffs also do not allege facts supporting scienter. Not only do they fail to allege scienter on a defendant-by-defendant basis, as the law requires, but they also do not come close to showing the kind of conduct necessary to conclude there has been fraud. Plaintiffs do not identify any motive for the GRAIL Executives to want to artificially inflate Illumina's stock. The GRAIL Executives supported the merger, but closing the deal did not depend on pumping up Illumina's stock price. And without motive, Plaintiffs' other scienter allegations fall away. They offer no alleged facts contradicting the ways in which the merger could accelerate Galleri's development. They offer no alleged facts contradicting that a clinical study had shown that Galleri could detect fifty types of cancer. The far more compelling inference from these facts is that the GRAIL Executives were enthusiastic about

Galleri and the Illumina merger.  That is not fraud.

***No Loss Causation.*** If that were not enough, Plaintiffs also do not connect any of the GRAIL Executive statements to any of the alleged corrective disclosures that supposedly caused Plaintiffs' losses.  Plaintiffs do not allege that they suffered losses on the dates of the antitrust rulings, so their failure to connect Mr. Bishop's statements to any losses makes sense.  And Dr. Ofman's statement was made after the disclosures that supposedly corrected it.

***No Scheme.***  Finally, Plaintiffs seek to drag GRAIL and the GRAIL Executives into their case by saying there was a massive "scheme" to defraud Illumina investors.  The problem for Plaintiffs is that there was no such scheme so they have no alleged facts to demonstrate one.  This claim, too, fails.

For these reasons, and the reasons in Illumina's motion to dismiss which the GRAIL Defendants join, the Second Amended Complaint should be dismissed.

## II.    ALLEGED FACTS

### A.    GRAIL and Illumina Pursue a Merger to Further Develop Galleri

The story of GRAIL began when Illumina discovered that its genetic sequencers could detect trace amounts of DNA in blood samples, and that this DNA could enable doctors to detect cancer through a simple blood test.  ¶¶ 56-57.[1]  In 2015, Illumina founded GRAIL as a wholly-owned subsidiary to pursue this breakthrough.  ¶¶ 34, 58.  It worked.  Within years, GRAIL developed Galleri—a blood test powered by machine learning that analyzes cell-free DNA to detect early cancer signals.  ¶ 60.  The FDA designated Galleri as a "breakthrough device."  ¶ 119; *see* 21 USC § 360e-3 (listing criteria for breakthrough devices).

For parts of the Class Period, GRAIL was led by, among others, Hans Bishop, Joshua Ofman, and Richard Klausner.  ¶ 41-44.  Bishop was GRAIL's CEO, Ofman was the President (and former Chief Medical Officer), and Klausner founded GRAIL

---

[1] "¶ [___]" refers to the Second Amended Complaint ("SAC").  Emphases are added, and internal quotation marks and citations are omitted, unless indicated.

before serving on its board. *Id.* Given the significance of its breakthrough, GRAIL successfully raised funds from private investors in multiple rounds. ¶¶ 3, 61, 64-65.

Illumina took notice of GRAIL's continued and growing success. Both Illumina and GRAIL believed that combining GRAIL's breakthrough technology with Illumina's vast global resources would lead to the quicker adoption of Galleri and ultimately save lives. *E.g.*, ¶ 269. Indeed, as Mr. Bishop explained in sworn testimony, the merger with Illumina would accelerate patient access to Galleri:

> I believe [Illumina] will in certain areas allow us to go faster, and in certain areas Illumina's technical ability and experience will decrease some of the risks we're facing as a stand-alone company.
> . . .
> [Illumina's] deep expertise in interacting with regulators derisks and maybe speeds up the speed at which we can get the regulatory approvals . . . and being part of Illumina will help us accelerate the speed at which we can drop the price of our tests.

Ex. 39 (Bishop trial testimony) at 1415:18-1418:7.

After extensive negotiations, Illumina announced on September 21, 2020 that it had agreed to re-acquire GRAIL for more than $8 billion, consisting of $3.5 billion in cash, $4.5 billion in shares of Illumina common stock, and contingent value rights in GRAIL-related revenues for a twelve-year period. ¶¶ 4, 68.

**B.    Antitrust Regulators Object and Prevail on a Narrow Issue**

Regulators in both the United States and Europe sought to block the acquisition. Illumina Mot. § II.D (ECF No. 62-1). On March 30, 2021, the Federal Trade Commission ("FTC") filed a complaint challenging the merger. ¶ 80. The European Commission ("EC") then announced a review and purported to require the companies to remain separate pending review. ¶ 81. On August 18, 2021, Illumina announced it closed the acquisition, but would operate GRAIL as a "separate and independent unit[] pending ongoing regulatory and legal review." ¶ 89.

The FTC administrative law judge ("ALJ") ruled in favor of Illumina and GRAIL's combination, finding the FTC staff failed to meet their burden to show the merger was likely to substantially lessen competition. *See Illumina, Inc. v. FTC*, 88

F.4th 1036, 1045 (5th Cir. 2023). During the administrative trial, both companies presented evidence—including testimony by Mr. Bishop and Dr. Ofman—confirming they believed Illumina's clinical and regulatory expertise and extensive resources already in place across the world would accelerate Galleri's adoption. Exs. 39-40. But the FTC staff appealed the ALJ's decision, and on March 31, 2023, the FTC issued a decision prohibiting Illumina's acquisition of GRAIL. ¶ 116. The FTC found the FTC staff had proved their *prima facie* case, and the companies had not established any affirmative defense. *Illumina*, 88 F.4th at 1045-46. At that stage of proceedings, in the context of antitrust review, "Illumina and GRAIL *bore the burden to establish* that the acquisition would accelerate the availability and adoption of the Galleri test." ¶ 116. The FTC found that GRAIL and Illumina were unable to precisely "quantify *how much sooner*" Galleri would be available as required for the antitrust approval. ¶¶ 113, 271. The FTC did not conclude that any of the witnesses who testified in these proceedings were not credible or were wrong; it merely concluded that, with respect to the efficiencies defense, the evidence was insufficiently precise to carry the companies' burden of proof.

The U.S. Court of Appeals for the Fifth Circuit largely agreed with the FTC's decision, noting "an efficiency defense is *very difficult to establish*," given that the defendant must "quantify the[] claimed efficiencies." *Illumina*, 88 F.4th at 1060-61. The Fifth Circuit did not conclude that any of GRAIL's or its executives' statements about the anticipated benefits of the acquisition were incorrect, misleading, or contradicted by what they knew—only that Illumina and GRAIL had not provided sufficient evidence to *quantify* precisely those benefits to overcome their burden. *Id.*

## III.   ARGUMENT

### A.   Plaintiffs Fail to Plead a Section 10(b) Claim

#### 1.   The GRAIL Executives' Statements Were Not False

Plaintiffs challenge forty-eight statements, only five of which were made by two of the GRAIL Executives: (1) four statements by GRAIL's then-CEO Mr.

Bishop related to potential strategic benefits stemming from Illumina's acquisition of GRAIL (Stmts. 10, 12, 15, 24); and (2) one statement by GRAIL's President and former Chief Medical Officer Dr. Ofman related to Galleri's anticipated clinical capabilities (Stmt. 40).  *See* App'x A to Illumina Mot.  Plaintiffs challenge *no statements* made by GRAIL's founder and director Mr. Klausner.  Plaintiffs' allegations do not show "how and why the statements were false when made." *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 2022 WL 22609807, at *16 (S.D. Cal. Apr. 11, 2022).  And none is actionable; they are puffery, forward-looking, or both.

**a.      The Challenged Statements Were Not False or Misleading**

To establish falsity, Plaintiffs must allege "specific facts indicating why the statements at issue were false" or misleading when made.  *Kipling v. Flex Ltd.*, 2020 WL 7261314, at *9 (N.D. Cal. Dec. 10, 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391 (9th Cir. Dec. 21, 2021).  To clear this bar, Plaintiffs must identify specific facts "necessarily inconsistent" with the challenged statements.  *In re DotHill Sys. Sec. Litig.*, 2009 WL 734296, at *10 (S.D. Cal. Mar. 18, 2009); *see also Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1122 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) (statements not false if they are not inconsistent with the allegedly concealed information).  In other words, a plaintiff must point to "statements that directly contradict what the defendant knew at the time." *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 928 (9th Cir. 2023), *cert. granted*, 144 S. Ct. 2655 (2024).  Plaintiffs have not done so here.

**Mr. Bishop's Statements.**  Plaintiffs challenge four statements made by Mr. Bishop about the anticipated acceleration of Galleri's development that could result from the merger with Illumina.  *See* Stmt. 10 (¶ 324) ("Combining forces with Illumina enables broader and faster adoption of [Galleri] . . ."); Stmt. 12 (¶ 326) ("With Illumina's international footprint and expertise . . . we'll accelerate our

ability to realize our mission . . ."); Stmt. 15 (¶ 351) ("Combining GRAIL's innovative multi-cancer early detection test with Illumina's experience and scale will enable more patients . . . to garner access to [Galleri]"); Stmt. 24 (¶ 375) ("The merger with Illumina will get the Galleri test to people far faster").

Plaintiffs provide no allegations that would render these statements false. The Complaint identifies no contemporaneous information known to Mr. Bishop (or anyone else) establishing that Illumina's acquisition would *not* enable the faster adoption of Galleri or that the merger would get the Galleri test to patients *slower*. Instead, Plaintiffs premise their falsity allegations on determinations by the FTC and Fifth Circuit three years after Mr. Bishop made these statements concerning whether Illumina had *proven* that quantifiable efficiencies would result from the merger. *Illumina*, 88 F.4th at 1059. These findings do not establish that Mr. Bishop's generalized statements about obvious and logical efficiencies and resource advantages from a merger that would give GRAIL access to Illumina's greater resources were not real. At most, the FTC's and Fifth Circuit's decisions show that Illumina and GRAIL had not sufficiently *quantified* their (genuinely held) beliefs. That is a far cry from securities fraud. *See Smith v. NetApp, Inc.*, 2021 WL 1233354, at *6 (N.D. Cal. Feb. 1, 2021) (finding forecasts not false or misleading where uncontradicted by "contemporaneous information," and cautioning against "fraud by hindsight"); *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *19 (S.D. Cal. Jan. 3, 2005) (expected growth statements were not "false when made" because "[t]he company was negotiating contracts" and "had some reason to be hopeful").

**Dr. Ofman's Statement.** The only other statement made by a GRAIL Executive was made by Dr. Ofman, in a March 28, 2023 video stating that Galleri "can identify 50 different cancers with a single blood draw" and "allows physicians to make an efficient and rapid diagnosis." Stmt. 40 (¶ 395). But Plaintiffs fail to allege particularized facts showing that Dr. Ofman's statement was false or misleading when made. To start, Plaintiffs do not allege any facts that Galleri could

not, in fact, detect fifty different cancers in its blood draws. *See generally* SAC. Instead, Plaintiffs selectively quote from Dr. Ofman's FTC testimony where he testified that the "*PATHFINDER [study]*" did not enroll enough patients to detect fifty types of cancers, but they ignore his testimony that the case-controlled, peer-reviewed, and published CCGA study reached this very conclusion. ¶ 141; Ex. 40 3298:8-3299:9 ("Q. And how many types of cancer did Galleri detect in the CCGA study? A. **Over 50 different cancer types**."); *see also* Ex. 42 ("Cancer signals were detected [by Galleri] across >50 cancer types.").

Plaintiffs also point to communications about FDA approval of Galleri and snippets of negative press about Galleri from long before—in many cases *years before*—Dr. Ofman stated that Galleri could identify fifty cancers. *See, e.g.*, ¶ 396 (alleging the statement was false because "the FDA informed Defendants *before the start of the Class Period* [i.e., before September 2020], the clinical data for Galleri developed to date was 'insufficient'"); *see also* ¶¶ 125, 130-31, 147 (falsity allegations based on purported facts from 2021 and 2022). These allegations from months or years before are insufficient to "directly contradict what [Ofman] knew at that time," *Weston Fam. P'ship. LLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018)), especially considering that Galleri was a novel technology and was continuing to be tested in numerous clinical trials. ¶¶ 136-141. Plaintiffs do not allege (nor could they) that a truthful statement about research results is somehow rendered false by FDA feedback regarding premarket approval—two totally different things.

### b. Mr. Bishop's Statements About Accelerated Approval and Adoption of Galleri Are Not Actionable

**Forward-Looking Statements.** The PSLRA provides a safe harbor for forward-looking statements like these if either (1) they are identified as forward-looking and accompanied by a meaningful cautionary statement, *or* (2) the plaintiff

fails to show that the statement was made with actual knowledge that it was false or misleading. *Weston Family P'ship*, 29 F.4th at 620. Projections about what could or might happen in the future are "by definition a forward-looking statement," *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010), as are "statements of the plans and objectives of management for future operations" and "'statement[s] of the assumptions underlying or relating to' those plans and objectives," *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191 (9th Cir. 2021).

Three of Mr. Bishop's four challenged statements are quintessentially forward looking and protected by the safe harbor. They concern Mr. Bishop's belief that Illumina's commercial and clinical capabilities could accelerate the future availability of Galleri. *See* Stmt. 12 (¶ 326) ("[W]e'll achieve scale faster," and "[w]ith Illumina's international footprint and expertise across market access, regulatory, government affairs and manufacturing, we'll accelerate our ability to realize our mission and goals of improved patient outcomes"); Stmt. 15 (¶ 351) ("Combining GRAIL's innovative multi-cancer early detection test with Illumina's experience and scale will enable more patients in both the United States and worldwide to garner access to GRAIL's test faster"); Stmt. 24 (¶ 375) ("The merger with Illumina will get the Galleri test to people far faster"). These kinds of predictions about future impacts of current business decisions are classically forward looking. *See In re Opteum, Inc. Sec. Litig.*, 2009 WL 10697706, at *10 (S.D. Fla. Sept. 30, 2009) (dismissing forward looking statements touting "the benefits . . . and long-term value of" an expected merger).

There can be no dispute that these statements were accompanied by meaningful cautionary language, and Plaintiffs do not seriously contend otherwise. For example, Illumina's August 18, 2021 Form 8-K (which attached Stmt. 24) warned investors that delays in "integration may materially and adversely affect the . . . benefits Illumina expects to achieve as a result of the Acquisition." Ex. 38 at 4; *see also Trahan v. Interactive Intel. Grp., Inc.*, 308 F. Supp. 3d 977, 992 (S.D. Ind.

2018) (disclosure noting the risk of "not fully realizing [the] expected benefits" from a merger was meaningful cautionary language with respect to forward-looking statements about potential benefits of the merger).  And Bishop's other challenged statements were accompanied by similar cautionary language.  *See* Ex. 36 at 4 (warning about "risks and uncertainties" accompanying "estimates [and] projections"); Ex. 37 at 2 (warning that Illumina may not "integrate[] GRAIL's business successfully and [] achieve anticipated synergies," and referencing the additional risk disclosures in Illumina's Form 10-K); *see also* Illumina Mot. at 22.

This is more than enough to qualify for the safe harbor.  But even if these statements were unaccompanied by sufficient cautionary language, no alleged facts establish that Mr. Bishop made them with actual knowledge of their falsity.  Indeed, his testimony in the FTC proceedings is entirely consistent with his public statements.  Mr. Bishop testified ***under oath*** that he believed Illumina's acquisition would accelerate development and adoption of Galleri by allowing GRAIL to take advantage of Illumina's superior funding, access to and experience with regulators, and ability to speed up the pace at which payors (e.g., government, hospitals, and insurance carriers) would cover the cost of the Galleri test.  *See, e.g.*, Ex. 39 (Bishop FTC Testimony) at 1415:18-1418:7 (Illumina's "deep expertise in interacting with regulators derisks and maybe speeds up the speed at which we can get regulatory approvals"; "being part of Illumina will help us accelerate the speed at which we can drop the price of our tests"); 1418:8-1419:19 (Illumina's superior cash position and access to capital "very significantly" reduced the risks associated with funding needs for product development); 1421:1-19 (merging with Illumina would allow GRAIL to integrate into "Illumina's sales, marketing, and distribution infrastructure" and benefit from its success in those areas which would "enable GRAIL to commercialize Galleri at scale faster").

And Plaintiffs' references to "accounts from former Illumina employees" about Illumina CEO deSouza's purported beliefs concerning the GRAIL acquisition

(¶ 120) say nothing about Mr. Bishop's knowledge and beliefs.  *See In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *15 (N.D. Cal. Mar. 31, 2023) (statements concerning expected timeline were protected by safe harbor where plaintiffs did not plead defendants had "actual knowledge that those statements were false").

**Puffery.**  Two of Mr. Bishop's challenged statements—opining that the merger would "enable[] broader and faster adoption . . . enhance[] patient access and expand[] global reach," Stmt. 10 (¶ 324), and allow GRAIL to benefit from "Illumina's international footprint and expertise," Stmt. 12 (¶ 326)—are classic corporate puffery that is not actionable under the federal securities laws.  *See, e.g.*, *Reidinger v. Zendesk, Inc.*, 2020 WL 6562335 at *9 (N.D. Cal. Nov. 9, 2020) (statements touting company's "global footprint" as a "complete advantage" and an "opportunity" were puffery); *Xu v. Chinacache Int'l Holdings Ltd.*, 2016 WL 4370030, at *8 (C.D. Cal. Aug. 15, 2016) (statement in press release claiming to "offer enhanced services and a more efficient network to all our customers" was "too vague to be more than non-actionable puffery"); *see also* Illumina Mot. § IV.A.

### c.  The GRAIL Executives Are Not Liable for Statements They Did Not Make

Finally, Plaintiffs plead no facts showing that any of the GRAIL Executives can be liable for any of the forty-three statements that are attributed to other speakers they did not control.  Liability for securities fraud attaches only to parties who "make" misstatements of fact.  *EnSource Invs. LLC v. Willis,* 2019 WL 6700403, at *12 (S.D. Cal. Dec. 6, 2019).  The "maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011).  Almost half (nineteen) of these forty-three statements preceded August 18, 2021, when Illumina closed its acquisition of GRAIL.  Plaintiffs plead no facts establishing that GRAIL or its executives had the power to make the challenged statements on behalf of an independent public company.  *See* ¶¶ 466-468 (failing to

allege that GRAIL or the GRAIL Executives had control over Illumina's statements). The idea that a target's executives somehow had control or authority over statements made by its acquiror is not grounded in reality or logic.

As for the twenty-four statements that postdate the August 18, 2021 merger closing, GRAIL was a mere subsidiary of Illumina (until it was spun out again) that was held entirely separate from Illumina with no power or authority over Illumina's public statements. ¶ 34. Here again, Plaintiffs plead no facts establishing that any of GRAIL's executives, much less the specific GRAIL Executives here, held any authority—let alone ultimate authority—over Illumina's statements. ¶ 466-68; *see also Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *11 (C.D. Cal. Oct. 20, 2022) (requiring "allegations indicating that defendants possessed the power and authority to control the contents of the press release and SEC filings" of the parent); *Luongo v. Desktop Metal, Inc.* 2023 WL 6142715, at *14 (D. Mass. Sept. 20, 2023) (executive of acquired company not "maker" of parent company's statements absent allegations of "actual control over statements made by [parent]").[2]

### 2. Plaintiffs Fail to Plead Particularized Facts Supporting a Strong Inference of Scienter as to Any GRAIL Executive

Even if Plaintiffs had sufficiently pled falsity as to the GRAIL Executives' statements (they have not), Plaintiffs' claims would still fail because they plead no facts supporting the necessary strong inference of scienter as to each defendant. 15 U.S.C. § 78u-4(b)(2)(A). To sufficiently plead scienter, a plaintiff must allege, "in great detail, facts that constitute strong circumstantial evidence" that each defendant made false or misleading statements either intentionally or with deliberate recklessness. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008). For each defendant, the inference of fraud must be "cogent" and "at least as

---

[2] Indeed, Mr. Bishop stepped down from his role as GRAIL's CEO in October 2021, served as an Advisor through the end of 2021, and had no role with the company thereafter, further undermining the already-weak allegation that he had influence over Illumina's statements after that time. *See* Ex. 41 (Illumina 10/15/2021 8-K).

compelling as any opposing inference," and requires the Court to consider "plausible, nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323-24 (2007) (footnote omitted). As the Ninth Circuit has stressed, "[t]he bar set by *Tellabs* is not easy to satisfy[.]" *Webb v. SolarCity Corp.*, 884 F.3d 844, 855-56 (9th Cir. 2018).

Of Plaintiffs' allegations of scienter, seven relate virtually entirely to Illumina.[3] And with respect to Plaintiffs' theories of scienter that do pertain to the GRAIL Executives, all are insufficient.

**The GRAIL Executives Had No Motive to Lie.** "[I]f the complaint fails to plead a plausible motive for the allegedly fraudulent action, the plaintiff will face a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co*, 993 F.3d 1097, 1103 (9th Cir. 2021). Such is the case here, where Plaintiffs allege only that the GRAIL Executives owned GRAIL shares and stood to profit from the merger. ¶¶ 163-64. Plaintiffs do not allege that any of the GRAIL Executives owned *Illumina shares*, much less sold them at allegedly inflated prices. *See Hampton v. Aqua Metals*, 2020 WL 6710096, at *16 (N.D. Cal. Nov. 16, 2020) (absence of sales "contradict[s] any inference of scienter"). Plaintiffs offer zero explanation as to how or why the GRAIL Executives had any motive or reason at all to want to artificially inflate the price of Illumina shares which is the supposed fraud Plaintiffs attack. Plaintiffs also do not allege that the GRAIL Executives needed to pump up Illumina's stock price to close the merger, much less offer allegations that an increased Illumina stock price would otherwise benefit them. And because the merger was a cash and stock deal, an inflated price for Illumina shares could have worked to the GRAIL Executives' disadvantage as they would find themselves owners of fewer and overvalued shares. ¶ 4.

---

[3] Allegations of scienter that rely on actions or motives of Illumina and the Illumina Defendants are insufficient to plead scienter with respect to the GRAIL Executives. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014).

**Plaintiff's Allegations Do Not Establish Deliberate Recklessness.** Particularly in the absence of any fraud motive, Plaintiffs' hodge podge of scienter allegations do not establish the necessary strong inference of fraud.

*First*, Plaintiffs argue that the GRAIL Executives' testimony in the FTC proceeding confirms "that Defendants knew their statements," including those about "Illumina's ability to 'accelerate' Galleri's commercialization, FDA approval and adoption, statements about Illumina needing to acquire GRAIL to effect such acceleration, and assertions about Galleri not requiring any further tests," were misleading. ¶ 268. These allegations are based on incomplete quotations and mischaracterizations of that testimony, which as demonstrated above, *supports* the truthfulness of the GRAIL Executives' statements rather than the other way around.

*Second*, Plaintiffs argue that allegations from anonymous former employees ("FEs") criticizing GRAIL's commercialization plan and data somehow establish scienter. But these allegations have no bearing on the GRAIL Executives' states of mind when none of the FEs is alleged to have ever spoken to any of the GRAIL Executives much less know what was in their minds. *See* ¶¶ 147, 154, 274.

*Third*, Plaintiffs point to the decision to close the merger without obtaining clearance from the European Commission as support for scienter. ¶ 278. But this has nothing to do with the statements at issue which relate to the impact of the merger on Galleri's prospects and Galleri's ability to detect fifty types of cancer. Plaintiffs also ignore the fact that GRAIL agreed to this and took on litigation and regulatory risk precisely because they believed in the promise of Galleri and the benefits of the merger to its development. This fact undercuts rather than supports scienter.

*Fourth*, Plaintiffs make a half-hearted attempt to allege scienter under the "core operations" theory through which they ask the Court to infer scienter based on the premise that "corporate officers have knowledge of the critical core operation of their companies." *Police Ret. Sys. of St. Louis v. Intuitive Surgical*, *Inc.,* 759 F.3d 1051, 1062 (9th Cir. 2014). Not only is the core operations inference disfavored in

this circuit, it cannot be used to fill a scienter pleading gap when the complaint does not identify what the Court is supposed to infer. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 & n.3 (9th Cir. 2008) (scienter based on core operations inference is "exceedingly rare"). The mere "general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Cornithian Coll., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883-84 (S.D. Cal. 2012) (even assuming defendants had knowledge of clinical trial results based on core operations, that inference did not establish they knowingly misled investors about the drug's overall efficacy or commercial prospects).

**The Non-Fraudulent Inference Is More Compelling.** Here, the "plausible, nonculpable explanations" for the GRAIL Executives' statements far outweigh any possible inference of fraud. *Webb*, 884 F.3d at 851; *see also In re InfoSonics Corp. Sec. Litig.*, 2008 WL 11338358, at *5 (S.D. Cal. Apr. 28, 2008) (no scienter where nonculpable inference was "more compelling"). Mr. Bishop truly believed that Galleri's novel technology would get to consumers quicker if it was backed by Illumina—indeed, he said exactly that repeatedly under oath in the FTC proceedings on which Plaintiffs rely. *E.g.*, Ex. 39 (Bishop testimony) at 1415-1421. And this belief, of course, makes sense: logically, a smaller, newer company with less experience commercializing, obtaining government approvals, and reimbursements for its promising product could accelerate the development, approval, and adoption of that product when given access to the larger company's significantly greater resources, experience, and established global programs, infrastructure, and workforce. Plaintiffs' only counterargument is that the FTC and a court did not credit evidence *quantifying* exactly how much Galleri would be accelerated, but the failure to predict the outcome of a judicial proceeding is not fraud.

The same is true for Dr. Ofman. When he said Galleri could detect more than

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

fifty different types of cancer, that was a true statement based on a specific study that was peer-reviewed and published in a medical oncology journal. Ex. 40 (Ofman testimony) at 3298:8-3299:9; Ex. 42. There is nothing fraudulent about an executive proudly reporting the results of a specific clinical study—especially one with such promising results and the prospect of early detection of deadly disease.

### 3. Plaintiffs Fail to Plead Loss Causation Associated With Mr. Bishop's and Dr. Ofman's Statements

To plead loss causation, Plaintiffs must allege with particularity "that the defendant's fraud was revealed to the market and caused the resulting losses." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014); *Oregon Pub. Emp. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (holding that loss causation must be pled with particularity under Rule 9(b)). Plaintiffs must show a "causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (cleaned up). Plaintiffs' allegations do not meet the mark.

***Bishop Statements***. Plaintiffs do not connect Mr. Bishop's four statements reflecting his belief that the merger with Illumina would accelerate Galleri's availability to patients to any alleged corrective disclosures. ¶¶ 199-242, 421. Publicly expressed concerns about whether GRAIL was an effective screening tool, or whether or when it would receive regulatory approval, did not reveal to be false any of Mr. Bishop's statements concerning his belief that, whatever GRAIL's prospects or timelines, the Illumina merger would only improve them. Plaintiffs' failure to link Mr. Bishop's statements to any purported correction means they haven't met their loss causation pleading burden, warranting dismissal. *See Nektar Therapeutics*, 34 F.4th at 838; *Hadian v. Fate Therapeutics, Inc.*, 2024 WL 4246083, at *40 (S.D. Cal. Sept. 19, 2024) (holding that "it is incumbent on Plaintiffs to connect the allegedly material omissions to the" alleged corrective disclosure; the alleged corrective disclosure must "relate back to the misrepresentation and not to

some other negative information").

***Ofman Statement***.  As to Dr. Ofman's single statement about Galleri's demonstrated technological performance, all of the alleged corrective disclosures that purportedly revealed the fraudulent nature of this statement were made *years before*.  *See* ¶¶ 204-09, 395, 421 (alleging corrective disclosures regarding Galleri's efficacy on November 23, 2021 and June 10, 2022, long before the challenged statement on March 28, 2023).  Any class member that bought Illumina stock after March 28, 2023 supposedly in reliance on this statement could not possibly have suffered losses as a result of supposedly concealed critiques of Galleri that were long since public.  *See Rok v. Identiv, Inc.*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) (corrective disclosures must present new facts publicly revealed for the first time that actually correct the challenged statements).  Plaintiffs' remaining alleged corrective disclosures that post-date this statement are not alleged to have corrected it, so these too offer Plaintiffs no help.  ¶ 421 (June 27, 2023 – reduction in headcount; August 11, 2023 – SEC investigation; October 24, 2023 – Icahn lawsuit; November 10, 2023 – Illumina write down).  Plaintiffs' failure to connect Dr. Ofman's statement to any stockholder losses is fatal.  *E.g.*, *Nektar*, 34 F.4th at 838.

### B. Plaintiffs' Repackaged "Scheme Liability" Claim Fails

Each of the bases Plaintiffs offer for a purported scheme by the GRAIL Defendants to defraud Illumina investors likewise fails.  To plead a scheme liability claim, Plaintiffs must offer *particular facts* as to *each defendant* establishing that he acted in a specific way as part of a scheme to manipulate the company's stock price or a scheme to deceive investors.  *See Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997) (each defendant must have committed a deceptive or manipulative act in furtherance of a scheme); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015) (same).  Plaintiffs do not come close.

As an initial matter, Plaintiffs do not identify exactly which of the acts forming the basis of a supposed scheme were committed by which defendants.  Indeed,

Plaintiffs do not name Mr. Bishop or Dr. Ofman in their scheme liability allegations *at all*. *See* ¶ 452(i)-(vi) (no mention of either in scheme liability allegations). That is enough to require dismissal of this claim. At best, these allegations suggest a "scheme" based on "[d]isseminating false statements" about accelerated FDA approval (¶ 452(v)), and making "numerous" false claims about Galleri's effectiveness (¶ 452(vi)). But this is just a repackaged version of Plaintiffs' false statement claim, so to the extent Plaintiffs say Mr. Bishop and Dr. Ofman participated in a "scheme" by making false or misleading statements, this claim fails for the same reasons. Illumina Mot. § IV.D (citing cases).

And while Plaintiffs do mention Mr. Klausner (in passing) in their scheme liability allegations, they plead no facts that could remotely amount to a scheme that had the specific purpose and effect of defrauding Illumina investors. *Galena*, 117 F. Supp. 3d at 1193 (scheme liability claims must allege "the nature, purpose, and effect of the fraudulent conduct"). Their theory is that it was a fraudulent scheme for an investment vehicle—Milky Way—to invest in GRAIL. ¶¶ 163-64, 452(ii). The notion that making an investment in a private funding round—routine conduct by venture backers interested in supporting novel and potentially disruptive technologies like Galleri—is somehow indicative of a fraudulent scheme makes absolutely no sense. What's more, that investment was fully and publicly disclosed in September 2020 *at the beginning of the class period*. ¶ 163. Plaintiffs fail to explain how Illumina investors could have been deceived by a supposedly secret investment that was disclosed before they bought Illumina stock.

### C. Plaintiffs' Control Person Claim Fails

Because there is no primary violation, the Section 20(a) claims fail. 15 U.S.C. § 78t; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

## IV. CONCLUSION

The GRAIL Defendants request that the Court dismiss the SAC.

Dated:  November 12, 2024          LATHAM & WATKINS LLP


By: */s/ Colleen C. Smith*
   Colleen C. Smith
   colleen.smith@lw.com

*Defendants GRAIL, LLC (n/k/a GRAIL, Inc.), Hans Bishop, Joshua J. Ofman, and Richard D. Klausner*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW