COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
RYAN E. BLAIR (246724)
(rblair@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:   +1 858 550 6000
Facsimile:   +1 858 550 6420

BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone:  +1 212 479 6000
Facsimile:   +1 212 479 6275

Attorneys for Defendants Illumina, Inc.,
Francis A. deSouza, Alexander M. Aravanis,
Phillip G. Febbo, Sam A. Samad, and John W.
Thompson

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Case No. 3:23-cv-02082-LL-DTF<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF ILLUMINA DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Courtroom: 5D<br>Judge: Hon. Linda Lopez<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .......................................................................................... 1

II.     ARGUMENT ................................................................................................. 1

     A.      Plaintiffs Fail to Plead a Strong Inference of Scienter. ........................ 1

          1.      Plaintiffs plead no cognizable motive. ..................................... 2

          2.      Plaintiffs allege no contemporaneous facts to support a strong inference of scienter for any challenged statement. ........ 3

          3.      The remaining allegations add nothing to support scienter. ...... 9

          4.      Viewed holistically, Plaintiffs' theory of fraud makes no sense. ....................................................................................... 10

     B.      Plaintiffs Fail to Plead Falsity with the Requisite Particularity .......... 11

          1.      Illumina's accounting for GRAIL was not false or misleading. ............................................................................... 11

          2.      GRAIL's financial projections were not false or misleading. ............................................................................... 12

          3.      Statements that Illumina expected the merger to accelerate Galleri's adoption and save lives were not false or misleading. ................................................................ 13

          4.      Defendants' opinions about Galleri's clinical data and plans for FDA submissions were not false or misleading. ........ 17

          5.      Defendants' responses about conflicts of interest were not false or misleading. ................................................................. 19

     C.      Plaintiffs Fail to Plead Loss Causation. ............................................... 20

     D.      Plaintiffs Fail to Plead a Scheme Claim. ............................................. 22

III.    CONCLUSION ............................................................................................ 22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna Inc. Securities Litigation,*
34 F.Supp.2d 935 (E.D. Pa. 1999)......................................................................15

*In re Alphabet, Inc. Securities Litigation,*
1 F.4th 687 (9th Cir. 2021)................................................................................16

*Bond v. Clover Health Investments, Corp.,*
587 F.Supp.3d 641 (M.D. Tenn. 2022)..............................................................12

*Carvelli v. Ocwen Financial Corp.,*
934 F.3d 1307 (11th Cir. 2019).........................................................................13

*In re Cerner Corp. Securities Litigation,*
425 F.3d 1079 (8th Cir. 2005)...........................................................................14

*City of Hollywood Police Officers' Retirement System v. Citrix
Systems, Inc.,*
649 F.Supp.3d 1256 (S.D. Fla. 2023)...................................................................8

*In re Cloudera, Inc.,*
121 F.4th 1180 (9th Cir. 2024)..........................................................................11

*Connecticut Retirement Plans and Trust Funds v. Amgen Inc.,*
660 F.3d 1170 (9th Cir. 2011)...........................................................................21

*Espy v. J2 Global, Inc.,*
99 F.4th 527 (9th Cir. 2024).......................................................................20, 21

*In re Eventbrite, Inc. Securities Litigation,*
2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ...................................................18

*Fecht v. Price Company,*
70 F.3d 1078 (9th Cir. 1995).............................................................................15

*Frenzel v. AliphCom,*
76 F.Supp.3d 999 (N.D. Cal. 2014).............................................................21, 22

*In re Galena Biopharma, Inc. Securities Litigation,*
117 F.Supp.3d 1145 (D. Or. 2015).....................................................................22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**ILLUMINA DEFS' REPLY ISO MTD SAC
CASE NO. 3:23-CV-02082-LL-DTF**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
63 F.4th 747 (9th Cir. 2023).........................................................................................8, 17

*Homyk v. ChemoCentryx, Inc.*,
2023 WL 3579440 (N.D. Cal. Feb. 23, 2023)....................................................................17

*In re Intuitive Surgical Securities Litigation*,
65 F.Supp.3d. 821 (N.D. Cal.)...........................................................................................17

*In re iPass, Inc. Securities Litigation*,
2006 WL 496046 (N.D. Cal. Feb. 28, 2006).........................................................................2

*Irving Firemen's Relief & Retirement Fund v. Uber Technologies, Inc.*,
998 F.3d 397 (9th Cir. 2021)..............................................................................................20

*In re Iso Ray, Inc. Securities Litigation*,
189 F.Supp.3d 1057 (E.D. Wash. 2016) ............................................................................11

*Klaehn v. Cali Bamboo, LLC*,
2021 WL 3044166 (S.D. Cal. June 14, 2021)......................................................................2

*LifeLine Legacy Holdings, LLC v. OZY Media, Inc.*,
2022 WL 2119122 (N.D. Cal. June 13, 2022) ...............................................................2, 10

*Lloyd v. CVB Financial Corporation*,
811 F.3d 1200 (9th Cir. 2016)............................................................................................21

*In re Mattel, Inc. Securities Litigation*,
2021 WL 1259405 (C.D. Cal. Jan. 26, 2021).....................................................................22

*In re McKesson HBOC, Inc. Securities Litigation*,
126 F.Supp.2d 1248 (N.D. Cal. 2000)..................................................................................4

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) .............................................................................................21

*In re Montage Technology Group Limited Securities Litigation*,
78 F.Supp.3d 1215 (N.D. Cal. 2015).............................................................................4, 12

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)...........................................................................................1, 10

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Oklahoma Firefighters Pension & Retirement System v. Snap Inc.*,
2024 WL 5182634 (9th Cir. Dec. 20, 2024) ....................................................... 9

*Oregon Pubic Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014) .................................................................... 2, 20

*Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc.*,
2023 WL 4418886 (N.D. Cal. May 24, 2023) ...................................................... 22

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) .................................................................... 2

*In re Quality Systems, Inc. Securities Litigation*,
865 F.3d 1130 (9th Cir. 2017) ................................................................ 13, 14

*In re QuantumScape Securities Class Action Litigation*,
580 F.Supp.3d 714 (N.D. Cal. 2022) ............................................................ 16

*Red River Resources, Inc. v. Mariner Systems, Inc.*,
2012 WL 12865418 (D. Ariz. Dec. 6, 2012) ..................................................... 10

*Rok v. Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ....................................................... 20

*Ryan v. FIGS, Inc.*,
2024 WL 187001 (C.D. Cal. Jan. 17, 2024) ..................................................... 3

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
732 F.Supp.3d 300 (S.D.N.Y. 2024) ............................................................ 10

*Scheller v. Nutanix, Inc.*,
450 F.Supp.3d 1024 (N.D. Cal. 2020) .......................................................... 3

*Schueneman v. Arena Pharmaceuticals, Inc.*,
840 F.3d 698 (9th Cir. 2016) ................................................................... 17

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
56 F.Supp.3d 1121 (C.D. Cal. 2014) ............................................................ 6

*SEB Investment Management AB v. Symantec Corporation*,
2019 WL 2491935 (N.D. Cal. June 14, 2019) ................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**ILLUMINA DEFS' REPLY ISO MTD SAC**
**CASE NO. 3:23-CV-02082-LL-DTF**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Studen v. Funko, Inc.*,
 2024 WL 2209686 (W.D. Wash. May 16, 2024) ................................................ 17

*Sylebra Capital Partners Master Fund Ltd. v. Everbridge, Inc.*,
 2023 WL 3549506 (C.D. Cal. May 9, 2023) ..................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ....................................................................................... 2, 4

*Western Pennslyvania Electrical Employees Pension Fund v. Mentor
 Graphics Corporation*,
 2018 WL 4524107 (D. Or. May 29, 2018) ........................................................ 14

*Webb v. SolarCity Corporation*,
 884 F.3d 844 (9th Cir. 2018) ..................................................................... 5, 8, 9

*Welgus v. TriNet Group, Inc.*,
 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .................................................. 18

*Wochos v. Tesla, Inc.*,
 985 F.3d 1180 (9th Cir. 2021) ................................................................*passim*

*York County v. HP Inc.*,
 2024 WL 1327247 (N.D. Cal. Mar. 27, 2024) .................................................. 20

**Statutes**

15 U.S.C.
 §78u-5(c)(1)(B)(i) .............................................................................................. 2
 §78u-4(b)(2)(A) ................................................................................................. 3
 §78u-5(i)(1) ...................................................................................................... 13

## I.   INTRODUCTION[1]

This securities case rests on a fundamentally implausible theory of fraud. The Opposition goes to great lengths to obscure that reality, but cannot change it.

Plaintiffs' core theory is that Illumina's leadership deliberately engineered a ruinous deal to overpay for GRAIL by billions of dollars—even though such a deal would destroy the value of their own Illumina stock. But the Ninth Circuit has made clear that implausible theories of fraud, like that one, do not create the "strong inference" of scienter the law requires. *Nguyen v. Endologix*, 962 F.3d 405, 414-15 (9th Cir. 2020) ("[T]he PSLRA neither allows nor requires us to check our disbelief at the door."). And Plaintiffs cannot solve that problem by speculating that Illumina's leadership secretly owned GRAIL stock as well; Plaintiffs withdrew that allegation months ago and cannot resurrect it through their Opposition now.

Unable to defend their core theory directly, Plaintiffs obscure its flaws by taking liberties with their own allegations in the SAC, the challenged statements, and the law. The Opposition conflates issues and time periods with abandon. It overstates the SAC's allegations—and invents others. It mischaracterizes challenged statements, when it acknowledges them at all. And it misstates the law on everything from puffery, to forward-looking statements, to judicial notice, and more.

In the end, Plaintiffs are not really alleging fraud; they are using hindsight to second-guess Illumina's strategy and business decisions in pursuing a merger that did not pan out. But that has never been a basis for federal securities liability, and it is not a basis here either. The SAC does not state claim for securities fraud. The Court should dismiss with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Fail to Plead a Strong Inference of Scienter.

While Plaintiffs fail to plead falsity and loss causation, their Opposition shows

---

[1] Unless noted, defined terms mirror those in Illumina Defendants' Opening Brief, ECF 62-1, emphasis is added, internal quotation marks and alterations are omitted.

scienter is the shortest path to dismissal. We start there.

"The strong inference standard presents no small hurdle," demanding "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova v. H.C. Wainwright*, 993 F.3d 1097, 1106, 1108 (9th Cir. 2021). The standard for forward-looking statements is even "stricter." *In re iPass Sec. Litig.*, 2006 WL 496046, at *8 (N.D. Cal. Feb. 28, 2006). It requires particularized facts showing the speaker had "*actual knowledge*" the "statement was false or misleading." 15 U.S.C. §78u-5(c)(1)(B)(i). And for every statement—forward-looking or not—courts must also consider "plausible, nonculpable explanations" for making the statement. *Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 324-26 (2007).

The SAC wilts under these standards, an independent basis for dismissal.

### 1.  Plaintiffs plead no cognizable motive.

Though motive alone cannot create a strong inference of scienter, its absence can create a compelling inference *against* scienter. *Prodanova*, 993 F.3d at 1108.

**No motive for Febbo or Samad.** Plaintiffs fail to address, and thus concede, that Febbo and Samad had no motive. *Klaehn v. Cali Bamboo*, 2021 WL 3044166, at *9 (S.D. Cal. June 14, 2021) ("[F]ailure to respond in an opposition brief…constitutes waiver."). This strongly supports dismissing claims against both. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 607 (9th Cir. 2014) (must "allege scienter with respect to *each* of the individual defendants"); *LifeLine Legacy v. OZY Media*, 2022 WL 2119122, at *4 (N.D. Cal. June 13, 2022) (no motive "is an additional basis for finding the scienter allegations to be inadequate").

**No motive for Thompson.** The best Plaintiffs can muster for Thompson is that a complaint in Delaware once claimed certain individuals were "poisoned by their personal stake in the deal." Opp'n 50. That is the definition of conclusory, no matter who said it. But more to the point, the allegation was not about Thompson or any other Defendant in this action; it was about an entirely separate list of individuals (whom the Delaware plaintiff described as the "Conflicted Directors").

Ex. 43 ¶¶8, 97. It is flatly irrelevant here.

**No motive for deSouza.** Plaintiffs insist deSouza must have had a motive because his post-acquisition compensation was higher than it was in 2019.[2] Opp'n 46. But they allege no facts showing his pay was tied to the deal. Without that link, a mere pay increase cannot support an inference of scienter. *SEB Inv. Mgmt. v. Symantec*, 2019 WL 2491935, at *9 (N.D. Cal. June 14, 2019) (even allegations "specifically and directly [tying] executive bonuses to the very instrument used to commit the alleged fraud" found insufficient to support scienter).

**No motive for Aravanis.** Plaintiffs argue Aravanis was motivated to deceive Illumina investors to push the deal through. Opp'n 4, 50-51. But Illumina investors had no say over the deal; the Illumina Board made that decision. MTD 30. And Aravanis was neither on the Board nor in control of anyone who was. *Id.*

As for Aravanis' stock sales, Plaintiffs offer no serious argument they were "suspicious," as the law requires. *Id.* 32. Selling after finally receiving freely tradeable shares is ordinary, not suspicious. *E.g.*, *Ryan v. FIGS*, 2024 WL 187001, at *12 (C.D. Cal. Jan. 17, 2024) (sale after end of "lockup" "not suspicious"); *Scheller v. Nutanix*, 450 F.Supp.3d 1024, 1042 (N.D. Cal. 2020) (same). And Plaintiffs' assertion that Aravanis "did not need the liquidity" is pure *ipse dixit*; nothing in the SAC supports it or sheds light on his finances. Opp'n 51.

2.  **Plaintiffs allege no contemporaneous facts to support a strong inference of scienter for any challenged statement.**

Plaintiffs also fail to plead contemporaneous, compelling, and particularized facts to support scienter for each category of challenged statement. *See* 15 U.S.C. §78u-4(b)(2)(A) (must plead scienter for "each act or omission alleged").

**No scienter for alleged GAAP violations.** Plaintiffs' GAAP theory is smoke and mirrors. They say Illumina used the cost method to hide related-party

---

[2] Plaintiffs fail to mention deSouza's 2019 compensation was artificially lower than *any other year* because the annual equity grant was moved to Q1 2020. Ex. 44 at 65.

transactions, but do not identify a single hidden transaction. Opp'n 52. Then they say Illumina used the cost method to hide Aravanis' stock ownership in GRAIL and role in the deal, but they never explain if or how that information would be disclosed under a different accounting method. *Id.*; MTD 33. Most critically, they do not allege using the cost method was "obviously wrong." MTD 33. Without such facts, there is no "cogent and compelling" inference of scienter. *Tellabs*, 551 U.S. at 324.

Plaintiffs' other arguments are thus beside the point—but also wrong. They claim Illumina reduced its GRAIL stake in 2017 to conceal conflicts in a deal not contemplated until **three years later**. Opp'n 52. That is neither plausible nor supported by a single well-pled fact. They also argue the alleged violations were sophisticated and thus "could only have been carried out with the approval and knowledge of senior management." *Id.* 49. Even if that made sense (it does not), it is just a dressed-up core operations inference. But as Plaintiffs' own cases confirm, that inference requires **specific details** about the **impact** of the alleged GAAP violation. *See In re McKesson HBOC Sec. Litig.*, 126 F.Supp.2d 1248, 1273 (N.D. Cal. 2000) (identifying specific transactions of improper revenue recognition and calculating precise amount of revenue inflation); *In re Montage Tech. Grp. Sec. Litig.*, 78 F.Supp.3d 1215, 1225-27 (N.D. Cal. 2015) (identifying related-party transactions accounting for 71% of revenues). Plaintiffs plead no such details here.

**<u>No scienter for Illumina's internal projections for GRAIL.</u>** Plaintiffs' projections theory is even more far-fetched. It begins with the false premise that if Defendants knew the S-4 did not include Illumina's projections, they must have had scienter. Opp'n 43. That is wrong for several reasons.

To start, it ignores the purpose of the S-4, which was to provide *GRAIL* stockholders with information for their vote on the merger. *Id.* at 138-39 (asking "GRAIL stockholders [to] approve the Merger…no vote of Illumina stockholders is required"). Indeed, the first substantive page of the S-4 shows it was directed to GRAIL stockholders: "To Stockholders of GRAIL, Inc." Ex 12 at 120.

Next, it ignores the numerous, clear disclosures specifying exactly which financial projections were included in the S-4 and why—only those projections ***GRAIL's financial advisor relied on*** to render its fairness opinion, and the ***GRAIL board relied on*** to approve the merger and recommend to GRAIL stockholders that they vote in favor of the transaction. *Id.* at 295.[3] The SAC contains no contemporaneous facts showing the GRAIL board relied on Illumina's internal projections, much less that it believed those projections were more accurate than those prepared by GRAIL's own management team. Without that, there is no inference—much less a strong inference—that omitting Illumina's projections from the S-4 was "an extreme departure from the standards of ordinary care" or posed "so obvious" a risk of misleading investors that Defendants must have known about it. *Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018).

Finally, Plaintiffs argue Defendants knew GRAIL's assumption of broad reimbursement by 2025 was impossible to achieve because it hinged on FDA approval. Opp'n 43. But there are no well-pled facts showing FDA approval by 2025 was impossible, let alone that Defendants had "actual knowledge" it was. MTD 16-18. Plaintiffs cite 2019 and 2020 FDA communications that the *STRIVE study **alone** would not secure FDA approval*. Opp'n 42. But the projections assumed broad reimbursement ***five years later***, during which time GRAIL conducted additional clinical studies to support approval. And though Plaintiffs ignore it, the S-4 explicitly disclosed this exact issue:

> GRAIL recognizes that its STRIVE clinical study alone would not be sufficient for a proposed multi-cancer early detection intended use statement and GRAIL plans on providing evidence from additional clinical studies to support a PMA for Galleri.

Ex. 12 at 205. The S-4 also described "GRAIL's ongoing discussions with FDA regarding the data that will be needed to support a PMA for a multi-cancer detection

---

[3] There are two key SEC rules governing disclosures on a Form S-4 (Regulation S-K and Regulation S-X) and neither mandates disclosure of financial projections.

test based on a proposed intended use," and how GRAIL incorporated that feedback:

> GRAIL has incorporated certain FDA feedback, and are evaluating incorporation of certain other FDA feedback, into its plans to generate additional clinical evidence, including its ongoing PATHFINDER study. Specifically, GRAIL revised its **_PATHFINDER_** study protocol to include as a secondary objective the evaluation of the performance of Galleri using specificity, positive predictive value, and accuracy of tissue of origin predictions. For GRAIL's **_SUMMIT_** study protocol, it included collection of cancer symptoms data from provider records to facilitate analyses. GRAIL is evaluating incorporation of FDA feedback into its design and analysis plan for the **_STRIVE_** study, such as the sample size for GRAIL's planned validation analysis and assessing cancer risk variables to help characterize the cancer risk profiles of the intended cohort. GRAIL also intends to incorporate FDA feedback into one or more **_additional studies_** under development and planning.

*Id.* at 204. Defendants' disclosure of "the precise risks" Plaintiffs allege were hidden "negates an inference of scienter." *ScripsAmerica v. Ironridge Glob.*, 56 F.Supp.3d 1121, 1165 (C.D. Cal. 2014).

**No scienter for statements about efficacy and future FDA submissions.** Echoing the arguments above, Plaintiffs contend Defendants knew their statements about Galleri's efficacy (*i.e.*, the test works) and plans for future FDA submissions were misleading because GRAIL supposedly lacked sufficient clinical data for FDA approval. Opp'n 42 (citing pre-class period FDA communications and an FE allegation that it was "common knowledge"). But again, the S-4 fully disclosed both (i) the modifications GRAIL made to its clinical program after discussions with FDA, and (ii) the sufficiency of GRAIL's clinical data:

> FDA has indicated that the sufficiency of GRAIL's clinical data, including comparative performance data, will be a review issue as part of its review of GRAIL's PMA for the proposed intended use. While GRAIL plans to continue discussions with FDA and provide FDA with additional information, the FDA may raise additional questions or request additional information in connection with the submission of a marketing application.

Ex. 12 at 204. Defendants' disclosure of the allegedly omitted risk negates any inference of scienter. *ScripsAmerica*, 56 F.Supp.3d at 1165.

Plaintiffs also claim Illumina's expert in the FTC proceedings admitted it would take "seven to ten years at minimum" to conduct the clinical study needed for

FDA approval, which Plaintiffs contend is "at least five years longer than in Defendants' public timeline." Opp'n 42. That is false. The expert was addressing how long it would take to complete the "whole process"—*i.e.*, from development of a biomarker to detect each type of cancer, to design of a clinical study, and enrollment and completion thereof. Ex 25 at 74. All of this was to support his conclusion that GRAIL was years ahead of its alleged competitors in that process: in addition to years of development work, GRAIL had received FDA approval to proceed with its PATHFINDER study, started enrollment in December 2019, and completed enrollment by 2021. ALJ Op. 32, 143-47.[4] This is not a factual dispute; Plaintiffs simply mischaracterize their own sources.

**No scienter for statements about accelerating adoption and saving lives.** Plaintiffs similarly claim Defendants made "admissions" in FTC proceedings supporting scienter for the "accelerate" and "save lives" statements. Opp'n 41-42. Again, Plaintiffs simply mischaracterize the record.

They start with the premise that Illumina and GRAIL executives "admitted Illumina had no plan, resources, or relevant expertise for accelerating Galleri." *Id.* 22 (citing ¶¶113-115); *see id.* 41. But the SAC alleges no supporting facts, and for good reason: as the global leader in genetic testing, Illumina has vast resources and deep expertise. MTD 3-4. The SAC merely says one executive testified "Illumina did not include any acceleration efficiency in its financial model," ¶114, and another noted that one group within Illumina "did not"—*before* the merger and any resulting changes—"have the budget needed for Galleri's clinical tests," ¶115. That is a far cry from admitting Illumina lacked resources or expertise.

Likewise, Plaintiffs claim Defendants admitted they were "unable to substantiate" any acceleration claim. Opp'n 41. That is wrong twice. The snippet comes from the FTC decision, not any Defendant's testimony. FTC Op. at 80.[5] And

---

[4] https://www.ftc.gov/system/files/ftc_gov/pdf/D09401InitialDecisionPublic.pdf.
[5] https://www.ftc.gov/system/files/ftc_gov/pdf/d09401commissionfinalopinion.pdf.

it concerns Illumina's burden to rebut the FTC's *prima facie* case of anticompetitive effects, not the defense of any public statement about acceleration.

**No scienter for statements in 2023 about D&O insurance.** Plaintiffs argue that because a Delaware court said Illumina's purchase of D&O insurance supplied a "credible basis" to infer a "knowing violation of positive law," it must also support scienter here. Opp'n 44. That is dead wrong. The Delaware court was not assessing whether the purchase of insurance or its costs should have been disclosed; it was assessing whether the purchase of insurance supplied a "credible basis" (the most lenient legal standard) to infer the directors knew it was illegal to close the deal while a standstill was in place. MTD 7-8. However, as the ECJ decision confirms, there was no "violation of positive law" because the standstill was invalid. *Id.*

Plaintiffs also quibble with Illumina's alleged omission of its D&O insurance cost. Opp'n 43-44. But they cite no independent disclosure obligation—no law, rule, or regulation. Nor do they dispute that Illumina disclosed the IMA in November 2021 (*i.e.*, two years before the challenged statement) stating (i) Illumina would, to the extent possible, indemnify its D&Os from claims arising from the GRAIL deal, and (ii) if prohibited from doing so, Illumina would obtain insurance to indemnify them. MTD 28-29. As for cost, it was an immaterial fraction of Illumina's $3.28 billion in expenses that year. This precludes the notion that omitting such a detail establishes "an extreme departure from the standards of ordinary care…which presents a danger of misleading [investors] that is either known to the defendant or is so obvious that the actor must have been aware of it." *Webb*, 884 F.3d at 851.

Finally, Plaintiffs proclaim that if Illumina's responses to questions about insurance were false, it shows scienter. Opp'n 44. That is "wholly circular"; falsity and scienter are separate elements for a reason. *City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys.*, 649 F.Supp.3d 1256, 1270 (S.D. Fla. 2023); *see Glazer Cap. Mgmt. v. Forescout Techs.*, 63 F.4th 747, 766 (9th Cir. 2023) (falsity and scienter are separate inquiries that should not be "co-mingl[ed]"). And none of Plaintiffs' cases

even hints otherwise. Opp'n 44 (collecting inapposite cases).

**No scienter for statements in 2023 about conflicts of interest.** Plaintiffs maintain Defendants had information supporting Icahn's accusations of conflicts of interest. *Id.* 44-45. But this is just another reference to the vague allegation in Delaware that certain individuals were "poisoned by their personal stake in the deal." *Id.* As discussed above, that allegation is conclusory—and not even about any Defendant in *this* action. *Supra* §II.A.1.

Finally, Plaintiffs argue Defendants "undoubtedly knew" it was misleading to say "Aravanis was recused from any decisions to sign and close" the deal because he "played a central role in the Board's decision-making process." Opp'n 45. But that is pure conjecture. Plaintiffs do not dispute that Aravanis played no role in the final "decisions to sign and close." *Id.* And the SAC contains no facts—none—to suggest Defendants knew or should have known that an undisputably true statement about those final decisions might somehow lead a reasonable investor to think Aravanis had no involvement at all in the process leading up to those final decisions.

### 3. The remaining allegations add nothing to support scienter.

**The core operations inference does not apply.** Core operations is a doctrine that in "rare circumstances" can impute knowledge to defendants absent "accompanying particularized allegations" that they actually received the information. *Okla. Firefighters Pension & Ret. Sys. v. Snap*, 2024 WL 5182634, at *3 (9th Cir. Dec. 20, 2024). Here, Plaintiffs invoke it to show Defendants' knowledge of three alleged facts: (i) Illumina's projections; (ii) the absence of a concrete plan for accelerating adoption; and (iii) FDA feedback on STRIVE. Opp'n 47, 56. But the issue is not Defendants' knowledge of those facts; it is whether it was "so obvious" that omitting them would mislead investors. *Webb*, 884 F.3d at 851. As discussed above, it was not. *Supra* §II.A.2. So core operations serves no function in this case.

**None of the executive departures support scienter.** Straining further, Plaintiffs claim eight resignations over seven years support scienter. Opp'n 48-49.

But the case they cite involved six executive resignations in less than one year. *San Antonio Fire & Police Pension Fund v. Dentsply Sirona*, 732 F.Supp.3d 300, 322 (S.D.N.Y. 2024). Here, the cadence is unremarkable. MTD 35-36. So, instead, Plaintiffs argue the timing is suspicious because some resignations loosely coincided with their laundry list of alleged corrective disclosures, Opp'n 55-56. But Plaintiffs allege 11 corrective disclosures over two-and-half years—some overlap is inevitable. Mere unavoidable temporal proximity does not create scienter. And the SAC alleges no facts linking any departure to any corrective disclosure. MTD 35-36 (collecting cases that departures alone do not support scienter).

**deSouza's divorce proceedings are irrelevant.** Plaintiffs insist deSouza's divorce proceedings bear on his credibility. Opp'n 48, 55-56. But they have nothing to do with any alleged misrepresentation in this case and thus support no inference of scienter. *See LifeLine*, 2022 WL 2119122, at *4 (scienter allegations must be "tethered" to alleged misrepresentations); *Red River Res. v. Mariner Sys.*, 2012 WL 12865418, at *5 (D. Ariz. Dec. 6, 2012) (disregarding divorce order, as "it relates to [his] credibility and not to whether plaintiff has adequately pleaded" scienter).

### 4.      Viewed holistically, Plaintiffs' theory of fraud makes no sense.

Plaintiffs' theory of scienter defies all logic. They claim Illumina's leadership deliberately overpaid for GRAIL by billions of dollars, knowing it would destroy the value of their own Illumina stock. But the Ninth Circuit categorically rejects fraud claims that are "implausible" or do not "resonate in common experience." *Endologix*, 962 F.3d at 415. And none of Plaintiffs' responses can salvage theirs.

Plaintiffs first try to reject the premise, suggesting certain Defendants somehow profited from what Plaintiffs label "one of the most disastrous attempted mergers in biotech history." Opp'n 1, 56-57. If that sounds incredible, it is. Again, the allegation that Illumina's board was "poisoned by their personal stake in the deal" was about a *different set* of directors. *Supra* §II.A.1. As for deSouza, the SAC alleges nothing connecting his ordinary-course compensation to the GRAIL deal. What

cannot be disputed is that any hit to Illumina's stock price would harm a major Illumina stockholder—like deSouza—more than most.

So, Plaintiffs fall back on their main argument: even if Defendants lost millions in the alleged fraud, scienter might still be inferred—somehow. Opp'n 57. They cite *In re Iso Ray Securities Litigation* for the proposition that a scheme's profitability "is not conclusive of intent." 189 F.Supp.3d 1057, 1076 (E.D. Wash. 2016) ("[T]he fact Defendants were deprived of the opportunity to profit from their fraud does not negate an inference of scienter."). But here, Plaintiffs do not allege Defendants' scheme failed or was intended to be profit-neutral; they allege Defendants' scheme *succeeded* (*i.e.*, Illumina overpaid for GRAIL), and that the necessary consequence of their scheme was the decimation of their personal Illumina stock holdings. *In re Iso Ray* does not support finding scienter on a theory like that. No case does.

The Opposition thus confirms what was clear from the start: Plaintiffs' case hinges on one of the most fundamentally implausible fraud theories ever asserted. It defies binding Ninth Circuit law—and common sense. There is no inference of scienter here, which independently warrants dismissal for all Illumina Defendants.

**B.      Plaintiffs Fail to Plead Falsity with the Requisite Particularity.**

Another independent ground for dismissal is Plaintiffs' failure to plead falsity. They insist otherwise, repeatedly claiming falsity cannot be resolved at the pleading stage. *E.g.*, Opp'n 5, 17, 18, 24, 26. That is a breathtaking misstatement of law. "The PSLRA prescribes an *exacting* standard, under which a litany of alleged false statements, unaccompanied by the pleading of *specific* facts indicating why those statements were false, is insufficient." *In re Cloudera*, 121 F.4th 1180, 1187 (9th Cir. 2024). Plaintiffs fail to meet this exacting standard for any category of challenged statement—making dismissal at the pleading stage not just appropriate, but required.

**1.      Illumina's accounting for GRAIL was not false or misleading.**

The Opposition both clarifies and narrows Plaintiffs' theory of falsity for the alleged accounting violations—but fails to support it. Opp'n 38-40.

**Application of GAAP.** Plaintiffs do not dispute that Illumina's statements about its accounting treatment for GRAIL were opinions and therefore governed by *Omnicare*. MTD 11-12. They argue these opinions were misleading because Defendants omitted the "true" reason for selecting the cost method—which Plaintiffs contend was to "conceal the conflicted nature of the acquisition." Opp'n 40. That is pure conjecture. *Supra* §II.A.2. Plaintiffs cite no document, witness account, or other evidence supporting that theory.[6]

**Disclosures in S-4.** Plaintiffs argue that describing the GRAIL transaction as "arms' length" in the S-4 *must* be false because "Aravanis was Illumina's lead negotiator." Opp'n 40. Plaintiffs, however, do not identify a single fact supporting that conclusory label—not a single email, meeting, or call with GRAIL. Nor do they allege any such communication was omitted from the S-4's "Background of the Merger" section. The only alleged omission about negotiations with GRAIL is a purported failure to disclose deSouza's outreach to GRAIL in April 2020. Opp'n 40. But Plaintiffs cite no facts to support that either. MTD 13-14.

### 2. GRAIL's financial projections were not false or misleading.

Plaintiffs' challenge to GRAIL's projections fails on multiple fronts.

**No duty to disclose Illumina's projections.** Plaintiffs maintain that including GRAIL's projections in the S-4 created a duty to disclose other projections (*i.e.*, Illumina's). Opp'n 17-19. That is not the law. While there are cases, and Plaintiffs cite some, requiring a ***target company (i.e., GRAIL) to disclose its projections*** when seeking its stockholders' approval, the reverse is not true. Plaintiffs cite no case

---

[6] In contrast to the cases on which they rely, Plaintiffs do not identify a single related-party transaction with GRAIL that was purportedly omitted *from the 10-K or 10-Qs*, much less plead with specificity how such omissions purportedly misled investors. *Cf. Montage*, 78 F.Supp.3d at 1225 (allegedly omitted related-party transactions that "accounted for between 50 and 71 percent of [the defendant company's] revenues" and all revenue growth sufficient to plead falsity); *Bond v. Clover Health Invs.*, 587 F.Supp.3d 641, 662 (M.D. Tenn. 2022) (failure to mention "Bermudez and his control of insurance brokerages that accounted for a substantial amount of Clover's success in the one geographic market where that success had occurred" misleading).

requiring a **buyer (i.e., Illumina)** to disclose its own internal projections of the target.

**Protected forward-looking statements.** Next, Plaintiffs make three attempts to evade the PSLRA safe harbor for forward-looking statements. Each fails.

*First*, Plaintiffs suggest GRAIL's projections were not forward-looking at all. Opp'n 19-20. Of the PSLRA's many definitions of "forward-looking statement," ***financial projections are the first***. 15 U.S.C. §78u-5(i)(1) ("statement containing a projection of revenues" is "forward-looking"). *In re Quality Systems* does not change that. Opp'n 20. There, projections were paired with "a concrete description of the past and present state" of affairs, and only that distinct, severable concrete description was not forward-looking. 865 F.3d 1130, 1144 (9th Cir. 2017).

*Second*, Plaintiffs assert the S-4's cautionary language was "boilerplate." Opp'n 21. That is plainly wrong. The law requires only "that an issuer mention important factors that could cause actual results to differ from those in the forward-looking statement." *Carvelli v. Ocwen Fin.*, 934 F.3d 1307, 1326-27 (11th Cir. 2019). Here, the S-4 went further, disclosing *every* risk Plaintiffs complain about and more. MTD 15-16 (collecting disclosures).

*Third*, Plaintiffs rehash the argument that Defendants "knew the S-4 projections could not be achieved." Opp'n 20-21. But as discussed above, that argument rests on made-up "admissions" in FTC testimony; no cited testimony supports Plaintiffs' self-serving characterizations of it. *Supra* §II.A.2.[7]

### 3. Statements that Illumina expected the merger to accelerate Galleri's adoption and save lives were not false or misleading.

Plaintiffs' retorts on the "accelerate" and "save lives" statements fail.

**Protected forward-looking statements.** Plaintiffs argue the "accelerate" and "save lives" statements fall outside the PSLRA safe harbor because they (i) were not

---

[7] Plaintiffs also point to conclusory assertions from FE's but allege no particularized facts to (i) support the FE opinions, (ii) show the FEs shared their opinions with any Illumina Defendant, or (iii) show that any Defendant agreed. MTD 24-25.

forward-looking, (ii) were made with actual knowledge of falsity, and (iii) lacked meaningful cautionary language. Opp'n 27. None of these arguments has merit.

To start, Plaintiffs claim the statements were not forward-looking because they omitted or misstated "then-existing facts." *Id.* (citing *Quality Sys.*, 865 F.3d at 1146-48). But the only alleged *omission*—FDA feedback on STRIVE—was disclosed in the S-4. *Supra* §II.A.2. As for *misstatements* of present fact, *Quality Systems* holds they are actionable only if plaintiffs allege particularized facts showing they were false when made. 865 F.3d at 1142; *accord Wochos v. Tesla*, 985 F.3d 1180, 1193 (9th Cir. 2021) ("We agree…this aspect of the statement is not itself forward-looking," but "nonetheless conclude that the statement is not actionable, because Plaintiffs have not pleaded sufficient facts to establish that the statement is materially false or misleading."). Plaintiffs cite two statements about Illumina's teams and capabilities—"we have the teams that can work on reimbursement and regulatory approval," and "incredible [] commercial capability, support capability," etc.—but allege no facts showing Illumina lacked them. Opp'n 27. Nor would that be plausible given Illumina's leadership in biotech.

Further, it is beyond dispute that the portions of the accelerate and save lives statements that speak to future, post-merger effects were forward-looking. And under Plaintiffs' own authority, those portions remain protected so long as they were made without actual knowledge of falsity or accompanied by meaningful cautionary language. *Quality Sys.*, 865 F.3d at 1141-42. Here, they satisfy both. Plaintiffs' only attempt to show "actual knowledge" relies on vague references to "admissions, testimony, and documents." Opp'n 27. But as discussed above, that argument lacks merit.[8] *Supra* §II.A.2. And Plaintiffs' cursory dismissal of the cautionary language

---

[8] More fundamentally, predictions of future outcomes are not false when made unless they are *impossible* to achieve. *See W. Pa. Elec. Emps. Pension Fund. v. Mentor Graphics*, 2018 WL 4524107, at *16 (D. Or. May 29, 2018), *aff'd*, 788 F. App'x 421 (9th Cir. 2019); *In re Cerner Sec. Litig.*, 425 F.3d 1079, 1084 (8th Cir. 2005). Nowhere in the SAC do Plaintiffs allege it was impossible for Illumina—with its vast

as "mere boilerplate" relies on a single, inapposite, out-of-circuit case. Opp'n 27 (citing *In re Aetna Sec. Litig.*, 34 F.Supp.2d 935, 946 (E.D. Pa. 1999), which found warnings insufficient only because the merger had already occurred, making the statements no longer forward-looking).[9] Here, Illumina never had the chance to prove acceleration because it held GRAIL separate during the EC's review. ¶116.

**Inactionable opinions.** Plaintiffs dispute that statements about accelerating adoption of Galleri and saving lives were inactionable opinions. They point to *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995), for the proposition that false statements cannot be opinions. Opp'n 26. But *Omnicare*, which post-dates *Fecht* by two decades, is controlling. And while Plaintiffs claim to plead both objective and subjective falsity under *Omnicare*, their only support is mischaracterized FTC testimony and publicly disclosed FDA feedback on STRIVE. *Id.* 26-27. For the same reasons discussed above, neither allegation supports falsity here. *Supra* §II.A.2.

**No admission of falsity.** Plaintiffs contend Defendants misled investors by claiming Illumina had a concrete plan to accelerate Galleri, then later admitted in the FTC proceedings that no such plan existed. Opp'n 22-23. That is a gross distortion.

*First*, Plaintiffs claim deSouza told investors, "we have a very clear line of sight into how we can accelerate the ***plan***." *Id.* 23 (emphasis by Plaintiffs); *id.* 3, 5. But they omit the last five words. In full, the statement reads: "we have a very clear line of sight into how we can accelerate ***the plan that they are on today***." ¶325. The full statement makes clear he was referring to ***GRAIL's*** existing plan, not Illumina's.

*Second*, Plaintiffs argue deSouza said Illumina had "modeled GRAIL's value in connection with Illumina's acceleration of Galleri." Opp'n 23. But the statement discusses modeling the value of Illumina's participation in GRAIL's revenue stream

---

resources and international presence—to accelerate the adoption of Galleri or that helping patients diagnose cancer could save lives. As such, all these statements fit comfortably within the PSLRA safe harbor.

[9] Moreover, *Aetna*'s holding regarding "on track" statements cannot be squared with the Ninth Circuit's holding in *Wochos*; as such, any reliance on *Aetna* is misplaced.

as a non-owner (*i.e.*, absent the merger) compared to owning GRAIL. ¶336. It does not mention acceleration at all.

*Third*, they insist that estimating the number of lives saved by acceleration *implied* a concrete acceleration plan. Opp'n 23. But they cite no facts supporting that inference, and no challenged statement makes that link. *See Wochos*, 985 F.3d at 1194 (no falsity where plaintiffs failed "to plead sufficient facts to establish that the actual term used had the distinctive, and false, meaning that Plaintiffs claim"). Moreover, many "save lives" statements contain no numbers at all. *E.g.*, ¶¶350, 355, 359, 362. And those that do merely reflect the estimates Illumina's expert presented in the FTC proceedings. *Compare, e.g.*, ¶376 ("with Illumina's acceleration, the Galleri test can conservatively save 10,000 additional lives in the U.S. and additional lives in the E.U. over the next nine years") *with* Ex. 25 at 795-96 (expert's "conservative" estimate was "7,429 to 10,441 lives saved" in US over nine years).

**<u>Inactionable puffery.</u>** Plaintiffs argue Illumina's acceleration and save lives statements were not puffery, but their lead argument is a glaring misstatement of law: that puffery cannot be decided at the pleading stage. Opp'n 24. That is false. MTD 20-21 (citing cases). In fact, the same cases Plaintiffs rely on elsewhere in their Opposition prove the point. *E.g.*, *In re Alphabet Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (affirming dismissal of "vague and generalized corporate commitments, aspirations, or puffery"); *In re QuantumScape Sec. Litig.*, 580 F.Supp.3d 714, 740 (N.D. Cal. 2022) (dismissing "record-breaking" as puffery).

Plaintiffs' silence on Illumina's puffery cases speaks volumes. They fail to address *Gammel*, *Studen*, and *West Palm Beach*—all of which dismiss statements with identical "acceleration" language. MTD 20-21. And while they attempt to wave off Defendants' "saves lives" cases, Plaintiffs never explain why statements like "dramatically changed patients' lives" and "improve patient lives" were puffery,

but "save lives" was not. Opp'n 24-25; MTD 21.[10]

Finally, Plaintiffs argue statements "in response to analysts are not puffery." Opp'n 25. But *Glazer* does not establish that bright-line rule, as later cases make clear that responses to analyst questions absolutely *can* be puffery. *Sylebra Cap. v. Everbridge*, 2023 WL 3549506, at *3, 8 (C.D. Cal. May 9, 2023) (response to analyst question was puffery); *Studen v. Funko*, 2024 WL 2209686, at *15 (W.D. Wash. May 16, 2024) (same).

### 4. Defendants' opinions about Galleri's clinical data and plans for FDA submissions were not false or misleading.

Plaintiffs' attacks on the "efficacy" and "FDA submission" statements fall flat.

**Unsupported arguments.** Plaintiffs' falsity arguments rest on a series of unsupported and false premises.

*First*, Plaintiffs wrongly equate statements about Galleri's efficacy with representations about FDA approval. Take deSouza's statements that "[t]here are large studies that show the efficacy of GRAIL" and the "technology works." ¶¶333, 405. Plaintiffs argue these were misleading because "Defendants knew Galleri's studies would be insufficient for FDA approval." Opp'n 28. But neither statement says anything about FDA approval.[11]

*Second*, Plaintiffs falsely claim Defendants concealed the "adverse fact" that the FDA told GRAIL before the class period that the STRIVE study would not support approval. Opp'n 28-29. In reality, Illumina disclosed this *exact* issue, detailing GRAIL's ongoing dialogue with the FDA and modifications GRAIL was

---

[10] Plaintiffs' cases are inapt. *E.g.*, *Homyk v. ChemoCentryx*, 2023 WL 3579440, at *16 (N.D. Cal. Feb. 23, 2023) (stated "concrete facts" about specific clinical benefits and trial results); *In re Intuitive Surgical Sec. Litig.*, 65 F.Supp.3d. 821, 834-35 (N.D. Cal.) (stated new method was a safe alternative to traditional surgery).

[11] Plaintiffs' cases are readily distinguishable. *E.g.*, *ChemoCentryx*, 2023 WL 3579440, at *12-14 (company said FDA highlighted no issues with review when, in fact, FDA had specific concerns to be addressed); *Schueneman v. Arena Pharms.*, 840 F.3d 698, 706 (9th Cir. 2016) (defendants touted likelihood of FDA approval based on animal studies without disclosing risk identified in animal studies).

making to STRIVE and other studies in response to FDA's feedback. *Supra* §II.A.2.

*Third*, Plaintiffs distort the challenged statements to fit their false narrative. They combine a March 2021 statement with a January 2023 statement to claim Defendants said no additional studies were needed for FDA approval. Opp'n 29 (combining ¶¶347 and 389). But neither statement says that, and combining them to suggest otherwise is improper. *See Welgus v. TriNet Grp.*, 2017 WL 6466264, at *10 (N.D. Cal. Dec. 18, 2017) (rejecting attempts to plead falsity by "tak[ing] pieces of [statements] out of context"). Worse, Plaintiffs omit that the March 2021 statement explicitly noted "GRAIL is going to continue to do additional studies." MTD 26; Ex. 14 at 377. They call this irrelevant, RJN Opp'n 22, but "an alleged misstatement *must* be read in light of its surrounding text." *In re Eventbrite Sec. Litig.*, 2020 WL 2042078, at *11 (N.D. Cal. Apr. 28, 2020). Plaintiffs also claim Defendants said "Galleri would swiftly earn FDA approval." Opp'n 29. Defendants said no such thing; they gave expectations on timing for FDA *submissions*. ¶347 ("intent is to do an FDA submission in 2023"); ¶389 ("final FDA submission expected in 2024/2025"). And Plaintiffs plead no facts supporting their broader interpretation. *See Wochos*, 985 F.3d at 1194 (no falsity absent "facts to establish that the actual term used had the distinctive, and false, meaning that Plaintiffs claim").

**Protected forward-looking statements.** Plaintiffs recycle their baseless argument that certain statements contain assertions of past or present fact and thus fall outside the safe harbor. Opp'n 34. But Plaintiffs' cited examples are *not* those Defendants argue fall within the safe harbor. MTD 27 (*e.g.*, "submission expected in 2024/2025"). As for cautionary language, Plaintiffs argue it was boilerplate because Defendants omitted that "FDA disapproval" had already occurred. Opp'n 34-35. That is patently misleading. The SAC contains no allegation that GRAIL ever submitted an application that was disapproved. If Plaintiffs are referring to the FDA's feedback on STRIVE (which was not a "disapproval"), it was disclosed in the S-4. *Supra* §II.A.2. Plaintiffs' actual knowledge arguments rest on the same false premises as

their scienter arguments, Opp'n 25, and fail for the same reasons. *Supra* §II.A.2.

**Inactionable puffery.** Plaintiffs rehash their meritless argument that statements made in response to analysts cannot be puffery. Opp'n 32-33. As discussed above, that is not the law. *Supra* §II.B.3. Courts routinely dismiss similar statements as puffery. MTD 27.

### 5. Defendants' responses about conflicts of interest were not false or misleading.

Plaintiffs' arguments for the "conflict-of-interest" and "insurance" statements rest largely on meanings that differ from what the literal words suggest.

Take, for example, the statement that Aravanis was "recused from any decisions to sign and close the GRAIL acquisition." ¶¶411-412. Plaintiffs tacitly concede this is true, arguing they need not show "pure, literal falsity." Opp'n 36. Instead, they claim it was misleading because it *meant* something more—*i.e.*, that "Aravanis did not play a meaningful role in the decision-making process" *before* the final decisions to sign and close. *Id.* 37. That is precisely the argument the Ninth Circuit rejected in *Wochos*: "Where, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise." 985 F.3d at 1193. But here, Plaintiffs do not; they allege *nothing* to support their interpretation of Thompson's statement.[12]

The same goes for statements about D&O insurance. Contrary to Plaintiffs' spin, no one called the policy standard or common. Illumina said "D&O insurance and corporate indemnification are standard for Delaware companies," and "it is not uncommon for a company buying another business to increase insurance limits during the acquisition process." ¶398. Again, the actual words matter—especially

---

[12] Plaintiffs insist Aravanis failed to disclose his GRAIL ownership "on his board disclosure form." Opp'n 37 n.12. But Aravanis was not a board member; as such, he is not required to submit such a form. Plaintiffs plead no contrary facts.

here, where Illumina *also* disclosed the IMA. *Supra* §II.A.2.

### C.     Plaintiffs Fail to Plead Loss Causation.

A third basis for dismissal is loss causation, which fails in three critical ways.

**First**, Plaintiffs wrongly claim loss causation cannot be decided at this stage. Opp'n 58. Courts in this Circuit routinely hold otherwise. *E.g.*, *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 407-09 (9th Cir. 2021) (failed to plead loss causation "with particularity"); *Apollo*, 774 F.3d at 605 ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation").

**Second**, Plaintiffs argue Rule 9(b) does not require them to identify which challenged statement(s) each alleged corrective disclosure supposedly corrects. Opp'n 58-59. At least two Ninth Circuit opinions disagree. MTD 38-39 (citing *Uber*, 998 F.3d at 407-08 and *Espy v. J2 Glob.*, 99 F.4th 527, 541 (9th Cir. 2024).[13]

**Third**, Plaintiffs plead no particularized facts showing any alleged corrective disclosure supports loss causation.

Closing the GRAIL acquisition (8/18/21). Plaintiffs fail to address Defendants' argument that this disclosure revealed nothing new *about the alleged fraud*. MTD 39. Rather, Plaintiffs argue it revealed *other* new information that "surprised analysts"—*i.e.*, that Illumina was closing the acquisition despite the purported standstill order. Opp'n 62. While that decision may have been surprising, it did not reveal fraud, which is required to plead loss causation. *Rok v. Identiv*, 2017 WL 35496, at \*19 (N.D. Cal. Jan. 4, 2017) (plaintiff must allege the stock price decline was "proximately caused *by a revelation of fraudulent activity*").

Third-party critiques of Galleri (11/23/21, 5/5/22, 6/10/22). Plaintiffs do not dispute these disclosures merely repeated existing public criticism of Galleri. MTD

---

[13] Plaintiffs try to rebut this binding authority with a single district court case that they misconstrue. Opp'n 59. *York County v. HP* did not dispense with the requirement to match loss causation allegations to challenged statements; it simply held that plaintiffs need not do so through a corrective disclosure as there are other ways to plead loss causation. 2024 WL 1327247, at \*21 (N.D. Cal. Mar. 27, 2024).

39-40. Instead, they argue Defendants assert an improper "truth on the market" defense. Opp'n 61. They are wrong. Truth on the market is a falsity/materiality defense, not a loss causation issue. *Conn. Ret. Plans & Tr. Funds v. Amgen*, 660 F.3d 1170, 1177 (9th Cir. 2011) ("[T]he truth-on-the-market defense is a method of refuting an alleged misrepresentation's materiality."). And Plaintiffs' allegations confirm the information was previously disclosed. ¶¶202-203, 205-206, 211. The law is clear: ***a later repetition of public information does not establish loss causation***. *Espy*, 99 F.4th at 541 (plaintiff must show the corrective disclosure "provided new information to the market that was not yet reflected in the company's stock price").

Financial results (5/5/22, 8/11/22). Plaintiffs misread *First Solar* to argue an earnings miss alone suffices to plead loss causation. Opp'n 63. It does not. *First Solar* simply states loss causation can be pled in different ways, and in some cases, an earnings miss might suffice. *Mineworkers' Pension Scheme v. First Solar*, 881 F.3d 750, 752-54 (9th Cir. 2018). It cites *Berson*, where the earnings miss revealed stop-work orders central to the alleged fraud. *Id.* at 754. Plaintiffs allege no such link here.

Executive Departures (6/9/22). Plaintiffs repeat conclusory allegations but do not show the market understood any departure to be fraud-related. Opp'n 59, 62.

Headcount Reduction (6/26/23). Unable to refute Defendants' arguments, MTD 41, Plaintiffs change their theory. They now argue the headcount reduction was somehow linked to Illumina's insurance purchase *two years earlier*. Opp'n 61. This makes no sense—and was never alleged in the SAC. *Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1009 (N.D. Cal. 2014) ("The complaint may not be amended by the briefs in opposition to a motion to dismiss.").

SEC Investigation (8/10/23). Plaintiffs concede an SEC investigation cannot support loss causation absent a later confirming event. Opp'n 63. They cite executive departures, the Icahn complaint, and goodwill impairment. But the departures occurred *before* the investigation. ¶210. And neither the Icahn complaint nor the goodwill impairment "confirmed" anything. *Cf. Lloyd v. CVB Fin.*, 811 F.3d 1200,

1210-11 (9th Cir. 2016) (disclosure of loan practices after SEC investigation into same was "confirming"); *In re Mattel Sec. Litig.*, 2021 WL 1259405, at *11-13 (C.D. Cal. Jan. 26, 2021) (whistleblower allegations were "later confirmed").

Icahn Complaint (10/20/23). Plaintiffs claim the Icahn complaint revealed the "new" fact that Illumina directors were "poisoned by their personal stake." Opp'n 62. But Icahn made these same claims during the proxy contest *five months earlier*. *E.g.*, ¶19. And the allegations are not directed at any Defendant in this case. *Supra* §II.A.1. They cannot possibly reveal the fraud alleged here.

Goodwill Impairment (11/9/23). Plaintiffs do not address Defendants' arguments. MTD 42. Instead, Plaintiffs try to link the impairment to GRAIL's projections in the S-4. Opp'n 60-61. But there is no allegation that Illumina's goodwill accounting was based on those projections, so this disclosure cannot establish loss causation. MTD 42. And again, Plaintiffs cannot amend their SAC through their Opposition. *Frenzel*, 76 F.Supp.3d at 1009.

### D.      Plaintiffs Fail to Plead a Scheme Claim.

Plaintiffs erect a strawman to evade their pleading failures. Defendants did not argue a scheme claim can never be based on misrepresentations—only that *this* scheme claim fails because it hinges on alleged misstatements that should be dismissed. MTD 42. Plaintiffs insist they plead deceptive conduct *beyond* misrepresentations, Opp'n 64-65, but none of the conduct they identify was publicly disclosed, as required for a scheme claim. MTD 42. Their cases do not say otherwise. *Plumbers & Pipefitters v. CareDx*, 2023 WL 4418886, at *12 (N.D. Cal. May 24, 2023) (kickback *not* a scheme due to lack of public disclosure); *In re Galena Biopharma Sec. Litig.*, 117 F.Supp.3d 1145, 1196 (D. Or. 2015) (pump-and-dump *was* a scheme because "pump" involved public disclosure).

### III.   CONCLUSION

The SAC should be dismissed in its entirety, with prejudice.

Dated:          February 3, 2025          COOLEY LLP


By: */s/ Koji F. Fukumura*
    Koji F. Fukumura

*Attorneys for Defendants Illumina, Inc., Francis A. deSouza, Alexander M. Aravanis, Phillip G. Febbo, Sam A. Samad, and John W. Thompson*