LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
  colleen.smith@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.3985
Facsimile: +1.858.523.5450

Alexander C.K. Wyman (Bar No. 295339)
  alex.wyman@lw.com
355 S. Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

*Attorneys for Defendants GRAIL, LLC
(n/k/a GRAIL, Inc.), Hans Bishop,
Joshua J. Ofman, and Richard D. Klausner*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Illumina, Inc. Securities Litigation* | CASE NO. 3:23-cv-02082-LL-DTF |
| | **REPLY MEMORANDUM IN FURTHER SUPPORT OF GRAIL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| | Judge:  Hon. Linda Lopez |
| | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| | Special Briefing Schedule Ordered |

## I.      INTRODUCTION

Plaintiffs are attempting to bring serious securities fraud claims against the GRAIL Defendants based on four generic statements by GRAIL's former CEO (Hans Bishop) expressing his opinion that GRAIL's purchase by Illumina would accelerate the availability of GRAIL's cutting-edge product, Galleri, and one statement by GRAIL's President (Dr. Joshua Ofman) that Galleri had the capability to detect fifty different types of cancer—a claim based on a peer-reviewed medical journal that Plaintiffs cannot rebut.  Plaintiffs' allegations come nowhere close to showing that any GRAIL Defendants' statement was false or materially misleading. Mr. Bishop's statements are triply protected under the federal securities laws as opinion statements, puffery, and forward-looking.  They were also not false, and rested on the reasonable belief that Illumina's greater scale could in fact accelerate Galleri's adoption beyond what GRAIL could achieve alone with its more limited resources.  Plaintiffs' effort to discredit Dr. Ofman's statement about Galleri's capabilities rests on allegations that do not contradict it.  And even if Plaintiffs could establish falsity (they cannot), their claims still fail because they plead no facts establishing either scienter or loss causation.

Plaintiffs' "scheme" claim against GRAIL founder Richard Klausner also falls far short.  Making an investment in a private company (GRAIL) does not remotely equate to the kind of facts sufficient to plead a fraudulent scheme.  The claims against the GRAIL Defendants should be dismissed.

## II.      ARGUMENT

### A.      The GRAIL Defendants' Statements Were Not False

#### 1.      Mr. Bishop's Statements Were Not False

Plaintiffs fail to show that Mr. Bishop's belief that Illumina's purchase would "accelerate" Galleri's "adoption" was false.  Stmts. 10, 12, 15, 24.

*First*, Plaintiffs argue these statements are not puffery.  Opp. 24-25.  But their cited cases involved objectively verifiable facts, *see Fecht v. Price Co.*, 70 F.3d

1078, 1080 (9th Cir. 1995) (company said expansion was successful when it was failing), which is entirely unlike Mr. Bishop's general (but quite logical) assertion.[1] So Plaintiffs resort to arguing that whether a statement is puffery is a jury question. Opp. 24 (citing *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014)). In reality, the Ninth Circuit routinely supports dismissing puffery at the pleading stage. *See, e.g.*, *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098-99 (9th Cir. 2022) (affirming dismissal of statements that "plainly fit beneath the umbrella of puffery"); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620-21 (9th Cir. 2022) (affirming dismissal as puffery of "vaguely optimistic" statements).

*Second*, Plaintiffs argue the "acceleration" statements are not forward-looking because they "falsely represented that Illumina *presently* had capabilities it did not have and omitted the *present* facts that Illumina's 'acceleration' claims were not backed by any then-existing 'plan' or 'model.'" Opp. 27. But Mr. Bishop made no such representations—he merely expressed expectations about the future, which are exactly the kinds of forward-looking statements courts protect. Grail Br. 8-9.

*Third*, even if Plaintiffs could clear these hurdles, they plead no facts showing the statements were false. Grail Br. 6-7. Their sole support is that certain witnesses in later FTC proceedings could not quantify acceleration, and the FTC and Fifth Circuit found Illumina and GRAIL had not met their burden for an affirmative defense. Grail Br. 7. But the inability to quantify acceleration is not the same as saying that (a) it would not happen or (b) the GRAIL Defendants lacked a reasonable belief it would. *See In re Rigel Pharms. Sec. Litig.*, 697 F.3d 869, 882 n.12 (9th Cir. 2012) ("[T]hat stated expectations fail to come to pass does not make statement concerning expectations or plans false[.]"); *In re Downey Sec. Litig.*, 2009 WL

---

[1] Plaintiffs cite three statements as proof that Illumina quantified Galleri's acceleration. Opp. 23. Setting aside Plaintiffs' mischaracterization of those statements (Illumina Br. 18-20), Mr. Bishop did not make them.

2767670, at *5 (C.D. Cal. Aug. 21, 2009) ("[E]ven reasonable predictions [can] turn out to be wrong.  Instead, plaintiffs must allege with particularity facts that show the initial prediction was a falsehood.").

*Fourth*, Plaintiffs' assertion that the "acceleration" statements are not protected opinions because they were "factual[ly] false" and "did not fairly align with the information in Defendants' possession," Opp. 26, fails for the same reasons.

*Finally*, Plaintiffs insist the Court disregard any portions of Mr. Bishop's testimony they did not hand-pick.  Opp. 4.  The Court need not rely on Mr. Bishop's additional testimony to dismiss the claims against him, for all the reasons already discussed.  Furthermore, Plaintiffs' position would render the incorporation-by-reference doctrine a nullity.  The doctrine's entire purpose is to prevent plaintiffs from proceeding to discovery on a meritless claim based on a selective misreading of a document—exactly what they try doing here.  GRAIL Defs.' RJN; RJN Reply.

### 2.   Dr. Ofman's Single Statement Was Not False

The only other challenged statement by a GRAIL Defendant is Dr. Ofman's March 28, 2023 statement in a video that "[o]ur Galleri multi-detection test can identify 50 different cancers with a single blood draw . . . with a very low false positive rate, and a very high accuracy to predict in the body any cancer signal is found, and that allows physicians to make an efficient and rapid diagnosis."  Stmt. 40.  Plaintiffs allege no particularized facts showing it was false to assert in 2023 that Galleri could detect 50 different cancers and help facilitate efficient and rapid diagnoses.  Grail Br. 7-8.  Plaintiffs allege this 2023 statement was false because the FDA "informed Defendants before the start of the Class Period"—i.e., before September 2020—that the clinical data at that point "was 'insufficient' to establish Galleri's effectiveness as a diagnostic tool," and because evidence in the FTC proceeding purportedly did not establish that Galleri could detect 50 types of cancer "in an asymptomatic population."  ¶ 396; Opp. 12, 28.  But Plaintiffs again mischaracterize what was actually said.  Dr. Ofman made no claim about FDA

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

approval, or that Galleri's effectiveness had been definitively established in *asymptomatic* individuals. This is nowhere close to securities fraud. *See, e.g.*, *In re Sorrento Therapeutics Sec. Litig.*, 97 F.4th 634, 639, 641-42 (9th Cir. 2024) (statement that company developed cure for COVID that "works 100 percent" was not false because, while "Defendants' enthusiasm . . . might have been overblown," "many initially promising discoveries do not survive the testing required for FDA approval," and "failure to survive testing is hardly evidence that . . . initial enthusiasm was unwarranted or inherently false at the time").

Plaintiffs also fail to address that Dr. Ofman's statement was based on a specific study in a peer-reviewed medical journal that concluded Galleri could detect 50 types of cancer. Grail Br. 15-16. All Plaintiffs say is that the Court should not judicially notice the article. RJN Opp. 11. But whether or not the Court takes judicial notice (and it should, *see* GRAIL Defs.' RJN; RJN Reply), it is not securities fraud for an executive to cite published research—especially when Plaintiffs identify no contemporaneous facts showing the statement was false.

### 3. The GRAIL Defendants Did Not Make the Other Challenged Statements

Plaintiffs argue the GRAIL Defendants are liable for alleged misrepresentations in Illumina's S-4. Opp. 19. But there is no particularized allegation that any GRAIL Defendant signed the S-4, or that Mr. Bishop, Dr. Ofman, or Mr. Klausner was responsible for the financial projections included in the S-4, or that any GRAIL Defendant otherwise exercised "ultimate authority" over the S-4 and its contents. This is fatal. *See Janus Cap. Grp. v. First Deriv. Traders*, 564 U.S. 135, 142-43, 148 (2011) (dismissal on pleadings required where party did not ultimately "control" statement it was "significantly involved" in preparing).[2]

---

[2] *SEC v. Daifotis*, 2011 WL 3295139, *4 (N.D. Cal. Aug. 1, 2011), does not stand for the proposition that "fact issues under *Janus* should be resolved at summary judgment." Opp. 19. There, the parties conceded that *Janus* rendered certain statements inactionable. The case proceeded to discovery based on *other* statements.

## B.   Plaintiffs Cannot Overcome the Absence of Scienter

Plaintiffs' effort to spin a scienter story for the GRAIL Defendants fares no better.  They advance two theories; neither suffices.

*First*, Plaintiffs double-down on FTC testimony—based on their own skewed characterizations—to claim there was no basis for stating the merger would accelerate Galleri's adoption, therefore these statements by Mr. Bishop and others must have been knowingly false.  Opp. 41.  But Plaintiffs do not dispute (because they cannot) the obvious proposition that Illumina's superior funding, broader technical expertise, and regulatory capabilities, among other natural synergies, would accelerate GRAIL's commercialization.  *See* Grail Br. 10.  Nor do they cite any authority suggesting that the absence of specific quantifiable plans or a precise model reflecting how many units the combined company would sell or how much revenue it would generate renders these statements regarding *future expectations* knowingly false.[3]

*Second*, Plaintiffs insist the GRAIL Defendants were motivated to mislead investors to secure an inflated price for GRAIL.  *See* Opp. 46, 50.  But they offer no credible explanation for why the GRAIL Defendants would want to artificially inflate *Illumina's* stock price.  Tellingly, Plaintiffs ignore and have no response for the fact that closing a cash and stock deal at an inflated *Illumina* stock price would only hurt the GRAIL Defendants as they would find themselves owners of fewer and overvalued Illumina shares.  Grail Br. 13.

Contrary to Plaintiffs' assertion that "no innocent inference" for the GRAIL Defendants' actions "is remotely plausible," Opp. 57, the non-fraudulent explanation is far more compelling.  All the statements and actions that Plaintiffs allege were

---

[3] Plaintiffs' sole case, *PCC*, is inapposite.  There, defendants falsely attributed *ongoing* sales slowdowns to temporary market softness, claiming it would soon end, as opposed to a loss of market share, *when in reality they had "elected not to analyze" the issue.  Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, *16 (D. Or. June 27, 2017) (emphasis added) (cited Opp. 41).

motivated by fraud can be better explained by the GRAIL Defendants' genuine beliefs in Galleri, and in the merger's ability to expand access to that life-saving technology.  Grail Br. 14-15.

Finally, Plaintiffs' reliance on former employees' views, Opp. 54-55, does not establish scienter.  At most, those allegations reflect how they perceived Galleri's prospects in light of information available to them; they neither reveal what the GRAIL Defendants believed, nor demonstrate that the GRAIL Defendants possessed information rendering their public statements false.  *See* ¶¶ 147, 154, 274.[4]

### C.   Plaintiffs Do Not "Connect" Their Losses to the "Very Facts" About Which the GRAIL Defendants Supposedly Lied

Plaintiffs remain imprecise about the statements and speakers at issue, which neither the PSLRA nor Rule 9 permits.  *See* Opp. 64.  Securities plaintiffs cannot avoid dismissal and impose the burdens of discovery on defendants by mixing and matching allegations.  A close look at the GRAIL Defendants' challenged statements and the utter absence of any alleged facts connecting those statements to any investor losses independently compels dismissal.

*First*, Plaintiffs argue Mr. Bishop's "acceleration" statements caused investor losses because they were "directly related to disclosures concerning clinician's doubts about Galleri and GRAIL's true value."  Opp. 64.  But Mr. Bishop *did not speak to those things*—only that, whatever Galleri's prospects, they would improve by combining with Illumina.  *See* Stmts. 10, 12, 15, and 24.  Plaintiffs cite no corrective disclosure—or any market revelation—contradicting these statements or even addressing whether acceleration would occur.  While a corrective disclosure need not match the supposedly misrepresented information with rifled precision, it must "connect" to the "*very facts* about which the defendant lied."  *In re Nektar*

---

[4] Plaintiffs' cited cases, Opp. 55, are inapposite for this reason.  *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) (CWs knew defendants had information directly contrary to public statements); *Maverick Fund, L.D.C. v. First Solar, Inc.*, 2018 WL 6181241, at *12 (D. Ariz. Nov. 27, 2018) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

GRAIL DEFENDANTS' REPLY ISO
MOTION TO DISMISS SAC
CASE NO. 3:23-cv-02082-LL-DTF

*Therapeutics Sec. Litig.*, 34 F. 4th 828, 838 (9th Cir. 2022) (quoting *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F. 3d 750, 753 (9th Cir. 2018)) (emphasis added). Plaintiffs discuss *First Solar* in passing but fail to address this requirement at all, or Defendants' other cited authorities applying this well-established standard. *See* Opp. 64.[5]

*Second*, as for Dr. Ofman's single challenged statement about Galleri's performance (Stmt. 40), Plaintiffs do not contest that it was made *years after* all of the disclosures that supposedly corrected it. Instead they pivot to a new argument—nowhere alleged in the Complaint—that it "concealed facts that were causally connected to the nearly $1 billion write-down of GRAIL valuation announced in November 2023." Opp. 64. But Plaintiffs plead *no facts* making this link, much less any sufficient to establish that the November 2023 write-down revealed that Galleri could not identify 50 cancers or allow physicians to make efficient cancer diagnoses. Instead, they connect the November 2023 disclosure to a drop in GRAIL revenue. ¶ 239. Under Plaintiffs' theory, an earnings miss would retroactively render *any* past positive statement misleading—even absent a factual or logical connection between the prior statement and the reason for the earnings miss. That is not the law.

---

[5] The cases Plaintiffs' cite for the proposition that "partial disclosures" are sufficient to plead loss causation, Opp. 60-61, do not help them because, unlike here, in each the alleged corrective disclosure revealed *something directly connected* to the very facts purportedly misrepresented or concealed. *Mauss v. NuVasive, Inc.*, 2016 WL 3681831, at *9 (S.D. Cal. July 12, 2016) (disclosure of subpoena and announcement of settlement connected to misrepresentations touting compliance with federal healthcare laws); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008) (announcement of lower revenues directly connected to misleading sales backlog reports which drove revenue); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210-11 (9th Cir. 2016) (announcement of subpoena directly connected to specific misstatements about compliance); *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *12 (C.D. Cal. Jan. 26, 2021) (disclosure of whistleblower letter directly revealed fraud); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1052, 1057 (9th Cir. 2008) (disclosure of impermissible off-label drug marketing revealed facts contradicting statements touting sales growth); *Karinski v. Stamps.com*, 2020 WL 281716, at *17 (C.D. Cal. Jan. 17, 2020) (announcement of termination of customer relationship connected to misrepresentations concerning that relationship).

**D.      Plaintiffs' Allegations Do Not Establish a Fraudulent "Scheme"**

Plaintiffs say they pled scheme liability claims against Mr. Bishop and Dr. Ofman, but the Complaint paragraphs they cite merely list the five challenged GRAIL statements (at best) and say nothing about a scheme or their alleged role in it. *See* Opp. 65, citing ¶ 254 (reciting an FDA rule), ¶ 273 (citing Bishop testimony referencing general FDA standards, not alleged to be false), ¶¶ 324-30 (identifying three challenged Bishop statements), ¶¶ 375-78 (identifying the fourth challenged Bishop statement), ¶¶ 395-96 (identifying the single challenged Ofman statement). Because Plaintiffs fail to plead a misstatement claim for all the reasons above, their "scheme liability" claim based on the same alleged misstatements also fails. *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (abrogated in part by *Lorenzo v. SEC*, 587 U.S. 71 (2019), *see In re Alphabet Sec. Litig.*, 1 F.4th 687, 709 n.10 (9th Cir. 2021)).

As for Mr. Klausner, Plaintiffs' sole argument is that it was "deceptive" for him to invest in GRAIL while knowing of Illumina's impending bid. Opp. 65. But they never explain what was deceptive, or to whom, or why—especially as the investment was publicly disclosed *before the class period*. *See* ¶ 163 (Mot. at 18). Plaintiffs also do not explain what Mr. Klausner supposedly did to effectuate the merger, encourage investment in Illumina, or otherwise mislead investors. That makes this case totally unlike *In re Vaxart, Inc. Securities Litigation* (the only case Plaintiffs rely on, Opp. 65), as the defendants there allegedly "conspired" to control the public company at issue, caused it to carry out a misleading PR campaign, and then sold their shares in the public company at a profit. 2023 WL 3637093, at *3 (N.D. Cal. May 25, 2023). It defies common sense to conclude (as Plaintiffs seemingly urge) that Mr. Klausner knowingly invested millions in GRAIL while believing it was overvalued in order convince investors in Illumina to overpay, too.

**III.    CONCLUSION**

The GRAIL Defendants request that the Court dismiss the Complaint.

Dated:  February 3, 2025          LATHAM & WATKINS LLP

By: */s/ Colleen C. Smith*
     Colleen C. Smith
       colleen.smith@lw.com

*Attorneys for Defendants GRAIL, LLC (n/k/a GRAIL, Inc.), Hans Bishop, Joshua J. Ofman, and Richard D. Klausner*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW