UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ILLUMINA, INC. SECURITIES LITIGATION, | Case No.: 23cv2082-LL-DTF<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>**[ECF Nos. 62, 68]** |

Plaintiffs Universal and ACATIS sued Defendants Illumina and GRAIL, including their Executives, for allegedly deceiving them and other investors during an acquisition. ECF No. 54 ("Compl.") ¶¶ 1, 31–44.[1] The Court consolidated several related actions into this one federal securities putative class action. ECF No. 29. Defendants moved to dismiss the complaint, Plaintiffs opposed, and Defendants replied. ECF Nos. 62, 68, 70, 73, 75. These matters are fully briefed, and the Court deems them suitable for determination on

---

[1] Plaintiff "Universal" refers to Universal-Investment-Gesellschaft mbH and UI BVK Kapitalverwaltungsgesellschaft mbH; Plaintiff "ACATIS" refers to ACATIS Investment Kapitalverwaltungsgesellschaft mbH; Defendant "Illumina" refers to Illumina, Inc. and its "Executives" CEO Francis A. deSouza, CTO Alexander M. Aravanis, CMO Phillip G. Febbo, CFO Sam A. Samad, and Director John W. Thompson; and Defendant "GRAIL" refers to GRAIL, LLC n/k/a GRAIL, Inc. and its "Executives" CEO Hans Bishop, President Joshua J. Ofman, and Director Richard D. Klausner.

the papers and without oral argument pursuant to Civil Local Rule 7.1. Illumina's request for oral argument is therefore **DENIED**. ECF No. 64. For the reasons below, the Court **GRANTS** Illumina and GRAIL's Motions to Dismiss the complaint.

I.  **BACKGROUND**[2]

Illumina, a public biotechnology company that trades on the NASDAQ, is based in San Diego, California. Compl. ¶ 33. It makes and sells DNA sequencing platforms that are used in numerous medical applications, controlling over 80% of this "gene sequencing" market. *Id*. ¶ 55. In September 2015, Illumina formed GRAIL as a subsidiary. *Id*. ¶ 58. GRAIL developed a multi-cancer-early-detection ("MCED") test, later called "Galleri," that aimed to identify multiple cancer types from a single blood draw. *Id*. ¶¶ 58, 60. As others invested into GRAIL, Illumina's share was eventually reduced to just under 20%. *Id*. ¶¶ 61, 64. After additional fundraising rounds brought GRAIL to a rumored market value of $4 billion, it began to pursue an IPO (initial public offering), purportedly to raise more money to fund and launch Galleri's commercialization. *Id*. ¶ 66.

GRAIL never went public, however, because on September 21, 2020, the first day of Plaintiffs' Class Period, Illumina announced that it would reacquire GRAIL for over $8 billion. *Id*. ¶ 68. Analysts questioned this hefty price tag and other aspects of the proposed deal. *Id*. ¶¶ 71–72. During this time, Plaintiffs allege that Defendants made several false and misleading statements designed to assure investors that acquiring GRAIL was a good investment, including with regards to (1) GRAIL's "financial projections;" (2) Illumina's ability to "accelerate" Galleri's FDA approval and commercialization; and (3) the clinical evidence purportedly supporting Galleri's "proven technology" and ability to "save lives." *Id*. ¶ 69. It worked; analysts assigned Illumina its highest ratings after Defendants made these and related comments. *Id*. ¶ 79. In fact, Illumina security (stock or share) price nearly doubled from September 2020 to August 2021. *Id*. ¶ 88.

---

[2] The following allegations are taken from Plaintiffs' complaint. *See generally* Compl.

The U.S. Federal Trade Commission and European Commission expressed concerns about whether this acquisition would give Illumina a "near-monopoly on the technology relied on by the MCED industry," so the deal became subject to a "standstill," meaning the deal shouldn't close without commissioner approval. *Id*. ¶¶ 80–88. Despite this standstill, Illumina closed the deal on August 18, 2021, which shocked investors and set off a string of eight more surprising "disclosures concerning or connected to the facts misrepresented or concealed by Defendants." *Id*. ¶¶ 89, 419–22. The result: Illumina stock plummeted about 80% through November 9, 2023, the end of Plaintiffs' Class Period. *Id*. ¶¶ 419–22. Plaintiffs allege that these disclosures and accompanying stock drops were proximately caused by Defendants' false and misleading statements. *Id*. But for such prior statements "artificially" inflating Illumina stock, which Plaintiffs purchased, they wouldn't have lost so much money during the post-acquisition disclosure period and stock drops. *Id*. All the while, Defendants, many of whom who had conflicts of interest, protected themselves by doubling their insurance coverage, enriched themselves by selling shares before their adverse disclosures, and the like. *See id*. ¶¶ 165–70, 183–85, 275–89, 294, 320, 322, 338.

## II.   LEGAL STANDARD

"To state a claim under Section 10(b) of the [Securities] Exchange Act and Rule 10b-5, the complaint must plausibly allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Weston Family P'ship v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022).

Parties may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6); *see also Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003) (requiring Rule 12(b)(6) to "be read in conjunction with Rule 8," which requires a short and plain statement showing that the pleader is entitled to relief). To survive this motion, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although

"allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," courts are not required to accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In addition to these ordinary pleading requirements, a "securities fraud complaint under § 10(b) and Rule 10b-5 must satisfy" the "heightened pleading requirements" of "Rule 9(b)" and the Private Securities Litigation Reform Act or "PSLRA." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). That is, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must also "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1)–(2); *see also Weston*, 29 F.4th at 619 (explaining that under the "particularity requirements" of Rule 9(b) and the PSLRA, allegations of "fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"); *Or. Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation.").

### III.   DISCUSSION

Plaintiffs' 185-page complaint, which seems to rely on over 150 documents with nearly 500 allegations to boot, includes causes of action for alleged violations under: (1) Section 10(b) of the Exchange Act and Rule 10b-5(b) against all Defendants except Executive Klausner; (2) Section 10(b) and Rule 10b-5(a) and (c) against all Defendants; and (3) Section 20(a) against all Executives. *See* Compl. ¶¶ 436–72. The putative Class Period covers "all persons or entities that purchased or otherwise acquired Illumina common stock between September 21, 2020, and November 9, 2023." *Id*. ¶ 426. Defendants moved to dismiss the complaint under Rules 8, 9, 12(b)(6), and the PSLRA for failure to state a claim, Plaintiffs opposed, and Defendants replied. ECF Nos. 62, 68, 70,

73, 75.³ Specifically, Defendants argue that dismissal is warranted because Plaintiffs have not adequately pled (1) a material misrepresentation or omission, (2) scienter, and (3) loss causation under Section 10(b) and Rule 10b-5(b), each independent dismissal grounds, which also dooms Plaintiffs' subsequent claims under Rule 10b-5(a) and (c) and Section 20(a). *See generally* ECF Nos. 62-1, 68-1. The Court begins its analysis with loss causation.

### A.  Section 10(b) and Rule 10b-5(b) (Claim 1)

#### 1.  Loss Causation

Loss causation "is simply a variant of proximate cause," meaning "the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). Typically, plaintiffs aim to prove loss causation by a "fraud-on-the-market" theory, so they "must show that the defendants' alleged misstatements artificially inflated the price of stock and that, once the market learned of the deception, the value of the stock declined." *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 407 (9th Cir. 2021). In other words, "the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *Id*. Revealing the truth often takes the form of "corrective disclosures." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 540 (9th Cir. 2024). "To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company." *Id*. (quoting *Lloyd*, 811 F.3d at 1210).

---

³ In support of their motions to dismiss, Defendants also ask the Court to incorporate or judicially notice dozens of documents totaling over 1,600 pages, arguing that they are needed to complete the otherwise cherry-picked picture painted by Plaintiffs in the complaint. *See* ECF Nos. 63, 69. Plaintiffs opposed and Defendants replied. ECF Nos. 71, 74, 76. Because the Court does not rely on Defendants' requests for incorporation or judicial notice when deciding these motions to dismiss, the requests are **DENIED WITHOUT PREJUDICE**.

Here, Plaintiffs allege nine corrective disclosures:

| Date | Disclosure Summary | Closing Price | Change |
|---|---|---|---|
| 2021.08.19 | Illumina announces closing the GRAIL deal. | $470.36 | -7.9% |
| 2021.11.23 | Clinicians in a *Diagnostics* article question Galleri's validity and whether "this test could become a viable pan-cancer clinical screening tool." | $365.74 | -3.0% |
| 2022.05.06 | Illumina reports a revenue miss due to GRAIL and reveals information raising questions about the timeline for Galleri's commercial adoption and clinical validity. | $249.05 | -14.6% |
| 2022.06.10 | Illumina announces Executive Samad's departure. *The New York Times* reports on the high expense and low clinical validity of MCED tests. | $204.19 | -9.0% |
| 2022.08.12 | Illumina reports results showing that GRAIL missed analyst estimates. | $208.33 | -8.4% |
| 2023.06.27 | *STAT* reports that Illumina's headcount reduction will be 10% of its R&D (Research and Development) workforce. | $183.43 | -4.4% |
| 2023.08.11 | Illumina discloses that it is the target of an SEC investigation. | $175.14 | -5.4% |
| 2023.10.24 | News media report on an Icahn shareholder derivative complaint alleging Defendants' "Personal Stake" in the GRAIL acquisition. | $116.10 | -3.0% |
| 2023.11.10 | Illumina announces that it will take a write down of $821 million on GRAIL. | $92.79 | -13.3% |

*See* Compl. ¶ 421.

Plaintiffs allege that there was a "causal connection" between the "alleged fraud" and these "stock price declines," essentially arguing a "fraud-on-the-market" theory. *Id.* ¶¶ 419–23. As Plaintiffs put it: they acquired Illumina stock at "artificially inflated prices" due to "Defendants' materially false and misleading statements," and then "in response to a series of partial disclosures concerning or connected to the facts misrepresented or concealed by Defendants," the stock "declined, causing investors to suffer losses." *Id.* ¶ 420.

Critically, nowhere in the table above or elsewhere in the "Loss Causation" section do Plaintiffs specify which misrepresentations the nine disclosures supposedly correct, leaving it to Defendants and this Court to guestimate the connections. This is inappropriate; "precisely the kind of connect-the-dots exercise that should not be required of courts and defense counsel." *See Anderson v. McGrath*, No. 11-cv-1175-PHX-DGC, 2013 WL 1249154, at *4 (D. Ariz. Mar. 26, 2013). Indeed, such "failure to plead with particularity and distinguish among the various misstatements and revelations that allegedly *caused* that decrease" in the market is grounds for dismissal. *See Irving*, 998 F.3d at 407–10.

In opposition to Defendants' motions to dismiss the complaint on this element, Plaintiffs stress that it needn't plead a "fraud-on-the-market" theory to prove loss causation in lieu of some other way. ECF No. 70, at 72–73. Point taken; "loss causation is a context-dependent inquiry, as there are an infinite variety of ways for a tort to cause a loss." *Lloyd*, 811 F.3d at 1210 (quotation marks and citations omitted). Still, when plaintiffs plead "a causation theory based on market revelation of the fraud"—as here—the "court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). Because the only plausible reading of this complaint is that Plaintiffs must rely on a fraud-on-the-market theory to establish loss causation, they must "trac[e] the loss back to the very facts about which the defendant lied" with sufficient particularity. *See id.* at 753. Here, that means making some attempt to actually link each of the nine corrective disclosures to each Defendant's prior misstatement on that topic instead of forcing the Court—and more importantly Defendants—to speculate how the jigsaw puzzle connects in Plaintiffs' mind. *See Irving*, 998 F.3d at 407–10 (finding that the plaintiff "did not plausibly allege that [the defendants'] alleged misstatements caused its damages" when it "lumps together more than 60 alleged misstatements" with "eight purported corporate scandals" and "fail[s] to link [one defendant's] reduced valuation to any particular scandal or misstatement"); *Espy*, 99 F.4th at 541–42 (finding that the plaintiff "has failed to plausibly allege" any "corrective" disclosure with enough "particularity" when it was unclear how that information "relate[d]

back" to "the alleged misrepresentations"). Since Plaintiffs have failed to do the same here, the Court **DISMISSES** their first claim on this stand-alone ground.

### B.    Section 10(b) and Rule 10b-5(a) and (c) (Claim 2)

Plaintiffs' next claim is for Defendants' alleged scheme to defraud investors under Section 10(b) and Rule 10b-5(a) and (c). *See* Compl. ¶¶ 448–58. These laws make it illegal to use any "scheme" to "defraud" or to "engage in any act" that "would operate as a fraud or deceit" upon another person "in connection with the purchase or sale of any security." *See* 17 C.F.R. § 240.10b-5(a), (c). A "scheme liability claim can depend on misstatements that also violate subsection (b)," and, when it does, the claims will often rise or fall together. *See Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022).

Here, Plaintiffs' scheme liability claim under Rule 10b-5(a) and (c) is basically a duplicate of their first fraud claim under Rule 10b-5(b). *See* Compl. ¶¶ 448–58 (alleging that Defendants' misleading actions "artificially inflated" Illumina stock, which Plaintiffs purchased, causing them to then "suffer losses when the true facts became known" and the stock declined). This "scheme consists entirely of" the allegations underlying Plaintiffs' first claim under Rule 10b-5(b), so it "fails for the same reasons." *See Kang*, 620 F. Supp. 3d at 902; *In re AGS, Inc. Sec. Litig.*, No. 20-cv-1209-JCM-NJK, 2024 WL 581124, at *5 (D. Nev. Feb. 12, 2024) (finding that when the "same set of alleged facts form the basis of fraud under both theories of liability" and the "plaintiff fails to state a claim for relief under claim one" for Rule 10b-5(b) liability, "the scheme liability claim necessarily fails"). Finding the same, the Court **DISMISSES** claim two.

### C.    Section 20(a) (Claim 3)

Anyone who "controls" someone else violating federal securities law may also be held "jointly and severally" liable for the violation. *See* 15 U.S.C. § 78t(a). Plaintiffs allege that Illumina and GRAIL Executives, having considerable control over their companies, are thus liable for any underlying federal securities violations. *See* Compl. ¶¶ 459–72. But since Plaintiffs have not sufficiently pled a primary violation of federal securities law, this claim is **DISMISSED** as well. *See NVIDIA Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014)

("To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5, and then show that the defendant exercised actual power over the primary violator."); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("Section 20(a) claims may be dismissed summarily, [too], if a plaintiff fails to adequately plead a primary violation of section 10(b).").

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** the Motions to Dismiss the complaint for failure to state a claim, but with leave to amend. By **October 27, 2025**, Plaintiffs must file any amended complaint. If Plaintiffs fail to do so by that date, the Court may enter a final order dismissing this case, based both on failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  September 26, 2025

_____
Honorable Linda Lopez
United States District Judge