**APPENDIX B**
**PLAINTIFFS' RESPONSE TO DEFENDANTS' CHART OF FORMER EMPLOYEE &**
**CONFIDENTIAL WITNESS ALLEGATIONS[1]**

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| FE1 | 139, 285 | **Defendants' Position:** Illumina (Not alleged)<br><br>**Plaintiffs' Response:** FE1 "was a member of Illumina's Executive Leadership Team during the Class Period." ¶139. The ELT comprises the senior-most executives at Illumina (¶¶324, 510) and included Defendants deSouza, Aravanis, Samad, Febbo, and Thompson. ¶41. Job descriptions are sufficient for confidential sources. *See* Opp. III.B.2. | **Defendants' Position:** Not alleged<br><br>**Plaintiffs' Response:** FE1 "was a member of Illumina's Executive Leadership Team during the Class Period." ¶139. The ELT comprises the senior-most executives at Illumina (¶¶324, 510) and included Defendants deSouza, Aravanis, Samad, Febbo, and Thompson. ¶41. Job descriptions are sufficient for confidential sources. *See* Opp. III.B.2. | **Defendants' Position:** Not alleged<br><br>**Plaintiffs' Response:** FE1 was an ELT member directly involved in deSouza's efforts "to identify an independent scientist or other backer to publicly praise the GRAIL acquisition and provide legitimacy to deSouza's statements that Illumina would 'accelerate' Galleri's adoption and 'save lives.'" ¶¶139, 285. | **Defendants' Position:** None<br><br>**Plaintiffs' Response:** FE1 "was a member of Illumina's Executive Leadership Team during the Class Period," ¶139, and Defendants deSouza, Aravanis, Samad, Febbo, and Thompson were members of the ELT. ¶41. Further, FEs are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). |

---

[1] This chart reproduces Defendants' Chart of Former Employee & Confidential Witness Allegations (Appendix B, ECF No. 84-5) with "Plaintiffs' Response" below "Defendants' Position." Plaintiffs' Response provides the relevant Complaint paragraphs identifying the relevant allegations concerning each former employee ("FE") and confidential witness ("CW"), and then responds to Defendants' arguments about each FE and CW. Plaintiffs respectfully submit that the Complaint provides a far better format to assess Plaintiffs' allegations, and is the only pleading properly considered on this motion. ¶ refers to Plaintiffs' Third Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("TAC"). ECF No. 81.

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| FE2 | 120, 150, 276 | **Defendants' Position:** GRAIL (Apr 2020-Jan 2022) | **Defendants' Position:** Director of Key Accounts | **Defendants' Position:** FE2's team was "charged with implementing a commercial effort to have health systems and hospitals pay for the Galleri test." <br><br> **Plaintiffs' Response:** FE2's team was "charged with implementing a commercial effort to have health systems and hospitals pay for the Galleri test," and "sought to sell large health systems on Galleri." ¶¶120 & n.3, 150. | **Defendants' Position:** None <br><br> **Plaintiffs' Response:** FE2 "participated in meetings with Senior Vice President of Market Access & Health System Partnerships at GRAIL Mark Morgan, who reported to Defendant Ofman, to discuss the company's commercial strategy" during his tenure. ¶120 & n.3. FEs are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). <br><br> *See also* ¶¶150, 276; Opp. III.B.2. |
| FE3 | 118-120, 150, 276, 278 | **Defendants' Position:** GRAIL 2020-2021 <br><br> Illumina 2008-2020 | **Defendants' Position:** GRAIL: Associate Director of Key Accounts <br><br> Illumina: Executive Account Manager (2008-2020); Clinical Specialist (2017-2020) | **Defendants' Position:** "[A]ttempted to sell Galleri to large health systems in 2021." <br><br> **Plaintiffs' Response:** FE3 was "responsible for Galleri's clinical and commercial strategy," ¶120, | **Defendants' Position:** Worked with Aravanis and Ofman (time period unclear) <br><br> **Plaintiffs' Response:** FE3 "worked with both Defendants Aravanis and Ofman over his over-decade long career at Illumina and |

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| | | | | and "attempted to sell Galleri to large health systems in 2021." ¶150. | GRAIL." ¶118 & n.2. While serving as "an Executive Account Manager from 2008 through 2020 and as a Clinical Specialist at Illumina from 2017 through 2020," FE3 "worked with both Defendants Aravanis and Ofman" "[d]uring this time." *Id.* FEs are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). *See also* ¶¶154, 274; Opp. III.B.2. |
| FE4 | 335 | **Defendants' Position:** GRAIL Sep 2019-Oct 2021 | **Defendants' Position:** Data Scientist | **Defendants' Position:** "[C]onducted process monitoring and handled the data quality process for operational, business, and research systems." **Plaintiffs' Response:** FE4 "conducted process monitoring and handled the data quality process for operational, business, and | **Defendants' Position:** Presented unspecified information to Ofman **Plaintiffs' Response:** "In his role, FE4 conducted process monitoring and handled the data quality process for operational, business, and research systems and *presented this information to Defendant* |

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| | | | | research systems and presented this information to Defendant Ofman, the head of clinical, and members of operations." ¶335 & n.5. | *Ofman*, the head of clinical, and members of operations." ¶335 & n.5. FEs are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). |
| FE5 | 90-91, 93-94, 99-100, 103, 107, 110, 120, 156, 162, 173, 175, 187, 262-263, 276, 281, 302, 309 | **Defendants' Position:** Illumina (2020-2023)  **Plaintiffs' Response:** FE5 "served as a high-ranking Illumina executive during the period from 2020 through 2023." ¶90. Job descriptions are sufficient for confidential sources. *See* Opp. III.B.2. | **Defendants' Position:** High-ranking Illumina executive  **Plaintiffs' Response:** FE5 "served as a high-ranking Illumina executive during the period from 2020 through 2023." ¶90. Job descriptions are sufficient for confidential sources. *See* Opp. III.B.2. | **Defendants' Position:** Responsible for "Illumina business reviews, strategic initiatives, and corporate reporting, and had visibility into senior-level functions and decision-making."  **Plaintiffs' Response:** FE5 "had responsibility for, among other things, Illumina business reviews, strategic initiatives, and corporate reporting, and had visibility into senior-level functions and decision-making. During that time, FE5 attended meetings with Defendant deSouza and others from Illumina's Executive Leadership Team, was included on emails with | **Defendants' Position:** Attended meetings with deSouza and others from Illumina's Executive Leadership Team and participated in presentations concerning the GRAIL acquisition with them.  **Plaintiffs' Response:** FE5 "attended meetings with Defendant deSouza and others from Illumina's Executive Leadership Team, was included on emails with them, and participated in presentations concerning the GRAIL acquisition with them." ¶90. "FE5 reported that members of Illumina's ELT—including Defendants deSouza, Aravanis, Samad, |

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| | | | | them, and participated in presentations concerning the GRAIL acquisition with them." ¶90. | and Febbo—and its Board discussed how Illumina lacked key infrastructure required to launch an MCED like Galleri." ¶100. FE5 recounted the July 12, 2021 meeting in which the ELT decided to close the deal despite the EC standstill, to obtain extraordinary D&O insurance as a condition to closing, and refused to offer any further assurances to the EC. *See* ¶¶173-75. FEs are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). |
| FE6 | 140, 284 | **Defendants' Position:** GRAIL (Jan 2021- Aug 2024) | **Defendants' Position:** Leader of Medical Affairs | **Defendants' Position:** "FE6's team was responsible for medical training, operations, and promotional and non-promotional review of Galleri. FE6 was in charge of approving or disapproving advertising claims. FE6 was further a | **Defendants' Position:** Reported to Ofman<br><br>**Plaintiffs' Response:** FE6 reported to Ofman. ¶140 n.4.  He attended weekly Product Market/Regulatory Communications meetings. ¶140. The PMRC reported to Bishop and Ofman. ¶284. |

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| | | | | member of GRAIL's PMRC committee and participated in weekly meetings." **Plaintiffs' Response:** "FE6's team was responsible for medical training, operations, and promotional and non-promotional review of Galleri. FE6 was in charge of approving or disapproving advertising claims. FE6 was further a member of GRAIL's PMRC committee and participated in weekly meetings" with "product, communications, legal and regulatory executives." ¶¶140 & n.4, 284. | FEs are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). |
| CW | 119, 132-133 | **Defendants' Position:** Not alleged **Plaintiffs' Response:** The CW is a former consultant who "led cancer detection and therapy research efforts at leading biotechnology companies and testified in the FTC | **Defendants' Position:** Consultant **Plaintiffs' Response:** The CW is a former consultant who "led cancer detection and therapy research efforts at leading biotechnology companies and testified in the FTC | **Defendants' Position:** Not alleged **Plaintiffs' Response:** The CW is a "former industry consultant who was *working to develop a cancer detection test for one of GRAIL's competitors.*" ¶132. | **Defendants' Position:** None **Plaintiffs' Response:** The CW "had spoken to *GRAIL senior management* about GRAIL's interactions with the FDA, the FDA told GRAIL that there was "no way" that GRAIL could get |

| FE | ¶ | Employer/Dates of Employment | Title | Job Responsibilities | Contact with Defendants |
|---|---|---|---|---|---|
| | | proceeding." ¶133. Job descriptions are sufficient for confidential sources. *See* Opp. III.B.2. | proceeding." ¶133. Job descriptions are sufficient for confidential sources. *See* Opp. III.B.2. | | approval for the Galleri test using U.K. data because of the differences in standard of care between the U.S. and U.K." ¶132. Confidential sources are not required to have contact with a defendant or speak to their state of mind. *See* Opp. III.B.2 (collecting cases). *See also* ¶133; Opp. Section III.B.2. |