# EXHIBIT A



Electronically
**FILED**
By Superior Court of California, County of San Mateo
ON      09/16/2025
By    /s/  Nelson, Ashlee
**Deputy Clerk**

COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
RYAN E. BLAIR (246724)
(rblair@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  +1 858 550 6000
Facsimile:  +1 858 550 6420

BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone:  +1 212 479 6000
Facsimile:  +1 212 479 6275

Electronically
**RECEIVED**

9/15/2025

CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

*Attorneys for Defendants Illumina, Inc., Francis A. deSouza, Sam A. Samad, Karen McGinnis, Jay T. Flatley, Frances Arnold, Ph.D., Caroline Dorsa, Robert S. Epstein, M.D., Scott Gottlieb, M.D., Gary S. Guthart, Ph.D., Philip W. Schiller, Susan E. Siegel, John W. Thompson, Scott M. Davies, and Joydeep Goswami*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE ILLUMINA, INC. SHAREHOLDER LITIGATION | Lead Case No. 24-CIV-00585 |
| | **CLASS ACTION** |
| This Document Related To: ALL ACTIONS | [PROPOSED] ORDER ON ILLUMINA DEFENDANTS' DEMURRER TO PLAINTIFFS' CONSOLIDATED COMPLAINT |
| | Date:  August 29, 2025 Time:  2:00 p.m. Dept.:  24 Judge:  Hon. Jeffrey Finigan |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**[PROPOSED] ORDER**

Illumina, Inc. ("Illumina"), Francis A. deSouza, Sam A. Samad, Karen McGinnis, Jay T. Flatley, Frances Arnold, Ph.D., Caroline Dorsa, Robert S. Epstein, M.D., Scott Gottlieb, M.D., Gary S. Guthart, Ph.D., Philip W. Schiller, Susan E. Siegel, John W. Thompson, Scott M. Davies, and Joydeep Goswami's (collectively, "Individual Illumina Defendants" and together with Illumina, the "Illumina Defendants") Demurrer to the Consolidated Class Action Complaint filed 8.12.24 ("Complaint") is **SUSTAINED in part** and **OVERRULED in part**.

There are two additional demurrers by co-defendants on the Court's calendar. Those Defendants and their demurrers may be referred to herein, but separate rulings have been issued.

Any references herein to paragraphs using "¶" are to paragraphs in the Complaint.

**Requests for Judicial Notice (RJN)**

The Illumina Defendants' RJNs In Support of the Demurrer are GRANTED, but not for the truth of the matters therein.

Illumina Defendants' documents are judicially noticeable, but not for the truth of the matters therein. Each of the documents falls under Evid. C. §§ 451 or 452(a)-(g), or is not reasonably subject to dispute and is capable of immediate and accurate determination under § 452(h)). Judicial notice is therefore required under § 453. "The Code specifically authorizes the court to consider, as ground for demurrer, any matter which the court must or may judicially notice under Evid. C. §§ 451 or 452." (Weil & Brown, *infra*, at ¶ 7:12.)

Illumina Defendants request judicial notice of documents 1, 2, 4 – 6, and 13, arguing that they are incorporated by reference into the Complaint, subject to judicial notice, or both. Illumina Defendants also request judicial notice of the documents 3, 7 – 12, and 14, "which are U.S. Securities and Exchange Commission ("SEC") filings, press releases, conference call transcripts, and court opinions [and] are subject to judicial notice because they are matters of public record whose accuracy cannot be reasonably questioned." (RJN, pp. 5:16-6:17.)

Plaintiffs argue that Exhibits 1-2, 4-6, and 14 are not incorporated by reference, and that Plaintiffs "hardly rely" on these documents, having cited many of them only 2-3 times. (Omnibus Opp. to RJN, filed Apr. 30, 2025, p. 3:15-18.) Plaintiffs further argue that even if they can be

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

judicially noticed, none of the documents can be used "to improperly introduce competing facts and influence the Court's interpretation of Plaintiffs' allegations," as Plaintiffs argue Illumina Defendants seek to do. (Opp. RJN, p. 4:7-8.) Plaintiffs' cited cases demonstrate that what they are really arguing against is the Court's recognition of the truth of the matters in the documents. However, as Illumina Defendants clarify on reply, they "do not ask the Court to consider any exhibit for its truth." (Reply RJN, filed May 30, 2025, p. 5:3-4.)

**Legal Standards on Demurrer**

The purpose of a demurrer is to test the legal sufficiency of the facts alleged in the operative complaint to see whether they state a cause of action under any legal theory, as a matter of law. (*New Livable California v. Association of Bay Area Governments* (2020) 59 Cal.App.5th 709, 714–715.) To properly state a cause of action, a complaint must allege every element of that cause of action. (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (emphasis added).) And to be sustained, a "demurrer must dispose of an entire cause of action." (*Fremont Indemnity Company v. Fremont General Corporation* (2007) 148 Cal.App.4th 97, 119, emphasis added.) In determining whether a complaint states facts sufficient to constitute a cause of action, courts accept the factual allegations of the complaint as true, as well as facts that may be implied or reasonably inferred from those expressly alleged, and any matters of which judicial notice can be taken but disregards contentions, deductions, and conclusions. (*Richtek USA, Inc. v. UPI Semiconductor Corporation* (2015) 242 Cal.App.4th 651, 658.) "The complaint must be given a reasonable interpretation and read as a whole with its parts considered in their context." (*Herman v. Los Angeles County Metropolitan Transportation Authority* (1999) 71 Cal.App.4th 819, 824.) The complaint is construed liberally, but with a "view to substantial justice between the parties." (CCP §452.) "The complaint must be liberally construed, with a view to substantial justice between the parties … where allegations are subject to different reasonable interpretations, court must draw inferences favorable to the plaintiff, not the defendant." (Weil & Brown, California Practice Guide: Civ. Proc. Before Trial (Rutter, June 2025 Update), ¶ 7:124, internal citations/quotations omitted.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

- 3 -

**[PROPOSED] ORDER ON ILLUMINA DEFENDANTS' DEMURRER; LEAD CASE NO. 24-CIV-00585**

**Factual Background**

This is a securities class action brought by former shareholders of GRAIL, Inc. ("GRAIL"), a company that merged with genomic analysis company Illumina through which the former GRAIL shareholders acquired Illumina common stock. (¶1.) Plaintiffs Loren Scott Mar and Scott Zerzanek ("Plaintiffs") allege that the offering materials and related oral communications issued to pitch the merger of the two companies "contained untrue statements of material fact and omitted material facts both required to be stated under governing SEC regulations and necessary to make the statements made not misleading." (¶4.)

Plaintiffs bring their securities class action on behalf of former GRAIL shareholders who acquired Illumina common stock pursuant to the S-4 registration statement (inclusive of amendments thereto and documents incorporated therein, the "Registration Statement"), the related 424B3 prospectus inclusive of amendments thereto, related prospectuses, and documents incorporated therein, the "Prospectus"), and related oral communications (collectively, the "Offering Materials") issued in connection with the August 2021 stock-for-stock transaction by which Illumina acquired and merged with GRAIL (the "Merger")." (¶ 1.)

The Defendants are as follows:

- **Illumina**: "a California-based genomic analysis company that develops, manufactures, and markets integrated systems for large scale analysis of genetic variation and biological functions" (¶ 31); "orchestrated, negotiated, and controlled the merger" (*Ibid.*)

- **Francis A. deSouza**: "President, Chief Executive Officer, and a Director of Illumina from 2016 until his resignation on June 11, 2023" (¶ 32); "led the GRAIL acquisition, made false and misleading disclosures concerning the Merger in Illumina's securities filings, including in the Offering Materials, and in related oral communication" (*Ibid.*)

- **Sam A. Samad**: "Illumina's CFO and Senior Vice President from January 2017 to July 8, 2022" (¶ 33); "personally reviewed, contributed drafts and/or revisions to, and signed the registration statement and prospectus and thereby, motivated by a desire to serve his own and Illumina's financial interests, directly solicited Plaintiffs and other former

- 4 -

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

GRAIL shareholders to participate in the Merger and thereby acquire newly issued Illumina common stock in the Merger Exchange" (*Ibid*.)

- **Karen McGinnis**: "Vice President and Chief Accounting Officer of Illumina" (¶ 34); same alleged conduct as above

- **Jay T. Flatley**: "Chairman of the Board of Directors of Illumina," Illumina CEO for 17 years from 1999-2016, Chairman of GRAIL's Board of Directors from Jan. 2016-Feb. 2017 (¶ 35); same alleged conduct as above

- **Frances Arnold, Ph.D., Caroline Dorsa, Robert S. Epstein, M.D., Scott Gottlieb, M.D., Gary S. Guthart, Ph.D., Philip W. Schiller, Susan E. Siegel, John W. Thompson**: Directors on Illumina's Board (¶¶ 36-43); same alleged conduct as above

- **Hans E. Bishop**: CEO of Grail from June 2019-Oct. 2021 (¶ 44); same alleged conduct as above

- **Scott M. Davies**: "Vice President and Secretary of SDG Ops, Inc. and SDG Ops, LLC", both wholly owned subsidiaries of Illumina (¶ 45); same alleged conduct as above

- **Joydeep Goswami**: "Senior Vice President of Corporate Development and Strategic Planning of Illumina" (¶ 46); same alleged conduct as above

- **ARCH Venture Partners**: "a venture capital firm based in Chicago with offices in San Francisco" (¶ 48); additional defendants "**ARCH Venture Fund IX Overage, L.P.**, **ARCH Venture Partners IX, LLC**, **ARCH Venture Fund VIII, L.P.**, and **ARCH Venture Partners VIII, LLC**" are "venture capital funds managed by ARCH Venture Partners" (*Ibid*); early investor in Illumina and Grail; "reviewed, contributed to, and signed the Registration Statement

Plaintiffs allege that "[o]riginally a subsidiary of Illumina, GRAIL had been spun off into an independent company in 2017. Then in 2020, after several funding rounds and rumors of a planned (but never-consummated) initial public offering, Illumina announced an agreement to reacquire GRAIL in a stock-for-stock exchange." (¶ 2.)

- 5 -

From about ¶ 68 to ¶ 155, Plaintiffs describe in detail the process of Illumina forming and spinning off GRAIL and then reacquiring it. At times, the complaint is repetitive.

Plaintiffs allege that "the Offering Materials and related oral communications that Defendants issued to pitch the Merger contained untrue statements of material fact and omitted material facts both required to be stated under governing SEC regulations and necessary to make the statements made not misleading." (¶ 4.) They specifically argue that:

(1) "Defendants Falsely Attested to Making "Best Efforts" and "All Necessary Actions" For Regulatory Approval and Consummation of the Merger" (¶¶ 286-302);

(2) "Defendants Falsely Attested to Compliance With Applicable Laws and Regulations" (¶¶ 303-312);

(3) "Defendants Falsely and Misleadingly Touted the Merger as Accelerating Approval, Adoption and Commercialization of Galleri" (¶¶ 313-321); and

(4) "Defendants Falsely Attested to GAAP Compliance" (¶¶ 322-361).

Plaintiffs also allege "pure omissions" in connection with SEC Regulation S-K, Items 303 and 105 based on the same underlying conduct as that alleged in the previous sections. (¶¶ 362-378.)

Plaintiffs assert the following causes of action:

| No. | Cause of Action | Complaint |
| --- | --- | --- |
| 1st | Violation of § 11 of the Securities Act | ¶¶ 526 – 535 |
| 2nd | Violation of § 12(a)(2) of the Securities Act | ¶¶ 536 – 544 |
| 3rd | Violation of § 15 of the Securities Act | ¶¶ 545 – 550 |

The Illumina Defendants demur to the first through third causes of action on the grounds that Plaintiffs lack standing and the Complaint fails to state a cause of action. They additionally demur to the second cause of action on the grounds that the Complaint fails to adequately plead that Individual Illumina Defendants are statutory sellers. (Demurrer at pp. 5 – 6.)

- 6 -

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**Standing**

Plaintiffs have standing and Defendants' arguments to the contrary are not persuasive. Co-Defendant Bishop devotes two sentences to the topic. (Bishop Demurrer at p. 12.) The Illumina Defendants devote the same, but at least cite a case. (Illumina Demurrer at p. 13, citing *Limon v. Circle K Stores Inc.,* (2022) 84 Cal.App.5th 671.) Bishop then relies on the same case in its Reply. (Bishop Reply at p. 6.) The Arch Defendants don't make a standing argument.

First, as Plaintiffs point out in their Opposition, ¶509 cannot necessarily be interpreted as Defendants claim. (Opposition at p. 14.) Plaintiffs state ¶509 should be interpreted as indicating GRAIL was "worth a mere fraction of what Illumina paid" as of mid-June 2024. Further, the Court notes that the Complaint also contains evidence that GRAIL was worth far more than what Illumina paid at the time of the merger. (¶¶ 149 – 151.) Defendants' interpretation of ¶509 in a vacuum ignores the previous 508 paragraphs of context wherein Plaintiffs allege, in an albeit grossly long manner replete with irrelevant information, that GRAIL's decline in value was due to Defendants' actions.

Second, *Limon* does not support Defendants' position regarding a lack of injury-in-fact for the same reason, *i.e.* Plaintiffs have pled injury-in-fact. Whether Plaintiffs' can ultimately meet their burden of proof regarding their alleged injuries is not for determination in the context of a demurrer.

Third, Plaintiffs find support for their standing argument in Section 11 and related authorities that Defendants do not effectively address in Reply. Section 11 is clear who may sue when a registration statement contains qualifying untruths: "any person acquiring such security … may, either at law or in equity, in any court of competent jurisdiction, sue …" (15 U.S.C.A. § 77k(a).) Plaintiffs rely on *DeMaria* and *Levine*, and Defendants fail to address those cases in their Reply. (Bishop Opposition at p. 14, Bishop Reply at p. 6, Illumina Reply pp. 7 – 8.) "[T]he phrase 'any person acquiring such security' is plain on its face. Thus, we have no need to turn to extrinsic sources to determine § 11's meaning." (*DeMaria v. Andersen*, (2nd Cir. 2003) 318 F.3d 170, 177.) "To avoid dismissal for lack of constitutional standing, the Court finds that a plaintiff need only allege that he purchased a security pursuant to a false or misleading registration statement, and that

- 7 -

**[Proposed] Order on Illumina Defendants' Demurrer; Lead Case No. 24-CIV-00585**

at the time of the sale of the security or at the end of the class period, the value of the security had declined." (*Levine v. AtriCure, Inc.,* (S.D.N.Y. 2007) 508 F. Supp. 2d 268, 276.) Plaintiffs allege such facts. (Bishop Opposition at p. 14.)

Defendants' citations to *Velti* and *Shoretel* in Reply do not support their position either, as they are distinguishable. (Illumina Reply at p. 8.) In *Velti*, the plaintiff sold the shares it bought from the defendant at a <u>profit</u>, thus no injury. (*In re Velti PLC Securities Litigation*, (N.D. CA Oct. 1, 2015) 2015 WL 5736589, at *28, "the 96 shares it bought in the IPO on January 28, 2011 were all sold on the same date for a $3.00 per share profit … Section 11 damages are measured by the difference between the amount paid for the security and its price at either: (1) the time the action was filed; or (2) the time the security was 'disposed of in the market,' if it was disposed of before the action was filed." *Shoretel* is equally irrelevant, as it dealt with loss causation, not injury in fact. (*In re Shoretel Inc., Securities Litigation*, (N.D. Cal. Feb. 2, 2009) 2009 WL 248326, at *6, "the January 7, 2008 press release—which plaintiffs affirmatively identify as the disclosure that caused plaintiffs' losses—cannot rationally be inferred as disclosing the alleged misstatements or misleading omissions in the Registration Statement. Accordingly, the face of the Complaint demonstrates negative causation.")

**The Complaint Sounds in Fraud**

Despite Plaintiffs' disavowal of allegations of fraud or intent, the allegations in the Complaint demonstrate that the Complaint sounds in fraud and Plaintiffs must plead their causes of action with the requisite specificity. Plaintiffs allege that Defendants engaged in a course of conduct to hide insider information and push forward with the merger for personal benefit knowing they were in violation of the law and jeopardizing investors while doing so. Indeed, the only purpose for Plaintiff's latest Supplemental Chart in Support of Plaintiffs' Opposition to Illumina Defendants' Demurrer is for Plaintiff to establish "Reasons Why [statements and omissions] False and Misleading." This applies to Plaintiffs' Section 11 and Section 12 claims.

Illumina Defendants argue that the complaint sounds in fraud because (1) Plaintiffs "copied many of their allegations *directly* from the federal securities complaint alleging fraud," (2) repeatedly claim that Defendants knowingly misled investors, and (3) allege violations of Items

- 8 -

303 and 105, both of which require pleading Defendants' knowledge. (Demurrer at p. 13.) Plaintiffs argue that the particularity standard does not apply because "strict liability is expressly pled and the Complaint disavows any allegation of fraud or intent." (Opposition at p. 11.) That does not suffice. (*In re Stac Electronics Securities Litigation* (9th Cir. 1996) 89 F.3d 1399, 1404-1405, fn. 2, "the particularity requirements of Rule 9(b) apply to claims brought under Section 11 when, as here, they are grounded in fraud … Anderson argues that it specifically disclaimed any allegations of fraud with respect to its Section 11 claims. These nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud.")

Illumina Defendants also point to the similarities between the allegations in Plaintiffs' Complaint and those of the federal securities complaint, arguing that because the federal case alleged fraud, Plaintiffs' complaint also alleges fraud. (Demurrer at p. 13.) The federal complaint is captioned *In re Illumina, Inc. Securities Litigation*, Case No. 3:23-cv-02082-LL-BJC (S.D. Cal.), ECF 54. Illumina Defendants cite *Rubke* in support of this argument, which held that "[w]here as here . . . a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." (*Rubke v. Capitol Bancorp* (9th Cir. 2009) 551 F.3d 1156, 1161.) The Court is mindful that just because Plaintiffs used a similar factual basis to plead their Sec. 11 claim as the federal complainants do their Sec. 10(b) claim, it does not automatically follow that the Court can find that Plaintiffs' claim sounds in fraud. Nevertheless, Plaintiffs have plainly pled a fraudulent scheme here and their attempt to label it otherwise is a transparent attempt to avoid the pleading specificity requirement.

**First cause of action – Violation of Section 11 of the Securities Act of 1933**

The demurrer to the first cause of action is OVERRULED. The court finds – at this pleading stage – that Plaintiffs have sufficiently pled that Illumina Defendants made false and/or misleading statements as to generally accepted accounting principles (GAAP) compliance.

Plaintiffs allege that "[t]he SEC declared the Registration Statement effective on February 9, 2021" and Illumina Defendants do not contest this. (¶ 168.) "Section 11(a) imposes liability on issuers and other signatories of a registration statement." (Cal. Bus. Law Deskbook (Dec. 2024

- 9 -

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

Update) Ch. 39A Securities Act of 1933 – Liability and Remedies, at § 39A:2.) Section 11 creates two ways to hold issuers liable for a registration statement's contents: (1) if the registration statement contains an untrue statement of a material fact; or (2) omits to state a material fact ... necessary to make the statements therein not misleading. In either case, the buyer need not prove that the issuer acted with any intent to deceive or defraud. (15 U.S.C. §77k(a); *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, (2015) 575 U.S. 175, 179.) "[Section] 11's false-statement provision [] appl[ies] to expressions of opinion … every such statement explicitly affirms one fact: that the speaker actually holds the stated belief … [A]n expression of opinion is itself always a statement of ... the fact of the belief, the existing state of mind, of the one who asserts it." (*Omnicare, supra*, at p. 184, internal citations omitted.) "Accordingly, liability under § 11's false-statement provision would follow (once again, assuming materiality) not only if the speaker did not hold the belief she professed but also if the supporting fact she supplied were untrue." (*Id.*, at pp. 185 – 186.) Having found that the Complaint sounds in fraud, Plaintiffs must state "with particularity the circumstances constituting fraud … [and] set forth what is false or misleading about a statement, and why it is false." (*Yourish v. California Amplifier* (9th Cir. 1999) 191 F.3d 983, 993, internal citations/quotations omitted.)

Plaintiffs allege facts to state a claim that Illumina Defendants should have used the equity method, rather than the cost method, of accounting. (¶¶ 322-361.) Specifically, the court finds that Plaintiffs have alleged sufficient facts and evidence under each factor of the Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 323 to state a claim that Illumina had significant influence (as defined in that statute) over GRAIL such that the equity method of accounting was the method to apply. Illumina's argument to the contrary, i.e. that Illumina's decision to apply the cost method was a non-actionable opinion, is a factual dispute that may very well carry the day on summary judgment or at trial, but Illumina does not establish that premise as a matter of law that defeats a demurrer at the pleading stage. (MP&A in Support of Demurrer at p. 22.) Illumina Defendants cite *Eargo* in support of their argument that GAAP necessarily involves an exercise of judgment, but Plaintiffs have set forth facts establishing – again, for pleading purposes – that Illumina was <u>required</u> to use the cost method. (*In re Eargo, Inc.*

- 10 -

**[PROPOSED] ORDER ON ILLUMINA DEFENDANTS' DEMURRER; LEAD CASE NO. 24-CIV-00585**

*Securities Litigation* (N.D. Cal. 2023) 656 F.Supp.3d 928, "[i]t is well established in this circuit that accounting judgments <u>may</u> constitute statements of opinion … The Ninth Circuit has recognized that the application of GAAP—at least at times—requires a company to exercise its judgment, such that a company's financial statements <u>may</u> constitute opinions," emphasis added and internal citations/quotations omitted). In other words, just because a particular matter, e.g. which GGAP method to use, may qualify as opinion, it does not necessarily do so as a matter of law in all situations.

Plaintiffs claim that Illumina Defendants violated GAAP by "misreporting its ownership of GRAIL under the 'cost method' in contravention of ASC 323, which requires the 'equity method' when an investor (Illumina) has 'significant influence' over an investee (GRAIL)." (Opposition at p. 20.) Plaintiffs argue that as a result, "Illumina provided far less public disclosure of GRAIL's financial condition, executive compensation, and related party transactions than it should have." (*Ibid*..) Under each factor of ASC 323, they allege sufficient evidence that Illumina exercised significant influence over GRAIL and therefore should have accounted for its investment under the equity method. (Opposition at pp. 21 – 22.) Plaintiffs allege that "ASC 323 requires applying the equity method of accounting if the investment provides the investor the ability to exercise significant influence over investee." (¶ 329.) Significant influence is determined based on several factors: "a. Representation on the board of directors [¶] b. Participation in policy-making processes [¶] c. Material intra-entity transactions [¶] d. Interchange of managerial personnel [¶] e. Technological dependency [¶] f. Extent of ownership by an investor in relation to the concentration of other shareholdings (but substantial or majority ownership of the voting stock of an investee by another investor does not necessarily preclude the ability to exercise significant influence by the investor)." (*Ibid*.)

Plaintiffs summarize their allegations in accordance with ASC 323 as follows:

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**[PROPOSED] ORDER ON ILLUMINA DEFENDANTS' DEMURRER; LEAD CASE NO. 24-CIV-00585**

- *Board representation*: Illumina was represented on GRAIL's Board. Mostafa Ronaghi, Illumina's Chief Technology Officer, was appointed to GRAIL's Board in 2020, while Jay Flatley, Illumina's former-Executive Chairman and former long-time CEO, was an "observer" of GRAIL's Board during at least 2017 and 2018. ¶¶ 346-350.
- *Technological Dependence*: Illumina was GRAIL's "only" supplier of NGS instruments and reagents that could be used with GRAIL's principal product, Galleri. ¶¶ 351-353. Further, as its ownership of GRAIL decreased to 19%, Illumina eliminated perpetual licenses that solidified technological dependence. ¶ 352.
- *Material intra-entity transactions*: GRAIL relied on accessing Illumina's proprietary products and made clear that losing Illumina as a supplier risked interrupting GRAIL's ability to manufacture and commercialize products. ¶¶ 354-355.
- *Interchange of Managerial Personnel*: Senior managers moved between the two companies, for example: Aravanis, Illumina's CTO, was GRAIL's co-founder and its Chief Scientific Officer and Head of R&D from 2016 to 2020; Ronaghi, Illumina's Senior VP of Entrepreneurial Development, was GRAIL's cofounder; Klausner, Illumina's Chief Opportunity Officer was GRAIL's co-founder; etc. ¶¶ 356.
- *Illumina's extent of ownership relative to other shareholders*: Illumina's 14.6% share in GRAIL gave it the largest stake of any individual entity. ¶ 82.

(Opposition at p. 21.) Plaintiffs' cited authorities support this position for pleading purposes. (See *In re Cannavest Corp. Securities Litigation* (S.D.N.Y. 2018) 307 F. Supp. 3d 222, 240, "Plaintiffs' allegation—that defendants represented that their financial statements had been compiled in compliance with GAAP when, in fact, defendants failed to comply with GAAP in several, significant respects—identifies an untrue statement of material fact … Plaintiffs' allegation is then backed by specific factual allegations, identifying each GAAP provision allegedly violated, and in what manner those provisions were violated," internal citations/quotations omitted; *In re Montage Technology Group Limited Securities Litigation* (N.D. Cal. 2015) 78 F. Supp. 3d 1215, 1224-25, "Plaintiffs allege that LQW is a related party to Montage under GAAP, and that Montage's failure to disclose its dealings with LQW as related party transactions in SEC filings made those filings false and misleading … Plaintiffs have pleaded sufficient facts, taken as a whole, to support an inference that Montage and LQW were related parties under GAAP and, accordingly, that Montage's failure to so disclose made its SEC filings misleading … Drawing all reasonable inferences from the above facts in favor of plaintiffs, the Court is satisfied that plaintiffs have adequately pleaded an omission or misrepresentation," internal citations/quotations omitted; *Bond v. Clover Health Investments, Corp.* (M.D. Tenn. 2022) 587 F. Supp. 3d 641, 674, "The plaintiffs have identified reasons why, in context, the defendants may have had a duty to disclose Clover's reliance on related-party transactions to fuel its growth regardless of any additional obligations

- 12 -

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

pursuant to GAAP … Clover's assertions that it complied with GAAP provide an additional, alternative ground for finding fraud, particularly in connection with the undisclosed reliance on related-party transactions involving Bermudez," internal citations/quotations omitted; *In Re Washington Mutual, Inc. Securities, Derivative and ERISA Litigation* (W.D. Wash. 2009) 694 F. Supp. 2d 1192, 1224, "Deloitte's affirmation that the financial statements were presented 'in conformity with accounting principles generally accepted in the United States of America' is an actionable statement of fact … And as Plaintiffs have set forth, this was false because the financial statements were not prepared in conformity with GAAP, given the improper understatement of the Allowance." Further, as Plaintiffs point out and Defendants do not rebut, "[a]t the motion to dismiss stage, the plaintiffs' assertion that certain practices were not generally accepted must be taken as true." (*In re Refco, Inc. Securities Litigation* (S.D.N.Y. 2007) 503 F. Supp. 2d 611, 656–57.)

Plaintiffs' detailed allegations demonstrating that Illumina Defendants were "required" to use the equity method of accounting under the standards set forth in ASC 323 are sufficient to allege misrepresentation as to GAAP compliance. Plaintiffs' cited cases support a finding that Illumina Defendants' statements were not opinions, and therefore do not need to be assessed under the *Omnicare* framework.

This lone basis for the first cause of action suffices and the Court does not reach the remaining arguments because a "demurrer must dispose of an <u>entire</u> cause of action." (*Fremont Indemnity Company, supra.*)

**Second cause of action – Violation of Section 12(a)(2) of the Securities Act of 1933**

The demurrer to the second cause of action is OVERRULED on the same grounds as those stated above, but only as to Illumina and Mr. deSouza. The demurrer to the second cause of action is SUSTAINED as to the rest of the Individual Illumina Defendants. The court finds that Plaintiffs have pled sufficient facts to state a claim that Mr. deSouza, through his use of social media and other mediums to promote the merger, was a statutory seller. The court finds that Plaintiffs' claims as to the rest of the Individual Illumina Defendants are conclusory and otherwise insufficient to allege that they are statutory sellers.

Cooley LLP
Attorneys at Law
San Diego

"The misstatement or omission requirement under Section 12(a)(2) is materially identical to that under Section 11." (*Ryan v. FIGS, Inc.* (C.D. Cal., Jan. 10, 2025, No. 2:22-CV-07939-ODW (AGRx)) 2025 WL 71727, at *7.)

> Under Section 12(a)(2), any person who, by use of any means of interstate commerce, offers or sells a security on the basis of a materially false or misleading prospectus or materially false or misleading oral statements, is liable to the person purchasing from him, unless he can show that he did not know, and could not in the exercise of reasonable care have known, of the falsehood or omission. Section 12(a)(2), accords relief to any person (1) who was offered or purchased a security "by means of a prospectus or oral communication"; (2) from a "statutory seller;" (3) when the prospectus or oral communication "includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading"; and (4) the plaintiff did not "know[ ] of such untruth or omission" **at the time of sale** (the "absence-of-knowledge element").

(Cal. Bus. Law Deskbook, *supra*, at § 39A:62, footnotes omitted, emphasis added.) "With respect to Section 12(a)(2) and Rule 159A, according to the SEC, the date of 'sale' is when an investor becomes committed to purchasing the securities, and not when the transaction is closed or when the investor make payment." (*Id*. at § 39A:65.) Plaintiffs argue that "Section 12(a)(2) … measures from the August 2021 Merger Close, because that is when Plaintiffs became irrevocably committed to the purchase." (Opposition at p. 12; citing *In re Hub Cyber Security Ltd.* (S.D.N.Y. Mar. 20, 2025) 2025 WL 872078, at *14.) Defendants do not contest this point on reply, and the cited case supports this argument, therefore the August 2021 Merger Close is the relevant date for §12(a)(2). "[W]hen a Section 12(a)(2) claim sounds in fraud, it will be subject to the particularity requirement of Fed. R. Civ. P. 9(b)." (Cal. Bus. Law Deskbook*, supra,* at §39A:62.)

The findings as to Section 11 liability based on alleged GAAP statements also support §12(a)(2) liability. But, §12(a)(2) also requires proof that the defendant is a 'statutory seller' within the meaning of the Securities Act. Illumina does not argue that it is not a statutory seller. Plaintiffs' allegations establish that Individual Illumina Defendant deSouza can be held liable as a statutory seller, but Plaintiffs' allegations as to the rest of the Individual Illumina Defendants are conclusory and otherwise insufficient to allege that they are statutory sellers.

[PROPOSED] ORDER ON ILLUMINA DEFENDANTS' DEMURRER; LEAD CASE NO. 24-CIV-00585

Section 12(a)(2) requires proof that the defendant is a "statutory seller" within the meaning of the Securities Act. However, the Securities Act does not define "statutory seller." The leading case that defines who may be a Section 12 defendant is *Pinter v. Dahl*, decided by the Supreme Court in 1988. Post-*Pinter* judicial precedent has settled that an entity is a statutory seller if it (1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicited the purchase of a security, motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner. Thus, a "statutory seller" is one who either transferred title to the purchaser or successfully solicited the transfer for financial gain.

…

Under *Pinter's* second category, to become a statutory seller, a person must do more than merely assist in another's solicitation efforts. The defendant must be the one who solicits, a term that the Supreme Court equates with urges. The *Pinter* Court stressed that the "purchase from" element of Section 12 requires more than a "remote involvement in a sales transaction."18 Under *Pinter*, "neither involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of relationship between defendant and plaintiff that could establish statutory seller status. Post-*Pinter* courts interpreting this successful solicits category of the *Pinter* test suggest some general principles: (1) solicitation does not include ministerial acts, such as mailing an offering document at the seller's request; (2) solicitation generally does not include a general presentation to a group of potential investors at a seminar or other mass meeting; (3) solicitation will be more likely to be found where the defendant touts the investment directly to the purchaser or where defendant had a direct and active participation in the solicitation; and (4) solicitation will be more likely to be found where defendant exerts control over the amount and content of information to be provided to potential investors and/or wields control over the persons to be contacted for possible sales. However, some courts have held that direct or active participation in the solicitation does not require that the defendant "personally" solicited the securities purchased by the plaintiff.

(Cal. Bus. Law Deskbook, *supra*, § 39A:64, footnotes omitted.)

Plaintiffs allege essentially the same facts regarding each Individual Illumina Defendant. (¶¶ 32 – 46.) Plaintiffs allege additional facts as to Individual Illumina Defendant deSouza, and individual defendant Hans E. Bishop. (¶¶ 233-236, 241-242.) Illumina is correct that Plaintiffs fail to sufficiently allege that any individual, other than deSouza, sold shares directly to Plaintiffs or directly and actively solicited Plaintiffs' purchase for their own financial gain. (Demurer at p. 26, citing *Jensen v. iShares Trust* (2020) 44 Cal.App.5th 618, 649–650, "To count as "solicitation," the seller must, at a minimum, directly communicate with the buyer … The complaint thus fails to

- 15 -

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

allege the necessary 'direct and active participation in the solicitation of the immediate sale to hold the issuer liable as a § 12(2) seller," internal citations/quotations omitted.)

Plaintiffs argue that their allegations as to "a direct letter and prospectus promoting the Merger exchange, personally signed by Individual Defendants, and addressed and delivered directly to Plaintiffs and every putative class member," and deSouza's use of Twitter, LinkedIn, and Facebook "to solicit the Merger exchange" are sufficient to show that the individuals are statutory sellers. (Opposition at p. 27.) Plaintiffs cite "*Charles Schwab*, 257 FRD at 550," but the full citation is not included in the Table of Contents or elsewhere in the memo, and the Court was unable to find the case. (See Opposition at p. 27:11.) Plaintiffs also argue that Illumina Defendants "cite older, now rejected decisions" but do not explain which decisions are older/rejected, or provide evidence. (*Id*. at p. 27.) Plaintiffs simply cite to *Pino* seemingly for the general proposition that "a person can solicit a purchase, within the meaning of the Securities Act, by promoting the sale of a security in a mass communication." (*Pino v. Cardone Capital, LLC* (9th Cir. 2022) 55 F.4th 1253, 1260–1261.)

The Complaint sets forth bases – for pleading purposes – upon which deSouza can be held liable in his individual capacity, but not for the rest of the Individual Illumina Defendants. The allegations about the rest of the Individual Illumina Defendants are conclusory, and even if accepted as true, do not demonstrate more than "mere participation." As for deSouza, Plaintiffs allege that on May 6, 2021, he had an op-ed published by *The Wall Street Journal* about the merger in which he stated that "[i]n reuniting with Grail, we will establish a path for regulatory approval and reimbursement. That path will allow all companies to move their innovations in cancer screening forward, bringing them to patients sooner." (¶ 231.) Plaintiffs also allege that he posted that op-ed to Twitter and LinkedIn, again describing how the merger would make cancer screening more widely available and save lives. (¶ 233.) Plaintiffs further allege that Illumina's Twitter, LinkedIn, and Facebook accounts posted a link to a conversation between deSouza and Matthew Herper from a "STAT Health Tech Summit" in which deSouza "highlighted our commitment to acquire Grail." (¶ 235.) Plaintiffs allege that Illumina's Twitter account posted the following in June 17, 2021: "When cancer is detected early, treatment is more successful, and survival rates are higher. Learn

- 16 -

**[PROPOSED] ORDER ON ILLUMINA DEFENDANTS' DEMURRER; LEAD CASE NO. 24-CIV-00585**

more from our CEO Francis DeSouza on how acquiring Grail will allow us to make early cancer screening available to more people quicker, saving lives." (¶ 241.) These actions do not go quite as far as those of the defendants in *Pino*, who made statements on social media such as "[b]y accessing social media, I am offering investment opportunities to the everyday investor, like you!" and "Want to double your money[?]" (*Pino*, *supra*, at 1256.) They do, however, appear to rise to the level of those found to be sufficient in *Hollifield*, which was also relied on by Plaintiff. (Opposition at p.27, citing *Holliefield v. Resolute Capital Partners, Ltd., LLC* (C.D. Cal. Aug. 1, 2023) 2023 WL 8168831.)

**Third cause of action – Violation of Section 15 of the Securities Act of 1933**

The demurrer to the third cause of action is OVERRULED on the same grounds as those stated above with regard to the first and second causes of action. "Section 15 imposes control-person liability only where Sections 11 or 12 have been violated." (Cal. Bus. Law Deskbook, *supra*, § 39A:72.) Accordingly, this cause of action survives demurrer to the extent the first two causes of action survive. Since the demurrer is sustained only as to the second cause of action for Individual Illumina Defendants other than deSouza, this third cause of action survives as to them based on the first cause of action.

**Leave to Amend**

Leave to amend is liberally granted. (*Tarrar Enterprises, Inc. v. Associated Indemnity Corp.* (2022) 83 Cal.App.5th 685, 689, "Unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion, irrespective of whether leave to amend is requested or not.".) While the Court recognizes that "[i]t is an abuse of discretion to deny a party leave to amend a complaint if there is a reasonable probability the pleading can be cured by amendment," that burden is on Plaintiff to show that reasonable probability exists. (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 444.) A plaintiff has the burden of showing the manner in which a complaint may be amended to state a cause of action. (*Physicians Committee for Responsible Medicine v. Los Angeles Unified School District* (2019) 43 Cal.App.5th 175, 193.) In light of the age of this case, the sheer volume of the Complaint, and the fact that Plaintiffs have proposed no manner of amendment, the Court finds the Complaint is incapable of

- 17 -

further amendment and there is no reasonable probability Plaintiff could do so. It's hard to believe Plaintiff has anything else to add to it 185 page Complaint. Nevertheless, if Plaintiff appears at the hearing the Court will afford Plaintiff an opportunity to make such a showing.

If the tentative ruling is uncontested, it shall become the order of the Court. Thereafter, Counsel for Defendants shall prepare for the Court's signature a written order consistent with the Court's ruling pursuant to CRC Rule 3.1312, and provide written notice of the ruling to all parties who have appeared in the action, as required by law and by the CRC. The Court alerts the parties to Local Rule 3.403(b)(iv) regarding the wording of proposed orders. The order should be efiled only, as that is the way it will get to the Court for signature. Do not submit a hard copy of the order to the Court.

**IT IS SO ORDERED.**

Electronically
**SIGNED**
By /s/ Finigan, Jeffrey
09/16/2025

Dated: _____, 2025

_____
The Honorable Jeffrey R. Finigan

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I served the foregoing document on all counsel on record through OneLegal e-filing system.

*/s/ Koji F. Fukumura*
Koji F. Fukumura

Cooley LLP
Attorneys at Law
San Diego

- 19 -