COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
RYAN E. BLAIR (246724)
(rblair@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
CRISTINA M. FERRUOLO (339442)
(cferruolo@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550 6420

BRIAN M. FRENCH (*pro hac vice*)
(bfrench@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone:  +1 212 479 6000
Facsimile:   +1 212 479 6275

Attorneys for Defendants Illumina, Inc.,
Francis A. deSouza, Alexander M. Aravanis,
Phillip G. Febbo, Sam A. Samad, and John W.
Thompson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| IN RE ILLUMINA, INC. SECURITIES LITIGATION | Case No. 3:23-cv-02082-LL-BJW |
|---|---|
| | CLASS ACTION |
| | **REPLY IN SUPPORT OF ILLUMINA DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | Date: January 16, 2026<br>Courtroom: 14B<br>Judge: Hon. Linda Lopez |
| | **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ............................................................................................ 1

II.     ARGUMENT .................................................................................................. 1

    A.  Plaintiffs Fail to Plead Falsity with the Requisite Particularity ............ 2

        1.  The GAAP-compliance statements are inactionable opinions ................................................................................. 2

        2.  GRAIL's financial projections in the S-4 were not misleading ................................................................................ 3

        3.  Statements predicting merger benefits are inactionable ............ 4

        4.  Opinions on Galleri and FDA submissions are inactionable ................................................................................ 7

        5.  Comments on GRAIL's 2022 guidance are inactionable ........... 8

        6.  The statements about the merger process are inactionable ....... 9

    B.  Plaintiffs Fail to Plead a Strong Inference of Scienter ...................... 10

        1.  Plaintiffs' failure to plead motive undermines scienter ........... 11

        2.  Plaintiffs allege no contemporaneous facts to support scienter ................................................................................. 12

        3.  Viewed holistically, Plaintiffs' theory of fraud makes no sense ..................................................................................... 18

    C.  Plaintiffs Fail to Plead Loss Causation ............................................. 18

    D.  Plaintiffs Fail to Plead a Scheme Claim ............................................ 22

III.    CONCLUSION ........................................................................................... 22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Acadia Pharmaceuticals Inc. Securities Litigation*,
   2021 WL 12103007 (S.D. Cal. Mar. 29, 2021) .......................................... 19, 21

*In re Allied Nevada Gold Corporation*,
   2016 WL 4191017 (D. Nev. Aug. 8, 2016) ..................................................... 10

*In re Alphabet, Inc. Securities Litigation*,
   1 F.4th 687 (9th Cir. 2021) ......................................................................... 4, 5

*Berg v. Velocity Financial, Inc.*,
   2021 WL 268250 (C.D. Cal. Jan. 25, 2021) ...................................................... 5

*In re BioMarin Pharmaceutical Inc. Securities Litigation*,
   2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ........................................................ 8

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ................................................... 9

*Cesario v. Biocept, Inc.*,
   2025 WL 3687913 (S.D. Cal. Dec. 19, 2025) .................................................... 4

*City of Hollywood Police Officers' Retirement System v. Citrix Systems, Inc.*,
   649 F.Supp.3d 1256 (S.D. Fla. 2023) ........................................................ 16, 17

*City of Southfield General Employees' Retirement System v. Advance Auto Parts, Inc.*,
   2026 WL 438677 (4th Cir. Feb. 17, 2026) .................................................. 12, 17

*Colbert v. Rio Tinto Plc*,
   2022 WL 355400 (S.D.N.Y. Feb. 7, 2022) ...................................................... 22

*Curry v. Yelp Inc.*,
   2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) .................................................. 21

*In re Daou Systems, Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...................................................................... 17

*Espy v. J2 Global, Inc.*,
   99 F.4th 527 (9th Cir. 2024) .................................................................... 20, 21

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**ILLUMINA DEF'S REPLY ISO MTD TAC**
**CASE NO. 3:23-CV-02082-LL-BJW**

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Facebook, Inc. Securities Litigation*,
87 F.4th 934 (9th Cir. 2023)......................................................................20, 21

*In re Fastly, Inc. Securities Litigation*,
2021 WL 5494249 (N.D. Cal. Nov. 23, 2021)....................................................13

*Financial Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ..........................................................................2, 3

*In re Galena Biopharma, Inc. Securities Litigation*,
117 F.Supp.3d 1145 (D. Or. 2015).......................................................................22

*In re Genius Brands International, Inc. Securities Litigation*,
97 F.4th 1171 (9th Cir. 2024)..............................................................................19

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
63 F.4th 747 (9th Cir. 2023)................................................................................17

*Hadian v. Fate Therapeutics, Inc.*,
2025 WL 2696995 (S.D. Cal. Sep. 22, 2025) ....................................................20

*Hoang v. ContextLogic, Inc.*,
2023 WL 6536162 (N.D. Cal. Mar. 10, 2023).....................................................22

*HRSA-ILA Funds v. Adidas AG*,
745 F.Supp.3d 1127 (D. Or. 2024).......................................................................8

*Huang v. Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019).............................................21, 22

*Hunt v. PricewaterhouseCoopers LLP (PwC)*,
159 F.4th 603 (9th Cir. 2025)................................................................................2

*Illumina, Inc. v. Federal Trade Commission*,
88 F.4th 1036 (5th Cir. 2023)............................................................................6, 7

*In re Intel Corporation Securities Litigation*,
792 F.Supp.3d 1008 (N.D. Cal. 2025)...............................................................7, 8

*In re Intrexon Corporation Securities Litigation*,
2017 WL 732952 (N.D. Cal. Feb. 24, 2017)........................................................21

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Intuitive Surgical Securities Litigation*,
65 F.Supp.3d 821 (N.D. Cal. 2014) .................................................................... 8

*In re iPass, Inc. Securities Litigation*,
2006 WL 496046 (N.D. Cal. Feb. 28, 2006) ..................................................... 10

*In re Iso Ray, Inc. Securities Litigation*,
189 F.Supp.3d 1057 (E.D. Wash. 2016) ...................................................... 18, 19

*Kovtun v. VIVUS, Inc.*,
2012 WL 4477647 (N.D. Cal. Sep. 27, 2012) .................................................... 3

*Kusnier v. Virgin Galactic Holdings, Inc.*,
639 F.Supp.3d 350 (E.D.N.Y. 2022) ................................................................. 5

*Lingam v. Dish Network Corporation*,
2026 WL 438881 (10th Cir. Feb. 17, 2026) ................................................. 6, 15

*Lipton v. PathoGenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ......................................................................... 16

*Lloyd v. CVB Financial Corp.*,
811 F.3d 1200 (9th Cir. 2016) ......................................................................... 21

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) .................................................. 14

*Mandalevy v. Bofl Holding, Inc.*,
2018 WL 3032588 (S.D. Cal. June 19, 2018) ................................................... 19

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ...................................................................................... 10, 17

*McGovney v. Aerohive Networks, Inc.*,
2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) .................................................... 15

*In re McKesson HBOC, Inc. Securities Litigation*,
126 F.Supp.2d 1248 (N.D. Cal. 2000) .............................................................. 12

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ...................................................................... 19, 20

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Montage Technology Group Limited Securities Litigation*,
78 F.Supp.3d 1215 (N.D. Cal. 2015)............................................................ 12, 13

*Mulligan v. Impax Laboratories, Inc.*,
36 F.Supp.3d 942 (N.D. Cal. 2014)..................................................................4

*In re Norfolk Southern Corporation Bond/Note Securities Litigation*,
2026 WL 555420 (2d Cir. Feb. 27, 2026)..........................................................5

*In re Nvidia Corporation Securities Litigation*,
2010 WL 4117561 (N.D. Cal. Oct. 19, 2010)......................................................3

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015) ...................................................................................2, 5, 6

*In re Oracle Corporation Securities Litigation*,
627 F.3d 376 (9th Cir. 2010)..........................................................................9

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014)........................................................................19

*In re Overstock Securities Litigation*,
2021 WL 4267920 (D. Utah Sep. 20, 2021) ..................................................2, 16

*Pollio v. MF Global, Limited*,
608 F.Supp.2d 564 (S.D.N.Y. 2009)..............................................................20

*Prodanova v. H.C. Wainwright & Company, LLC*,
993 F.3d 1097 (9th Cir. 2021)............................................................ 10, 11, 12

*Pujo v. EHang Holdings Limited*,
2025 WL 1242324 (C.D. Cal. Mar. 26, 2025) ..................................................19

*In re Quality Systems, Inc. Securities Litigation*,
865 F.3d 1130 (9th Cir. 2017)........................................................................9

*In re QuantumScape Securities Class Action Litigation*,
580 F.Supp.3d 714 (N.D. Cal. 2022)................................................................4

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
697 F.3d 869 (9th Cir. 2012)........................................................................11

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

v

**TABLE OF AUTHORITIES**
(continued)

Page

*Rok v. Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ..................................................... 21

*Rosenfeld v. Time Inc.*,
2018 WL 4177938 (S.D.N.Y. Aug. 30, 2018) ................................................ 16

*Ryan v. FIGS, Inc.*,
2024 WL 187001 (C.D. Cal. Jan. 17, 2024).................................................... 12

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
732 F.Supp.3d 300 (S.D.N.Y 2024).............................................................. 11

*Seeks v. Boeing Company*,
752 F.Supp.3d 992 (N.D. Ill. 2024)................................................................. 5

*Smilovits v. First Solar Inc.*,
119 F.Supp.3d 978 (D. Ariz. 2015)............................................................... 20

*In re SolarCity Corporation Securities Litigation*,
274 F.Supp.3d 972 (N.D. Cal. 2017)....................................................... 13, 14

*Tadros v. Celladon Corporation*,
738 F.App'x 448 (9th Cir. 2018)................................................................... 10

*Teachers' Retirement System of LA v. Hunter*,
477 F.3d 162 (4th Cir. 2007)........................................................................ 22

*Tellabs, Inc. v. Makor Issues & Rights, Limited.*,
551 U.S. 308 (2007) ....................................................................... 10, 11, 17

*In re UiPath, Inc. Securities Litigation*,
2025 WL 2065093 (S.D.N.Y. July 23, 2025) ................................................ 19

*Warshaw v. Xoma Corporation*,
74 F.3d 955 (9th Cir. 1996) ........................................................................... 8

*Webb v. SolarCity Corporation*,
884 F.3d 844 (9th Cir. 2018)........................................................................ 12

*West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
845 F.3d 384 (8th Cir. 2016)........................................................................ 22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

vi

ILLUMINA DEF'S REPLY ISO MTD TAC
CASE NO. 3:23-CV-02082-LL-BJW

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021)..................................................................................5

*In re XenoPort, Inc. Securities Litigation*,
  2011 WL 6153134 (N.D. Cal. Dec. 12, 2011) ......................................................11

*Yaron v. Intersect ENT, Inc.*,
  2020 WL 6750568 (N.D. Cal. June 19, 2020) ......................................................21

*Zucco Partners, LLC v. Digimarc Corporation*,
  552 F.3d 981 (9th Cir. 2009).............................................................................2, 12

**Statutes**

15 U.S.C.
  §78u-5(i)(1) ...........................................................................................................3
  §78u-5(c)(1)(B)(i)................................................................................................10

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**ILLUMINA DEF'S REPLY ISO MTD TAC**
**CASE NO. 3:23-CV-02082-LL-BJW**

## I.    INTRODUCTION[1]

Plaintiffs charge Illumina with securities fraud for pursuing a merger that did not succeed. But merely second-guessing fully-disclosed business judgments fails, particularly when premised on a theory as implausible as Plaintiffs' here.

Illumina Defendants' Opening Brief demonstrated that the TAC (i) does not allege that any challenged statement was false when made; (ii) rests on a fundamentally implausible theory of scienter; and again, (iii) identifies no loss-causing event that actually corrected a specific prior statement.

The Opposition cures none of this. Plaintiffs attempt to manufacture falsity by rewriting the TAC—conflating time periods, inventing allegations, and recasting opinions and predictions as guarantees. They double down on the same irrational scienter theory, insisting that Illumina's leadership deliberately engineered a ruinous deal to overpay for GRAIL—even though doing so would destroy the value of their own Illumina holdings. And as for loss causation, the Opposition confirms that every supposed loss-causing event either recycles already-public information, bears no connection to any specific prior statement, or both.

At bottom, Plaintiffs ask the Court to infer fraud because Illumina's merger with GRAIL did not pan out. But hindsight does not state a securities fraud claim—and here, hindsight shows Illumina was repeatedly vindicated. Illumina prevailed before the ECJ. The SEC closed its investigation without action. And Icahn dropped his claims and walked away with nothing. What the TAC describes is a series of disclosed business judgments made in the face of disclosed uncertainties. That Plaintiffs now question those judgments does not make them fraudulent. The Court should dismiss with prejudice.

## II.    ARGUMENT

The TAC's "marquee" addition is FE5. Yet, despite citing FE5 29 times, the

---

[1] Unless otherwise noted, all defined terms have the same meaning as Illumina Defendants' MTD, ECF 84-1, all emphasis is added, and internal quotation marks and alterations are omitted.

Opposition fails to show he is reliable. Plaintiffs insist FE5 was a "high-ranking [Illumina] executive," Opp. 11, but that could mean anything from C-suite to regional manager. *In re Overstock Sec. Litig.*, 2021 WL 4267920, at *4 (D. Utah Sep. 20, 2021) (describing CW as "senior-level executive" inadequate). Plaintiffs further claim FE5 was responsible for "business reviews, strategic initiatives, and corporate reporting," Opp. 52, but omit *which* business reviews, *which* strategic initiatives, and *what* reporting. Without these details, FE5 is unreliable as a matter of law. *See Zucco Partners v. Digimarc*, 552 F.3d 981, 995 (9th Cir. 2009).

But even *with* FE5, Plaintiffs fail to plead falsity, scienter, and loss causation.

### A.      Plaintiffs Fail to Plead Falsity with the Requisite Particularity.

Defendants organized the challenged statements into six categories. Plaintiffs fail to plead falsity as to every statement in every category on multiple grounds.

### 1.      The GAAP-compliance statements are inactionable opinions.

Plaintiffs do not dispute that *Hunt v. PwC*, 159 F.4th 603 (9th Cir. 2025), is directly on point and binding. Their sole distinction—that *Hunt* "confirms that whether a statement is an opinion depends on its nature," Opp. 33 n.4—is no distinction at all. Defendants never said otherwise. *See* MTD 9. What Plaintiffs conspicuously avoid is *Hunt*'s central holding: when the nature of the statement rests on an accounting provision that requires "the exercise of judgment," it is an opinion. 159 F.4th at 618. Plaintiffs do not dispute that the GAAP provision here (ASC 323) necessarily requires the exercise of judgment. MTD 9-11. Thus, the GAAP statements are opinions subject to *Omnicare v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 186 (2015).

Rather than address *Omnicare*, Plaintiffs rely entirely on—and urge the Court to defer entirely to—the opinion of a state court judge interpreting federal law before *Hunt* was decided.[2] Opp. 33. There is no legal basis for such deference. *See Fin.*

---

[2] State court defendants' motion for judgment on the pleadings in light of *Hunt* is set for hearing on June 26, 2026.

*Acquis. Partners v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006) (denial of motion to dismiss in another action "cannot be given preclusive effect in this action").

### 2.   GRAIL's financial projections in the S-4 were not misleading.

Plaintiffs' arguments about GRAIL's financial projections fail.

**Forward-looking statements.** Plaintiffs insist GRAIL's financial projections, and the underlying assumption that Galleri would achieve "broad reimbursement" in 2025, were not forward-looking, but rather false statements of present fact. Opp. 15, 17. Nonsense. Of the PSLRA safe harbor's many definitions of "forward-looking statement," financial projections are the ***first***, followed closely by "assumptions underlying" those projections. 15 U.S.C. §78u-5(i)(1); MTD 12.

Next, Plaintiffs claim the safe harbor does not apply because Defendants purportedly knew FDA approval was not expected until 2026 or later, which was a predicate for broad reimbursement. Opp. 17. But Plaintiffs' only support is FE5, who did not work at GRAIL, never interacted with GRAIL leadership, and offers no basis (let alone a particularized one) to know what GRAIL management considered when developing its assumptions. *In re Nvidia Sec. Litig.*, 2010 WL 4117561, at *6 (N.D. Cal. Oct. 19, 2010) (rejecting allegations from CWs not employed at the company).

Finally, Plaintiffs dispute that the assumption was accompanied by meaningful cautionary language. Opp. 17. But the S-4 said: "There can be no assurance that GRAIL's products for which it may seek clearance or approval will be approved or cleared by FDA…" Ex. 1 at 86. Unable to refute the clear connection, Plaintiffs argue the risk had already "been realized." Opp. 17. But they fail to explain how an event predicted to occur four years in the ***future*** had ***already*** failed or been delayed when the statement was made. *Kovtun v. VIVUS*, 2012 WL 4477647, at *12–13 (N.D. Cal. Sep. 27, 2012) (statements about expected FDA approval could not be false or misleading "since the FDA review process had not even commenced" when made).

**No duty to disclose Illumina's projections.** Plaintiffs further insist it was misleading to disclose projections for GRAIL prepared by GRAIL management

without also disclosing those prepared by Illumina management. Opp. 15-17. Plaintiffs, however, do not dispute the S-4 clearly stated that **GRAIL** prepared the projections for **GRAIL**'s stockholders and that investors should **not** rely on them. *Id.*; MTD 13. Thus, there was no "half-truth" because no reasonable investor could read those disclosures and mistakenly believe Illumina prepared the projections. *Cesario v. Biocept*, 2025 WL 3687913, at *7 (S.D. Cal. Dec. 19, 2025) (no "half-truths" where "language from Biocept's proxy filing with the SEC . . . describe[d] the purposes of the [at-issue] reverse stock split"). Nor is there merit to the contention that Illumina should have disclosed its projections because they were "more accurate." Opp. 16 (citing cases addressing multiple projections prepared by seller). It defies common sense that Illumina, the buyer, would have more insight into GRAIL's future than GRAIL's management team. In any event, Plaintiffs allege Illumina's internal projections were also wrong because they included a faulty assumption on retake rates. Opp. 16. While unsupported,[3] that allegation proves the point: projections are inherently uncertain, which is why the PSLRA safe harbor exists.

### 3. Statements predicting merger benefits are inactionable.

Plaintiffs break up the "acceleration" and "save lives" statements into separate sections, Opp. 18-22, 26-27, but their arguments on both fail for the same reasons.

**Puffery.** Nearly every statement is inactionable puffery. MTD 14-15 (citing nine cases dismissing identical or similar language). Plaintiffs ignore that law, relying instead on a series of superficial soundbites and inapposite cases, with no meaningful attempt to tie them to the facts alleged here.

First, Plaintiffs claim puffery cannot be resolved at the pleading stage. Opp. 20 (citing *Mulligan v. Impax Labs.*, 36 F.Supp.3d at 956-62 (N.D. Cal. 2014)). But their own cases—all issued after *Impax*, Opp. 20—prove otherwise. *E.g.*, *In re Alphabet Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (affirming dismissal of "vague and

---

[3] Plaintiffs claim Illumina's 2021 projections were false because retake-rate data from early 2022—*months after the merger closed*—were lower. Opp. 16.

generalized corporate commitments, aspirations, or puffery"); *In re QuantumScape Sec. Litig.*, 580 F.Supp.3d 714, 740 (N.D. Cal. 2022) (dismissing "record-breaking" as puffery). Next, Plaintiffs suggest that statements "critical to a company's business" can never be puffery. Opp. 20. No case supports that sweeping proposition. *See Berg v. Velocity*, 2021 WL 268250, at *4 (C.D. Cal. Jan. 25, 2021) ("even statements about a corporation's core business may be nonactionable puffery") (collecting cases). Finally, Plaintiffs contend the statements cannot be puffery because they were made with "increasing intensity." Opp. 20. But the cases they cite discuss specific safety assurances after catastrophic incidents. *Compare Kusnier v. Virgin Galactic*, 639 F.Supp.3d 350, 374-75 (E.D.N.Y. 2022) (company repeatedly said spacecraft was "safe" after test flights exposed near-catastrophic safety flaws); *Seeks v. Boeing*, 752 F.Supp.3d 992, 1017 (N.D. Ill. 2024) (same); *with In re Norfolk S. Sec. Litig.*, 2026 WL 555420, at *1 (2d Cir. Feb. 27, 2026) (statements puffery despite "unusual importance" because plaintiff "conflates the importance of a statement with its materiality"). Nothing similar is alleged here.

**Opinions.** Plaintiffs half-heartedly declare—without support—that none of the "accelerate" or "saving lives" statements are opinions. Opp. 21, 27. That is wrong. *See* MTD 15-16 & n.11 (citing *Philip Morris*). Recognizing this, Plaintiffs attempt to argue these opinions are actionable under *Omnicare*. They fail.

***Subjective disbelief.*** Based on a single, cherry-picked bullet point from an internal Illumina FAQ document stating, "we do not expect material synergies," Ex. 26 at 10, Plaintiffs insist Defendants expected *no* synergies *whatsoever* of *any kind* resulting from the merger. Opp. 22. Putting aside the myriad examples of other synergies elsewhere in the document, MTD 16, saying "we do not expect **material** synergies," Ex. 26 at 10, neither represents the absence of *any* synergies, nor specifies the *type* of synergies being contemplated (*i.e.,* cost, operational, etc.). MTD 16. Plaintiffs' attempt to equate 'not material' with 'none' improperly "rewrites the statement." *Wochos v. Tesla*, 985 F.3d 1180, 1193 (9th Cir. 2021).

***Embedded false fact.*** Plaintiffs cite snippets of FTC testimony to insist Defendants' statements contained embedded false facts about Illumina's teams and capabilities. Opp. 22. But they ignore the rest of the testimony clarifying that was not what anyone meant. MTD 17-18. Regardless, even without the additional context, Plaintiffs fail to identify any false embedded fact. Take, for instance, Plaintiffs' assertion that the regulatory and reimbursement team was "tiny and missing 98% of the necessary budget." Opp. 22. Plaintiffs claim this renders false deSouza's statements that "we do have a clinical sales team…[and] manufacturing, regulatory, reimbursement, clinical labs, clinical sales and marketing," ¶358, and "[w]e have the teams that can work on reimbursement and regulatory approval," ¶414. Yet those statements imply only two facts: Illumina had the identified teams, and those teams could perform work in the stated areas. *See Omnicare*, 575 U.S. at 185. Defendants never claimed to have *large* teams that were fully funded to work on Galleri before merging as Plaintiffs baselessly suggest.[4] *Lingam v. Dish Network*, 2026 WL 438881, at *10-11 (10th Cir. Feb. 17, 2026) (plaintiffs' view that validation required more did not make "completed a successful field validation" false).

***Omission of material fact.*** Plaintiffs again argue Defendants had no concrete "plan[]" and lacked the resources to accelerate Galleri. Opp. 21. But Plaintiffs do not dispute that Illumina never claimed it had such a plan. MTD 18. Instead, they cite "findings" by the FTC and Fifth Circuit (which later vacated the FTC's decision entirely) that "Illumina was utterly unable to show that there would be any acceleration." Opp. 21. But the FTC and Fifth Circuit did not evaluate whether Defendants' statements were misleading—they only considered whether the FTC could show the merger was likely to result in anticompetitive effects and, if so, whether Illumina's proffered efficiencies outweighed those effects in a quantifiable way under the applicable antitrust standard. *Illumina v. FTC*, 88 F.4th 1036, 1061

---

[4] The same is true for Plaintiffs assertion that Illumina's "regulatory expertise was in no demonstrable way superior" to GRAIL's. Opp. 22. Plaintiffs cite no statement where Defendants contended it was. *See Omnicare*, 575 U.S. at 185.

(5th Cir. 2023). That has no bearing here.

As for the "save lives" opinions, Plaintiffs argue they were misleading because Defendants failed to disclose that "no clinical evidence" showed Galleri could save lives. Opp. 27. That is untenable: Plaintiffs do not dispute multiple studies confirmed its ability to detect early-stage cancers. MTD 4. And Defendants articulated the basis for their opinion: "[c]ancers responsible for nearly 71% of cancer deaths have no recommended early detection screening, and most cancers are detected when chances of survival are lower," ¶408,—*i.e.,* earlier detection improves survival.

**Forward-looking statements.** Plaintiffs concede Defendants' "save lives" statements were forward-looking and accompanied by meaningful cautionary language. *See* Opp. 27; MTD 19. Plaintiffs, however, claim Defendants' statements about the other benefits of the merger fall outside the safe harbor. *First*, they argue the statements contained false present factual assertions about Illumina's existing capabilities. Opp. 22. But, as discussed above, that misconstrues the statements. *Second*, Plaintiffs claim the cautionary language that "many of the anticipated synergies and other benefits of acquiring GRAIL may not be realized," Ex. 1 at 52, was not meaningful because Illumina anticipated "dis-synergies." Opp. 22. Again, that argument fails, as it relies on a rewriting of the internal FAQ document and FE5's unsupported allegations. *Supra* §II.A.3 (opinion); *infra* §II.B.2 (clinical efficacy).

### 4.   Opinions on Galleri and FDA submissions are inactionable.

Plaintiffs' counterarguments on Galleri's efficacy and FDA submissions fail.[5]

**Opinions.** Plaintiffs do not dispute that statements about Galleri's efficacy and value are opinions. Opp. 25. Instead, they claim Defendants made statements about "not needing additional studies," implying the statement related to FDA approval. *Id.* It did not; it related to whether additional studies were needed to show GRAIL could detect cancer. Ex. 31 at 6. They also ignore the very next sentence: "GRAIL is going to continue to do additional studies." MTD 20; *In re Intel Sec. Litig.*, 792 F.Supp.3d

---

[5] Plaintiffs' arguments about "detect 50 cancers" also fail. *See* GRAIL Reply at 4.

1008, 1023 (N.D. Cal. 2025) (no falsity where plaintiffs "omit the context sandwiched" between statements). They also claim Defendants omitted FDA feedback on Galleri's studies, ignoring this feedback *was* disclosed. MTD 20-21.

**Puffery.** Plaintiffs make the same erroneous puffery arguments refuted above. *Supra* §II.A.3. They further assert the statements are not puffery when viewed in context of the "$8 billion" merger that was "the most monumental transaction in Illumina's history." Opp. 25. But puffing statements cannot be transformed into securities fraud through "extrinsic context." *HRSA-ILA Funds v. Adidas*, 745 F.Supp.3d 1127, 1146 (D. Or. 2024).[6]

**Forward-looking statements.** As for the expected timeline of future FDA submissions, Plaintiffs make the same nonsensical argument addressed above (*supra* §II.A.2) that this prediction is not forward-looking because "the warned of risks—that submission could be delayed past 2023 and GRAIL's clinical studies might be insufficient—had already come to pass." Opp. 26. Again, Plaintiffs fail to explain how a delay "past 2023," could have occurred *two years earlier* in 2021. MTD 22.[7]

### 5.    Comments on GRAIL's 2022 guidance are inactionable.

Plaintiffs' arguments about GRAIL's 2022 revenue guidance fail.

**Forward-looking statements.** Plaintiffs insist the safe harbor does not apply because GRAIL's revenue guidance relied on a knowingly false assumption about the "number of partners across health systems, employers and insurers" GRAIL had signed up. Opp. 28-29. No well-pled fact supports this argument. Plaintiffs admit the 11 partners they alleged were specific to Q1'22. Opp. 29. deSouza, however, was addressing the 34 *total* partners signed up since Galleri's launch in 2021. ¶146; MTD

---

[6] Plaintiffs' cases do not hold otherwise. *See Warshaw v. Xoma*, 74 F.3d 955, 959 (9th Cir. 1996) (assurances that "everything was going fine" actionable when company knew it would never receive FDA approval); *In re BioMarin Sec. Litig.*, 2022 WL 164299, at *12 (N.D. Cal. Jan. 6, 2022) (statements about FDA progress rested on concrete factual representations, including approval timelines and inspection details); *In re Intuitive Surgical Sec. Litig.*, 65 F.Supp.3d 821, 834-35 (N.D. Cal. 2014) (calling a new surgical method a safer alternative not puffery).
[7] The same logic applies to Defendants' 2023 statement predicting "a final FDA submission. . . in 2024/2025." ¶442.

23-24; Ex. 40 at 14 ("up to 34"). Plaintiffs also claim the accompanying cautionary language was not meaningful because the risks "were already occurring." Opp. 29. But Plaintiffs do not even allege what caused the eventual revenue miss, nor which "risks" were already occurring. They only allege revenue later underperformed. That is not enough. *See In re Oracle Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) ("[T]he question is whether [defendant] lacked at least a reasonable basis for his representation *when it was made*.").

**Puffery.** Plaintiffs again argue "context" transforms the statements from puffery to fact. Opp. 28. But, aside from the statements addressed above that were also forward-looking, none contained concrete facts. *E.g.*, ¶¶422, 432; *Cf. In re Quality Sys.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (defendant "did not just say that he believed plenty of opportunities for new system sales existed," he identified exactly what those opportunities were, identifying what proportion of each market).

### 6. The statements about the merger process are inactionable.

Plaintiffs' arguments about the merger process fail.[8]

**Aravanis' recusal.** Acknowledging that only Illumina's Board could approve the merger, MTD 25, Plaintiffs insist the statement that Aravanis was "recused from any decisions to sign and close the GRAIL acquisition" must either mean he was recused from *everything* related to the deal or "recusal" was meaningless because he was not a Board member. Opp. 30-31. But Defendants never said Aravanis was recused from all merger discussions. The statements specifically said Aravanis was recused from "decisions to sign and close." ¶¶465–466. Plaintiffs also argue the statements were misleading, "even though literally true," because Defendants did not disclose that Aravanis was a "co-sponsor and negotiator." Opp. 31. But federal securities laws do not require companies to disclose every fact that might interest

---

[8] Plaintiffs do not dispute that the July 31, 2020, meeting in the S-4 occurred; rather they claim this "meeting was not the beginning of the process." Opp. 32. But merely identifying earlier events "does not provide specific facts demonstrating that the statements at issue [about *this meeting*] were false or misleading when made." *Browning v. Amyris*, 2014 WL 1285175, at *11 (N.D. Cal. Mar. 24, 2014).

investors or enumerate every role underlying a board decision. *See Matrixx v. Siracusano*, 563 U.S. 27, 44-45 (2011).

**D&O insurance.** Plaintiffs misstate Defendants' arguments. Opp. 31. Defendants did not cite the Insurance Matters Agreement ("IMA") to show that insurance and indemnification is common. *Id.* That they are common is undisputed. *Id.* Defendants cite the IMA to show that Defendants specifically disclosed the insurance and indemnification *in connection with this GRAIL merger*. MTD 24. Thus, there was no misleading omission. *See Tadros v. Celladon*, 738 F.App'x 448, 448-49 (9th Cir. 2018) ("[a]s this information was already part of the total mix of information available to investors, defendants' statements were not misleading").

**Working with the EC.** Plaintiffs claim the ELT's intent to "flout" the standstill renders Defendants' statements about continuing to work with the EC false. Opp. 31-32. That is wrong. This claim rests entirely on the say-so of FE5 (who was *not* an ELT member) and is uncorroborated by FE1 (the only FE who *was* an ELT member). ¶173 That, alone, renders it unreliable. *See In re Allied Nev. Gold*, 2016 WL 4191017, at *11 (D. Nev. Aug. 8, 2016) (disregarding CW allegations that "lack corroboration, lack specificity, and [we]re often conclusory[]"). But even so, there is no conflict: Illumina did close the merger and did continue engaging with the EC.

**B. Plaintiffs Fail to Plead a Strong Inference of Scienter.**

Another ground for dismissal is Plaintiffs' failure to plead scienter. Though they try to trivialize their pleading burden, "the strong inference standard presents no small hurdle," demanding "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova v. H.C.W.* 993 F.3d 1097, 1106, 1108 (9th Cir. 2021). The standard for forward-looking statements is even "stricter." *In re iPass Sec. Litig.*, 2006 WL 496046, at *8 (N.D. Cal. Feb. 28, 2006). It requires particularized facts showing the speaker had "*actual knowledge*" the "statement was false or misleading." 15 U.S.C. §78u-5(c)(1)(B)(i). And for every statement—forward-looking or not—courts must also consider "plausible,

nonculpable explanations" for making the statement. *Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 323-26 (2007). The TAC wilts under these standards.

### 1.   Plaintiffs' failure to plead motive undermines scienter.

Though motive, alone, cannot create a strong inference of scienter, its *absence* can create a compelling inference *against* scienter. *Prodanova*, 993 F.3d at 1108.

**No motive for Febbo or Samad.** Plaintiffs point to Febbo and Samad's stock options and earnings-per-share targets, Opp. 51, but do not dispute incentive-based compensation is routine and the TAC alleges no link between their compensation and the GRAIL transaction. *Id.*; MTD 27. Having failed to plead motive, Plaintiffs cannot salvage the case by characterizing ordinary compensation as unusual. *In re Rigel Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (no fraudulent intent "merely because a defendant's compensation was based…on [company's] successes").

**No motive for Thompson**. Plaintiffs cite a statement in a now-abandoned Delaware complaint asserting the Illumina Board was "poisoned by their personal stake" in the GRAIL deal. Opp. 50 (citing ¶¶318-19). But the TAC pleads no personal stake *for Thompson*, nor any allegation tying him to any motive at all.

**No motive for deSouza.** Plaintiffs again compare deSouza's post-merger and 2019 compensation, Opp. 49, ignoring that his 2019 compensation was artificially low because his 2019 equity grant was moved to Q1'20. MTD 27. Further, no allegation ties his compensation to the merger or to any alleged misstatement. In any event, a pay increase—particularly an equity-based one explained by timing—cannot support an inference of scienter absent a link to the alleged fraud, Plaintiffs offer none.[9] *E.g.*, *In re XenoPort Sec. Litig.*, 2011 WL 6153134, at *5 (N.D. Cal. Dec. 12, 2011) ("inference of good faith because the bonuses were paid in stock").

**No motive for Aravanis.** Plaintiffs' motive for Aravanis hinges on their supposition that he "did not need the liquidity" yet sold his GRAIL shares anyway.

---

[9] Even *San Antonio Fire v. Dentsply* noted that incentive compensation is probative of scienter only "if plaintiff shows a *direct link* between the compensation package and the fraudulent statements." 732 F.Supp.3d 300, 318 (S.D.N.Y 2024); Opp. 48.

Opp. 50. No allegation supports that. Regardless, Plaintiffs fail to rebut the obvious, non-culpable inference that Aravanis sold shares when they became freely tradeable. MTD 27; *see Ryan v. FIGS*, 2024 WL 187001, at \*12 (C.D. Cal. Jan. 17, 2024) (sale after end of "lock-up" "not suspicious").

### 2.   Plaintiffs allege no contemporaneous facts to support scienter.

"[T]he lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter. Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will we overlook the failure to allege a plausible motive." *Prodanova*, 993 F.3d at 1108. Plaintiffs come nowhere close to meeting this standard. Plaintiffs' reliance on FE5 cannot fill the gaps, as his re-telling of the inner-workings of nearly everything within Illumina *and* GRAIL is not credible under *Zucco*. 552 F.3d at 995.

**Accounting for GRAIL.** Plaintiffs insist Defendants violated GAAP, but to show scienter, they must allege the violation was "*so obvious*" that Defendants "*must have been aware of it.*" *Webb v. SolarCity*, 884 F.3d 844, 851 (9th Cir. 2018). Here, the opposite is true. Illumina issued over a dozen financial statements reporting GRAIL under the cost method. Each was audited (Forms 10-K) or reviewed (Forms 10-Q) by Ernst & Young LLP ("EY"), Illumina's auditor. Yet there is no allegation EY identified an error in the accounting treatment. Nor is there any allegation the SEC found any material errors in the accounting for GRAIL, even after a 21-month investigation. ¶¶225, 255. If it had, Illumina would have been required to restate its financial statements. *Cf. In re McKesson HBOC Sec. Litig.*, 126 F.Supp.2d 1248, 1274 (N.D. Cal. 2000) (company restated accounting statements "represent[ing] accounting improprieties or irregularities").[10]

---

[10] Plaintiffs also claim the alleged violations were too sophisticated to occur without senior-management involvement, Opp. 44, but that is simply a repackaged core-operations inference. MTD 36; *see City of Southfield Gen. Emps. Ret. Sys. v. Advance Auto Parts*, 2026 WL 438677, at \*7 (4th Cir. Feb. 17, 2026) ("mere misapplication of accounting principles, without corroborating evidence of fraudulent intent, doesn't establish scienter"). Plaintiffs' own cases show scienter requires **specific details** about the **impact** of the alleged GAAP violation. *In re*

Without any contemporaneous facts, Plaintiffs fall back on motive. They argue Illumina used the cost method to hide related-party transactions. Opp. 46. But despite their continued insistence that the cost method allowed Illumina to hide Aravanis' GRAIL ownership and role in the merger, they fail to explain how a different accounting method would have disclosed that information. *Id.* Next, Plaintiffs claim Illumina intentionally reduced its ownership in GRAIL to 19% equity interest to take advantage of the presumption that ownership under 20% should be reported under the cost method. Opp. 46. But the presumption operates on *voting* percentage, not *equity* percentage. MTD 30. In response, Plaintiffs admit Illumina not only reduced its voting power, it did so by giving up the class of shares that had previously given Illumina "significant influence over director elections and veto power over certain corporate actions." Opp. 46 n.9. Thus, Plaintiffs concede that following the equity reduction in 2017, Illumina no longer held the shares giving it significant influence.

**GRAIL financial projections.** Plaintiffs' projections theory is even more far-fetched. It begins with the premise that Illumina Defendants knew the S-4 projections were false because they had access to their own, different false projections. Opp. 34-35 ("both sets of projections were false"). But whether Illumina's own internal projections for GRAIL were "false" is irrelevant; this is a case about public disclosure and there is no dispute Illumina's projections were not disclosed. Regardless, the accuracy of *Illumina's* projections says nothing about whether Illumina Defendants had "actual knowledge" GRAIL could "*never*" meet its projections. *In re Fastly Sec. Litig.*, 2021 WL 5494249, at *16 (N.D. Cal. Nov. 23, 2021). FE5 also alleges that Illumina Defendants "had access to" GRAIL's long-range plan which included a later FDA approval "assumption." Opp. 35. But even if FE5's allegation was sufficient to support scienter—which it is not, MTD 28, 31—that is just another assumption subject to uncertainty. *See In re SolarCity,*

*Montage Sec. Litig.*, 78 F.Supp.3d 1215, 1225-27 (N.D. Cal. 2015) (identifying related-party transactions accounting for up to 71% of revenues).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

274 F.Supp.3d 972, 990 (N.D. Cal. 2017).

**Expected merger benefits.** Plaintiffs identify four supposed "facts" confirming Defendants knew their statements about "accelerating Galleri's adoption" and "saving lives" were false, but the TAC offers no support. Opp. 36-38; App. A.

First, Plaintiffs claim "the Illumina executive responsible for Galleri's regulatory and reimbursement strategy testified that Illumina did not have the funding, experience, or resources to accelerate Galleri[]." Opp. 36-37 (citing ¶271). That mischaracterizes the TAC, which alleges only that Illumina's "Global Market Access head" said Illumina would need a larger budget and team to accelerate Galleri. ¶271; *see also* MTD 18 (citing Ex. 29: Qadan also said Illumina was "continuing to expand its budget and headcount"). Second, Plaintiffs cite Febbo's testimony to argue Illumina "did not include any acceleration efficiency in its financial model." ¶268. That is irrelevant to the question of whether Defendants knew "Illumina lacked the specific infrastructure, expertise, funding, and resources to launch Galleri." Opp. 36; *see Lopes v. Fitbit*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (an admission must "contradict[ ] the substance of an earlier statement and essentially state[] 'I knew it all along'"). Third, Plaintiffs cite GRAIL's CRO's testimony that neither GRAIL nor Illumina analyzed an estimation of acceleration, Opp. 37; ¶270, and Bishop's testimony that he could not quantify any acceleration. That says nothing about *Illumina* Defendants' state of mind when they made the statements— particularly where ***they made no claims to have ever quantified or analyzed the estimated acceleration***. *See* MTD 18-19. Finally, Plaintiffs contend Defendants were "unable to substantiate" any acceleration claim. Opp. 37. But the cited language is from the FTC's decision, ¶105, not any Defendant's *testimony*, and reflects the agency's view of Illumina's legal burden to rebut a prima facie showing of anticompetitive effects, not an evaluation of any public statement about acceleration.

**Clinical efficacy and FDA submissions.** Echoing the arguments above, Plaintiffs contend Defendants knew their statements about Galleri's efficacy (*i.e.*, the

test works) and plans for future FDA submissions were misleading because GRAIL supposedly lacked sufficient clinical data for FDA approval. Opp. 38.

To support that narrative, Plaintiffs rewrite the statements, claiming Defendants "knew that Galleri would never obtain FDA approval for 50 cancers." Opp. 38. But no Illumina Defendant is alleged to have ever claimed Galleri would obtain FDA approval *for 50 cancers*. *See* ¶¶111-113, 273-281. Rather, Plaintiffs challenge a single sentence from Illumina's August 18, 2021 press release: "GRAIL's Galleri blood test detects 50 different cancers before they are symptomatic." Ex. 15 at 7. Plaintiffs do not allege Defendants disbelieved *that* statement, and GRAIL's studies backed it up. Ex. 9 at 2; Ex. 10 at 2-5.

Plaintiffs also argue Defendants knew the statements about efficacy and future FDA submissions were false because FDA "privately informed" them Galleri's studies were insufficient. Opp. 39. But the S-4 disclosed both (i) the modifications GRAIL made to its clinical program after discussions with FDA, and (ii) the status and sufficiency of GRAIL's clinical data. Ex. 1 at 139; *see Lingam*, 2026 WL 438881, at *11 (executives' awareness of 2020 test's limited nature "d[id] not impeach their hope to launch service in Las Vegas by the end of 3Q 2021"). And contrary to Plaintiffs' characterization, FDA never disapproved any application, so there was no "disapproval" to disclose. Opp. 39-40.

Finally, FE5's allegation that deSouza "admitt[ed]" in a September 2020 meeting that "recent data" showed lower Stage 1 detection is far too vague. Opp. 36. Plaintiffs never identify what "recent data," whether it actually reflected a decline, or how FE5 learned any of this. ¶281. They do not even allege FE5 attended the meeting. *See McGovney v. Aerohive*, 2019 WL 8137143, at *15 (N.D. Cal. Aug. 7, 2019) (rejecting allegation where it was "unclear" how CW knew the information).

**GRAIL's revenue guidance.** Plaintiffs do not dispute Illumina Defendants' statements regarding GRAIL's revenue guidance were forward-looking, requiring actual knowledge. MTD 33; Opp. 44. Instead, they speculate Illumina Defendants

must have known GRAIL's full-year guidance was unattainable in February and May 2022 because Samad said Illumina "worked closely" with GRAIL and got "details" on certain assumptions. Opp. 45. But the TAC never identifies what those "details" were. *See Lipton v. PathoGenesis*, 284 F.3d 1027, 1036 (9th Cir. 2002) (no scienter based on existence of data absent hard numbers or other specific information).[11]

Plaintiffs further extrapolate from GRAIL's Q1'22 results to insist its FY'22 guidance had no reasonable basis. Opp. 44-45. But deSouza explained the basis for his confidence in GRAIL's full-year guidance despite lower early-year results. ¶146; MTD 33. That this confidence ultimately proved incorrect "does not demonstrate that any Defendant knew it was unattainable." *Overstock*, 2021 WL 4267920, at *9.

**D&O insurance.** Plaintiffs urge the Court to treat the purchase of D&O insurance for a multibillion-dollar, high-profile transaction as inherently suspicious. Opp. 43-44. In support, they try to transform Defendants' description of the policy as "standard" into evidence of scienter, insisting that the policy was not standard, so calling it standard must have been fraudulent. *City of Hollywood Police Officers' Ret. Sys. v. Citrix*, 649 F.Supp.3d 1256, 1270 (S.D. Fla. 2023). They next rely on the after-the-fact views of a newly appointed director and Icahn. Opp. 43. But they ignore that Icahn has now agreed to voluntarily dismiss his lawsuit without receiving anything in return. MTD 7 n.3; Ex. 17 at 4. The Delaware books-and-records decision is equally irrelevant. Plaintiffs cannot dispute that "credible basis" is Delaware's lowest evidentiary threshold used to justify inspection, not adjudicate fraud. MTD 34. Finally, Plaintiffs point to the policy's cost, Opp. 44, but magnitude is not motive. Preparing for inevitable shareholder litigation following a major acquisition does not indicate fraudulent intent. *See Rosenfeld v. Time*, 2018 WL 4177938, at *1 (S.D.N.Y. Aug. 30, 2018) ("In recent years, over 96% of publicly announced mergers have attracted a shareholder lawsuit.").

---

[11] Plaintiffs also ignore that Illumina and GRAIL were held separate during this period, with confidential information sharing prohibited. MTD 6; Ex. 16 at 2.

**Conflicts of interest.** Plaintiffs again repackage falsity as scienter: claiming that *if* the statements that Aravanis was "recused," and negotiations were "arm's length," and "began on July 7, 2020" were false, scienter automatically follows. Opp. 41-42. That is the very conflation *Citrix* and *Glazer* reject. MTD 34-35. And while *In re Daou*, 411 F.3d 1006 (9th Cir. 2005), noted that falsity and scienter may sometimes be inferred from the same facts, this approach "was abrogated by subsequent Supreme Court decisions that treated falsity and scienter as separate requirements." *Glazer Cap. Mgmt. v. Forescout Techs.*, 63 F.4th 747, 766 (9th Cir. 2023) (noting abrogation of "combined approach" by *Tellabs* and *Matrixx*). Here, the alleged "facts" are Plaintiffs' characterizations of roles and timing and an activist's *post hoc* opinions, not concrete allegations any Defendant believed the statements were false when made.

**Executive departures.** Plaintiffs allege no well-pled fact to support the claim that executives "were forced to leave" due to fraud. Opp. 48. They rely instead on timing, asserting that Aravanis and Febbo left "one day before" an SEC investigation was disclosed. *Id*. But no facts connect the departures to the investigation (which was dropped with no enforcement action). ¶255. Plaintiffs also allege Samad resigned in the middle of "fraud-related disclosures," Opp. 48, yet identify no disclosure tied to him or his work. As for deSouza, they paint his departure as "abrupt," but allege no finding of misconduct or that he was terminated. *Id.* And they concede his departure followed Ichan's "failed proxy contest" to oust him—an explanation unrelated to fraud. *Id.* Their remaining points add nothing: non-executive departures are irrelevant, MTD 35, and "too many to be coincidental" is rhetoric, not fact. Opp. 48.

**Importance of GRAIL transaction.** Plaintiffs concede core operations alone cannot establish scienter. Opp. 47. And, contrary to their claim, an $8 billion merger for a company worth about $70 billion in August 2021 does not add to an inference of scienter. *Advance Auto*, 2026 WL 438677, at *6 (accounting error not "so large that defendants must have known" compared to company's $33 billion revenue).

### 3.    Viewed holistically, Plaintiffs' theory of fraud makes no sense.

Plaintiffs carry on with the incredible theory that Illumina Defendants sought to defraud investors by purchasing GRAIL "even though their internal valuations showed it was worth a fraction of [the] amount [paid]" while "exposing Illumina to hundreds of millions in fines." Opp. 55. Their supposed motive? Plaintiffs insist the Illumina Defendants did it "to pay GRAIL's investors $8 billion." *Id.* But Plaintiffs never explain why they would intentionally cause Illumina to massively overpay— at great cost to the Company and with no personal benefit to themselves—simply to enrich GRAIL's investors. Such a theory is not just unpersuasive, it is incoherent.

Plaintiffs attempt to reframe this case as one where Defendants ask the Court to "infer innocence by hindsight because the alleged misdeeds did not pay off." *Id.* (citing *In re Iso Ray Sec. Litig.*, 189 F.Supp.3d 1057, 1076 (E.D. Wash. 2016)). The "alleged misdeed[]" here is the knowing purchase of GRAIL for multiples of its alleged value. But without any stake in GRAIL, there is no scenario in which any Illumina Defendant could have profited—doing so would only tank the value of their own Illumina shares. The only way any Illumina Defendant could benefit from the deal is if it *succeeded*. Pursuing a deal you believe will succeed is not fraud.

The only compelling inference is the obvious (and non-culpable) one: Defendants reasonably believed, based on studies and evidence before them, that Galleri would help detect cancer early in more patients, and bringing it to market as quickly as possible would save lives. They believed in that mission strongly enough to spend years and millions of dollars fighting for the merger across two continents. This is the ***only*** inference that makes sense. It is not a close call.

### C.    Plaintiffs Fail to Plead Loss Causation.

Plaintiffs were required to identify a disclosure that revealed a previously concealed fact showing that a challenged statement was false when made. ECF 78. In relying on recycled public information, ordinary earnings releases, and events they never "link" to any specific prior statement, *id.* at 7, Plaintiffs fail again.

***August 18, 2021, closure of GRAIL acquisition***. Plaintiffs claim the closing was "corrective" because it supposedly showed Illumina had stopped seeking regulatory approval. Opp. 58. But the TAC alleges no such thing; rather, it admits Illumina held GRAIL separate post-closing, ¶173—precisely because it needed to secure approvals, consistent with every prior representation. The closing may have been newsworthy, but it was not corrective. *See, e.g.*, *Or. Pub. Emps. v. Apollo Grp.*, 774 F.3d 598, 608 (9th Cir. 2014) (no loss causation where statement not "invalidated" by alleged corrective disclosure); *In re UiPath Sec. Litig.*, 2025 WL 2065093, at *19 (S.D.N.Y. July 23, 2025) ("Under no reasonable interpretation did [the disclosure] suggest that the [prior statements] were not entirely true or accurate; it reflected no contradiction, no correction, and no concession of past inaccuracy.").

***November 23, 2021, Diagnostics article***. Plaintiffs do not dispute the data in the *Diagnostics* article was public for five months, arguing instead it was too complex for the market to understand. Opp. 59.[12] But the TAC contains no particularized facts supporting that theory; it never alleges facts suggesting the data required specialized expertise to comprehend or that the market could not evaluate it.[13] Nor would that be plausible given the long interval between the data's release and the article. *See In re Acadia Pharms. Sec. Litig.*, 2021 WL 12103007, at *7-8 (S.D. Cal. Mar. 29, 2021) (it was "implausible" given the passage of time that market would not have already ingested the study). That alone distinguishes *Iso Ray*, 189 F.Supp.3d at 1079-80, which involved a reinterpretation issued within two days of newly released data.

***May 5, 2022, financial results***. Defendants showed the Q1'22 earnings release

---

[12] Plaintiffs' reliance on *Pujo v. EHang Holdings*, 2025 WL 1242324 (C.D. Cal. Mar. 26, 2025), and *In re Genius Brands*, 97 F.4th 1171 (9th Cir. 2024), is unavailing. In *Genius*, a report synthesizing public data was deemed corrective because the data had "little to no probative value in its native state" and was difficult, if not impossible, to access retrospectively. 97 F.4th at 1186-87. Likewise, in *EHang*, the corrective analyses required "scouring for information" and "great effort to locate and analyze information." 2025 WL 1242324, at *13. No comparable barriers exist here.

[13] Under the fraud-on-the-market theory, all publicly available information is digested into the market price; thus, the theory "is a Delphic sword: it cuts both ways." *Mandalevy v. Bofl*, 2018 WL 3032588, at *13 (S.D. Cal. June 19, 2018).

did not reveal any previously concealed fact. MTD 38. So now, Plaintiffs advance a reading of *First Solar* under which *every* earnings miss is inherently corrective. Opp. 61-62 (discussing *Mineworkers' v. First Solar*, 881 F.3d 750 (9th Cir. 2018)). That is not the law. *First Solar* confirmed loss causation can be shown in different ways, *id.*; it did not eliminate the requirement that a plaintiff must allege with particularity that a loss plausibly resulted from prior falsity—a requirement the Ninth Circuit has repeatedly reaffirmed since *First Solar*. *See, e.g.*, *Espy v. J2 Glob.*, 99 F.4th 527, 540 (9th Cir. 2024). Indeed, *First Solar* did not change the basic loss causation principle that an earnings miss is not corrective where, as here, Plaintiffs fail to trace that miss to an alleged misstatement. *See, e.g.*, *In re Facebook Sec. Litig.*, 87 F.4th 934, 956 (9th Cir. 2023) ("disappointing Q2 earnings performance alone cannot satisfy the . . . burden of pleading loss causation."). Nor do a single quarter's results "correct" full-year guidance. *Pollio v. MF Glob.*, 608 F.Supp.2d 564, 574 (S.D.N.Y. 2009) ("[I]t strains credulity to suggest that a company's [Q1] revenues can somehow render that company's full-year guidance fraudulent.").

***June 9-10, 2022, Samad departure & New York Times article***. Because Samad's departure alone cannot establish loss causation, Plaintiffs attempt to bundle it with other events and assert that, collectively, they somehow revealed conflicts and GAAP noncompliance. Opp. 64. But the TAC never explains how Samad's departure—alone or combined with other events—revealed any previously concealed fact. *See Hadian v. Fate Therapeutics*, 2025 WL 2696995, at *22 (S.D. Cal. Sep. 22, 2025) (no loss causation where corrective disclosure "d[id] not provide information from which the alleged misrepresentations might be reasonably inferred").[14]

The *New York Times* article fares no better. Plaintiffs do not dispute the article's criticisms of Galleri were already public. Opp. 59-60. That the same views

___

[14] Plaintiffs rely on *Smilovits v. First Solar*, but that decision rejected inferring a link between the CEO's departure and alleged fraud, noting that "any such inference would be based on pure speculation." 119 F.Supp.3d 978, 997 (D. Ariz. 2015). Plaintiffs ask this Court to draw the same speculative inference here. Opp. 62-63.

were repeated by a new speaker, *id.*, does not transform it into a corrective disclosure. *See, e.g.*, *Espy*, 99 F.4th at 541; *In re Intrexon Sec. Litig.*, 2017 WL 732952, at \*7 (N.D. Cal. Feb. 24, 2017) (opinion based on information known to the market not corrective); *Curry v. Yelp*, 2015 WL 1849037, at \*10 (N.D. Cal. Apr. 21, 2015) (complaints that "added more voices to the chorus" not corrective).

***August 11, 2022, financial results***. Plaintiffs again identify no newly disclosed fact demonstrating prior falsity. Instead, they point to Q2 results and revised full-year guidance informed by new revenue data. Opp. 61. But neither an earnings disappointment nor updated guidance constitutes a corrective disclosure absent some revelation of previously concealed information. *See, e.g.*, *Yaron v. Intersect ENT*, 2020 WL 6750568, at \*10 (N.D. Cal. June 19, 2020) (revised guidance not corrective where plaintiffs failed to connect it to any prior misrepresentation); *Acadia Pharms.*, 2021 WL 12103007, at \*11 (no loss causation where stock decline followed "disappointed earnings"); *Facebook*, 87 F.4th at 956.

***SEC Investigation disclosed on August 10, 2023***. Plaintiffs rely again on the SEC investigation announcement, along with resignations and press coverage. Opp. 63. But "the announcement of an investigation, standing alone, without any subsequent disclosure of actual wrongdoing," does not establish loss causation. *Lloyd v. CVB Fin.*, 811 F.3d 1200, 1209 (9th Cir. 2016). The TAC alleges no finding of misconduct and pleads no particularized facts showing any resignation revealed new information. What the TAC *does* plead is the SEC closed the investigation with no finding of wrongdoing. ¶255. That ends the matter. *See, e.g.*, *Huang v. Higgins*, 2019 WL 1245136, at \*17-18 (N.D. Cal. Mar. 18, 2019) (no loss causation where subsequent disclosures "do not confirm" any "improp[rieties]" regarding the alleged investigation); *Rok v. Identiv*, 2017 WL 35496, at \*18-20 (N.D. Cal. Jan. 4, 2017) (announcement of investigation not corrective when no subsequent correction).

***October 20, 2023, Icahn complaint***. Plaintiffs contend the Icahn complaint revealed conflicts of interest because the allegations had not previously appeared in

a filed lawsuit. Opp. 63. But the TAC alleges Icahn aired those same accusations months earlier. ¶¶180, 450; MTD 40. Allegations do not become "new" when repackaged in a complaint. *See Tchrs.' Ret. Sys. v. Hunter*, 477 F.3d 162, 187-88 (4th Cir. 2007) (complaint not corrective where allegations already public). More fundamentally, the TAC does not identify any challenged statement about a "personal stake" other than Aravanis's, whose GRAIL holdings the TAC admits were disclosed *six months* earlier. ¶180*; see Hoang v. ContextLogic*, 2023 WL 6536162, at *28 (N.D. Cal. Mar. 10, 2023) (no loss causation where "it is unclear what statement [the disclosure] could possibly correct").

*November 9, 2023, goodwill impairment.* A goodwill impairment does not, without more, establish prior statements were false when made. *See Colbert v. Rio Tinto Plc*, 2022 WL 355400, at *3 (S.D.N.Y. Feb. 7, 2022) (no loss causation where "disclosures did not reveal anything about Defendants' alleged fraud or suggest that the impairments should have been taken earlier"). Plaintiffs identify no newly disclosed fact underlying the impairment—no concealed data, no internal admission, no previously unknown regulatory development. Without such allegations, the impairment is not corrective. *See Higgins*, 2019 WL 1245136, at *15-17.

### D.    Plaintiffs Fail to Plead a Scheme Claim.

Defendants never argued that misstatements cannot form the basis of a scheme claim. Rather, the alleged misstatements *here* fail to support a scheme claim for the same reasons they fail to support a misstatement claim. MTD 40 n.27. Plaintiffs insist they plead deceptive conduct *beyond* misrepresentations, Opp. 65, but none of the conduct they identify was publicly disclosed, as required for a scheme claim.[15]

### III.    CONCLUSION

The TAC should be dismissed in its entirety, with prejudice.

---

[15] Plaintiffs' cases do not say otherwise. *See In re Galena Biopharma Sec. Litig.*, 117 F.Supp.3d 1145, 1196 (D. Or. 2015) (pump-and-dump *was* a scheme because "pump" involved public disclosure); *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic*, 845 F.3d 384, 393 (8th Cir. 2016) (paying physicians to publish articles supported scheme claim because publications were public).

Dated:    March 6, 2026

COOLEY LLP


By: */s/ Koji F. Fukumura*
    Koji F. Fukumura

*Attorneys for Defendants Illumina, Inc., Francis A. deSouza, Alexander M. Aravanis, Phillip G. Febbo, Sam A. Samad, and John W. Thompson*