LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
  colleen.smith@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Tel: +1 858 523 3985/Fax: +1. 858.523.5450

Alexander C.K. Wyman (Bar No. 295339)
  alex.wyman@lw.com
355 S. Grand Avenue, Suite 400
Los Angeles, CA 90071
Tel: +1.213.485.1234/Fax: +1.213.891.8763

Meryn Grant (Bar No. 291315)
  meryn.grant@lw.com
10250 Constellation Boulevard, Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500/Fax: +1.424.653.5501

*Attorneys for Defendants GRAIL, LLC (n/k/a GRAIL, Inc.), Hans Bishop, Joshua J. Ofman, and Richard D. Klausner*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Illumina, Inc. Securities Litigation* | CASE NO. 3:23-cv-02082-LL-BJC<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF GRAIL DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge:          Hon. Linda Lopez<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Special Briefing Schedule Ordered |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................2

II.   ARGUMENT ...........................................................................................2

    A.    Plaintiffs' Opposition Confirms No Falsity ........................................2

        1.    Bishop's Statements Were True ..............................................2

        2.    Ofman's Statements Were True ...............................................4

        3.    The GRAIL Defendants Cannot Be Held Liable For Statements They Did Not Make .....................................5

    B.    Plaintiffs' Opposition Confirms No Scienter .....................................6

    C.    Plaintiffs' Opposition Confirms No Loss Causation. .........................7

    D.    Plaintiffs' Opposition Confirms No Scheme .....................................8

III.  CONCLUSION .......................................................................................8

## I.      INTRODUCTION

Plaintiffs brought securities fraud claims against the GRAIL Defendants based on statements expressing optimism for the Illumina acquisition by GRAIL's former CEO (Hans Bishop), statements repeating findings from a clinical trial and describing early customers by GRAIL's President (Joshua Ofman), and an investment in GRAIL by its co-founder (Richard Klausner).  Plaintiffs' allegations come nowhere close to stating a claim.  Plaintiffs concede dispositive loss causation issues for the GRAIL Defendants.  And in the few places where Plaintiffs address the GRAIL Defendants' arguments, they misrepresent both those arguments and the challenged statements.  The GRAIL Defendants should be dismissed.

## II.      ARGUMENT

### A.      Plaintiffs' Opposition Confirms No Falsity

#### 1.      Bishop's Statements Were True

Plaintiffs ignore the substance of Bishop's statements—which reflect his view that Galleri's development would accelerate after the Illumina merger (Stmts. 7, 10, 17, 27) and his opinion about its "potential" to save lives (Stmt. 27).  For the acceleration statements, Plaintiffs argue that Bishop "could not quantify" the expected acceleration and had not discussed "plans to accelerate FDA approval" with Illumina. Opp. at 37-38.  These are red herrings.  Bishop did not try to quantify the expected acceleration and made no representations about discussions with Illumina or Illumina's plans.  Stmt. 10 ("we'll accelerate our ability to realize our mission and goals"); *see also* Stmts. 7, 17, 27 (general descriptions about GRAIL moving "faster").  What matters is that Bishop expected acceleration based on Illumina's vastly superior development and commercialization resources; he did, and Plaintiffs do not plead or argue otherwise.  Ninth Circuit law requires statements to "directly contradict what the defendant knew," but Plaintiffs ignore this requirement, conceding they cannot meet it.  *See* Gr. Br. at 5 (quoting *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 730 (N.D. Cal. 2022)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

For Galleri's "potential" to save lives, Plaintiffs have no response to the common sense and clinically established argument that "early cancer detection *can* save lives." Gr. Br. at 7. Instead, Plaintiffs allege that GRAIL's Product Marketing Regulatory Communications team implemented a policy against saying "that Galleri 'saved lives.'" *See* Opp. at 27 n.3. Even assuming this allegation was true or applied to Bishop's statements—it does not (Gr. Br. at 7)—it's not what Bishop said. He described Galleri's "*potential*" to save lives by detecting cancer early. Stmt. 27.

**Opinions.** Plaintiffs do not meaningfully dispute that Bishop's beliefs about "acceleration" and Galleri's potential are quintessential opinions subject to *Omnicare*. 575 U.S. 175, 186 (2015); *see* Gr. Br. at 10. Plaintiffs cite the wrong standard: *Fecht*, decided twenty years before *Omnicare*, said nothing about opinions. Opp. at 21 (citing *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995)). And unlike the *Fecht* defendants, who knew their "accelerated expansion" program was failing when they touted it, Plaintiffs do not allege Bishop believed Illumina's resources would not help to accelerate Galleri's adoption post-merger. *See Fecht*, 70 F.3d at 1081; Opp. at 21. To the extent Plaintiffs argue that Bishop's statements did not align with "information in Defendants' possession," Plaintiffs identify no contradictory information in Bishop's possession. They cite only to what Illumina allegedly knew. *Id.* at 21-22 ("*Illumina* never had any capability or plans"; "*Illumina* lacked the necessary infrastructure"; "*Illumina's* teams had nowhere near the budget") (emphasis added). Plaintiffs cannot rely on knowledge Bishop did not have to show his opinions were subjectively false. *Omnicare*, 575 U.S. at 189.

**Puffery.** Plaintiffs request a free pass on the challenged puffery statements because "materiality determinations should be left to the jury." Opp. at 20. That is not the law in the Ninth Circuit. Statements incapable of "objective verification," are not actionable. *E.g.*, *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098-99 (9th Cir. 2022) (affirming dismissal of puffery); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620-21 (9th Cir. 2022) (same); *Intuitive*

*Surgical*, 759 F.3d at 1060 (same).  Plaintiffs do not attempt to explain how Bishop's statements could be objectively verified (or disproven), Opp. at 20, and do not attempt to distinguish any cases holding that statements nearly identical to Bishop's were puffery.  Gr. Br. at 12 (collecting cases).  Plaintiff's sole authority on "puffery," did not discuss puffery at all.  Opp. at 20 (citing *Fecht*, 70 F.3d at 1081).

**Forward-Looking.**  Plaintiffs do not dispute that statements similar to Bishop's are routinely dismissed under the safe harbor.  *See* Gr. Br. at 11 (citing cases); *see* Opp. at 22-23 (no response).  Instead, Plaintiffs argue that Bishop's predictions about the merger's effects are not forward-looking statements because they contained "factual assertions about Illumina's existing capabilities." Opp. at 22.  Yet Bishop's statements were not about Illumina's capabilities; he commented on benefits he anticipated from the merger based on Illumina's demonstrably superior resources.  *See* Stmts. 7, 10, 17, 27.  This is classically forward-looking.

### 2.    Ofman's Statements Were True

Plaintiffs cite no authority to support their claim that Ofman's statement that Galleri "can identify 50 cancers" is not an opinion and ignore every case holding that interpreting clinical trial results are inactionable opinions.  Gr. Br. at 9-10; Opp. at 24.  Plaintiffs offer only their competing interpretations of clinical trial results to claim this opinion was false.  Opp. at 24-25.  Fraud-by-disagreement is exactly what *Omnicare* and its progeny prevent.  Gr. Br. at 9-10; *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 420 (2d Cir. 2023) (under *Omnicare*, a "dispute about the proper interpretation of data" is not fraud).  Plaintiffs have not pled, as they must, that Ofman's statement was subjectively false or lacked a reasonable basis.  Plaintiffs do not meet this bar by ignoring clinical trial results—CCGA showing Galleri's ability to detect 50+ cancers—that directly support what Ofman said.[1]

---

[1] Plaintiffs argue Ofman's statement was false because Galleri allegedly cannot detect "50+ cancers *in an asymptomatic population*." Opp at 24.  That's not what he said.  Stmt. 27 (no mention of test population).  Still, this argument ignores PATHFINDER, which showed the "CCGA study was able to replicate itself" in asymptomatic patients.  Ex. 45 at 3297:17-98:07.

Nor can Plaintiffs plead that Ofman's statement was false based on the alleged omission of FDA feedback. Opp. at 23-24. Ofman said nothing about potential FDA approval or the sufficiency of the studies to support approval. ¶ 448.

Finally, Plaintiffs double down on their hindsight challenge to Ofman's January 2022 statement about payors' "positive reception to the value proposition of Galleri." Opp. at 28. Plaintiffs do not dispute that every alleged piece of contradictory information came *after* Ofman spoke. Gr. Br. at 8; Opp. at 28-29. And Plaintiffs concede that subsequent facts corroborated Ofman's optimism: according to Plaintiffs, GRAIL *more than doubled* its customers in Q1 2022. Opp. at 28 (Q1 projections "driven by eight health systems"), 29 (in Q1, GRAIL "signed up 11 total partners"). No pled facts contradict Ofman's statement.

### 3. The GRAIL Defendants Cannot Be Held Liable For Statements They Did Not Make

Plaintiffs agree "it is black-letter law" that an issuer is responsible for information in its securities filings, but nonetheless argue the GRAIL Defendants are liable for revenue projections in Illumina's S-4 because those projections were "attributed to GRAIL." Opp. at 18, 36. That is wrong. Only the "maker"—the person with "ultimate authority over the statement"—can be liable for statements in an S-4. *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011). "[A]cting as the 'source' of allegedly false or misleading information does not mean that such a person had 'ultimate authority' over the statements." *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1007 (N.D. Cal. 2017) (applying *Janus* to dismiss claims against person that gave "key operating metrics"). Plaintiffs offer no alleged facts showing GRAIL held "ultimate authority" over whether and which projections were included in Illumina's SEC filings.[2] This is not "pointing the finger," Opp. at 18, this is a substantive pleading defect that requires dismissal.

_____

[2] Plaintiffs are wrong that *Janus* issues must "be resolved at summary judgment." Opp. 18. Courts routinely resolve *Janus* issues on the pleadings. *E.g.*, *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, *17 (N.D. Cal. Nov. 16, 2020).

### B.      Plaintiffs' Opposition Confirms No Scienter

The Complaint failed to plead scienter, and the Opposition does not cure these defects. *First*, Plaintiffs mischaracterize Bishop's FTC testimony to allege scienter, Opp. at 37-39, but cannot overcome the fact that Bishop's trial testimony matches his public statements. *Compare* Stmt. 10 ("we'll accelerate our ability"), *with* Ex. 44 at 1417:12-25("being part of Illumina will help us accelerate").

*Second*, Plaintiffs remain unable to explain the connection between FDA approval and Ofman's statements about Galleri (which said nothing about FDA approval). There is none. *See* Gr. Br. at 15; *In re Arrowhead Pharms., Inc. Sec. Litig.*, 2017 WL 5635422, at *5, *12 (C.D. Cal. Sept. 20, 2017) (FDA feedback not relevant to scienter when defendant made no "projection about its FDA approval").

*Third*, Plaintiffs rehash falsity arguments about GRAIL's regulatory communications committee to plead scienter for Bishop's statement about Galleri's "potential to save . . . lives," but those arguments fare no better now. Opp. at 40-41. At the pleading stage, Plaintiffs cannot establish scienter based on "disagreement as to the interpretation of scientific data." *Pitman v. Immunovant, Inc.*, 2024 WL 964258, at *19 (E.D.N.Y. Feb. 25, 2024), *report and recommendation adopted*. Plaintiffs also fail to rehabilitate allegations about internal GRAIL policies attributed to unidentified, undescribed "former employees." Gr. Br. 15-16 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)).

*Fourth*, Plaintiffs remain unable to identify a plausible motive for the GRAIL Defendants to inflate Illumina's stock price. Plaintiffs argue that Bishop and Ofman together "netted over $155 million," Opp. 52, but do not allege suspicious sales of Illumina stock at inflated prices. Bishop and Ofman disclosed that they became Illumina stockholders through the acquisition (just like every other GRAIL stockholder), and holding inflated Illumina shares while waiting for fraud to unravel "does not make a whole lot of sense." *Nguyen v. Endologix*, Inc., 962 F.3d 405, 415 (9th Cir. 2020) (dismissing similar allegations). And Klausner's investment in

GRAIL is consistent with his belief in GRAIL.  Finally, Plaintiffs still fail to explain how closing a cash and stock deal at an inflated Illumina stock price would benefit the GRAIL Defendants when they would own fewer and overvalued Illumina shares.

*Fifth*, Plaintiffs invoke the "core operations" theory.  Opp. at 47.  But this theory applies only if Plaintiffs pled "specific information conveyed to management and related to the fraud." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014).  Plaintiffs have not identified any information conveyed to GRAIL's management; their argument that scienter can be inferred for an "important transaction," would eliminate the requirement to plead scienter.  Opp. at 47.

*Finally*, the more compelling inference is still good faith.  Bishop believed Illumina's vast resources would help Galleri get to customers quicker, and that an early cancer detection tool could save lives.  Gr. Br. 17.  Ofman trusted peer-reviewed medical literature about Galleri's capabilities and described early adopters of this technology.  Gr. Br. 17.  Plaintiffs do not overcome this reality.

### C.    Plaintiffs' Opposition Confirms No Loss Causation.

Plaintiffs argue that the Court need not analyze "alleged misstatements and loss-causing disclosures 'side-by-side,'" Opp. at 57, ignoring the law.  *See* Order at 7.  But Plaintiffs must "show a 'causal connection' between the fraud and the loss by tracing the loss back to '*the very facts* about which the defendant lied.'" *First Solar*, 881 F.3d at 753 (emphasis added) (citation omitted).[3]  Plaintiffs fail to do so.

*First*, Plaintiffs recycle their argument that news articles published in November 2021 and June 2022 corrected Ofman's 50 cancers statement, Opp. at 59, ignoring that both articles were published *before* that statement.  Gr. Br. at 18-19.  And Plaintiffs remain unable to identify *facts* in either article that corrected the challenged statements.  Opp. at 59-60.  At most, these articles provided different *opinions* about Galleri's effectiveness, which are not corrective.  Gr. Br. at 19.

---

[3] *Jaeger v. Zillow*, an unpublished class certification decision, did not change this standard.  2025 WL 2741642, *1 (9th Cir. Sept. 26, 2025); Opp. at 56.

*Second,* Plaintiffs fail to connect the dots between lower than expected revenues and the GRAIL Defendants' statements. Instead, Plaintiffs offer only the conclusory assertion that revenue misses "directly undermined Defendants' prior misstatements," without saying which statements or which Defendants made them. Opp. at 61; *see First Solar*, 881 F.3d at 753. Even still, poor financial results are not enough to plead loss causation. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("Loss causation requires more than an earnings miss.").

*Third,* Plaintiffs concede that the SEC investigation alone does not establish loss causation, but now argue it is paired with later events that constitute "something 'more,'" as required to plead loss causation. Opp. at 63 (citing *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016)). But the "something more"—resignations from Illumina's Board, a lawsuit against Illumina, and Illumina's decision to write down GRAIL assets—has no connection to the GRAIL statements.

*Finally*, Plaintiffs abandon any argument that Bishop's acceleration statements and Ofman's value proposition statement were corrected. Gr. Br. at 19. All Plaintiffs offer is a conclusion that "adverse facts . . . came to light," without specifying what those facts were or how they related to these statements. Opp. at 56-57. And even if Plaintiff had pled those missing facts, the "revelation of 'bad news' does not establish loss causation." *Wenzel v. Semiconductor Mfg. Int'l Corp.*, 2021 WL 12312024, at *10 (C.D. Cal. Nov. 18, 2021).

### D.    Plaintiffs' Opposition Confirms No Scheme

Plaintiffs are silent on the scheme claim as to Bishop and Ofman, except to confirm their scheme allegations are "basically a duplicate" of the false statement claims, requiring dismissal. Order at 8; Opp. at 64-65. And there is no alleged concealment of Klausner's investment, which is fatal. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476-77 (1977) (scheme liability requires concealment).

### III.   CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Dated:  March 6, 2026

LATHAM & WATKINS LLP

By: */s/ Colleen C. Smith*
Colleen C. Smith
*Attorneys for the GRAIL Defendants*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW