UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE ILLUMINA, INC. SECURITIES LITIGATION,

Case No.: 23cv2082-LL-BJW

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

**[ECF Nos. 84, 86, 87]**

Before the Court are Defendants' Motions to Dismiss Third Amended Consolidated Class Action Complaint ("Motions). ECF Nos. 84, 87. Plaintiffs opposed and Defendants replied. ECF Nos. 89, 92, 94. These matters are fully briefed, and the Court deems them suitable for determination without oral argument pursuant to Civil Local Rule 7.1. Accordingly, Illumina's request for oral argument [ECF No. 86] is **DENIED**. For the reasons below, the Court **GRANTS** Defendants' Motions.

## I. INTRODUCTION

The background of this case is summarized in a prior order [ECF No. 78] and will not be repeated. After Defendants' first motions to dismiss were granted with leave, Plaintiffs filed Third Amended Consolidated Class Action Complaint ("TAC"), alleging three causes of action under the Securities Exchange Act of 1934 ("Exchange Act"): (1) violation of § 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder; (2) violation of § 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated

thereunder; and (3) violation of § 20(a) of the Exchange Act. ECF No. 81 ¶ 484–520. Defendants filed the instant Motions to Dismiss TAC, arguing that Plaintiffs, despite adding new allegations, still fail to adequately plead (i) a material misrepresentation or omission, (ii) scienter, and (iii) loss causation under Section 10(b) and Rule 10b-5(b), each independently warranting dismissal. *See generally* ECF Nos. 84, 87.

## II. JUDICIAL NOTICE AND INCORPOATION BY REFERENCE

Pursuant to Federal Rule of Evidence 201(b), courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Unlike judicial notice, "incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* (citation omitted). Thus, defendants may seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim . . . However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*

Here, Plaintiffs ask the Court to take judicial notice of a court order regarding Defendants' demurrer to Plaintiffs' consolidated complaint in a related state court proceeding, *In re Illumina, Inc. Shareholder Litigation*, No. 24-CIV-00585 (Cal. Sup. Ct. Cnty of San Mateo Sept. 16, 2025), attached as Exhibit A to their Opposition. ECF No. 91. Courts generally take judicial notice of orders and filings in other courts. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may "take judicial notice of court filings and other matters of public record"). Defendants do not oppose Plaintiffs' request. Therefore, the Court takes judicial notice of the court order.

Next, Illumina and GRAIL Defendants ask the Court to take judicial notice of Exhibits 1 through 46, submitted in support of their Motions. ECF Nos. 85, 88. These exhibits consist of SEC filings, press releases, investor call transcripts, court filings, trial testimonies, and articles, which courts routinely accept as matters properly subject to judicial notice. *See Dreiling v. American Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1122–23 n.5 (S.D. Cal. 2012). While all the documents requested to be considered by Defendants are properly incorporated by reference, subject to judicial notice, or both, the Court relies on only Exhibits 1 and 26, which Plaintiffs incorporated by reference, in deciding Defendants' Motions.

## III. LEGAL STANDARD

"To state a claim under Section 10(b) of the [Securities] Exchange Act and Rule 10b-5, the complaint must plausibly allege: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Weston Family P'ship v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022).

Parties may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6); *see also Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003) (requiring Rule 12(b)(6) to "be read in conjunction with Rule 8" which requires a short and plain statement showing that the pleader is entitled to relief). To survive a Rule 12(b)(6) motion, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," courts are not required to accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In addition to these ordinary pleading requirements, a "securities fraud complaint under § 10(b) and Rule 10b-5 must satisfy" the "heightened pleading requirements" of "Rule 9(b)" and the Private Securities Litigation Reform Act ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig*., 704 F.3d 694, 701 (9th Cir. 2012). That is, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must also "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1)–(2); *see also Weston*, 29 F.4th at 619 (explaining that under the "particularity requirements" of Rule 9(b) and the PSLRA, allegations of "fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"); *Or. Pub. Emps. Ret. Fund v. Apollo Grp*., 774 F.3d 598, 605 (9th Cir. 2014) ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation.").

## IV. DISCUSSION

### A. Section 10(b) and Rule 10b-5(b) (Claim 1)

Defendants contend that Plaintiffs fail to plead (i) a material misrepresentation or omission, (ii) scienter, and (iii) loss causation under Section 10(b) and Rule 10b-5(b), each independently warranting dismissal. *See generally* ECF Nos. 84, 87. The Court finds that Plaintiffs have not adequately pled a material misrepresentation or omission to state a claim under § 10(b) and that a dismissal is warranted on this basis.[1]

#### 1. Material Misstatement or Omissions (Falsity)

To meet the first element of their § 10(b) claim, Plaintiffs "must show that [Defendants] made a statement [or omission] that was '*misleading* as to a *material* fact.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *Basic Inc. v.*

[1] Because the Motions can be resolved on this ground, the Court declines to address scienter and loss causation. However, the Court notes that the deficiencies discussed in this Order raise similar concerns for scienter and loss causation.

*Levinson*, 485 U.S. 224, 238 (1988), emphasis in original). When analyzing whether a plaintiff has met this burden, courts in the Ninth Circuit apply "the objective standard of a 'reasonable investor.'" *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023) (internal citation omitted). A statement or omission is material "when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Matrixx*, 563 U.S. at 38 (quoting *Basic*, 485 U.S. at 231–32). In other words, a "reasonable investor" must be substantially likely to "consider [the fact] important in his or her decision making." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003).

A finding on materiality "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S. Ct. 2126, 2133, 48 L. Ed. 2d 757 (1976). "[T]hese assessments are peculiarly ones for the trier of fact." *Id.* "Only if . . . reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law" at the pleading stage. *Id.* (internal quotation marks and citations omitted). Otherwise, materiality "is a question for resolution at trial." *S.E.C. v. Phan*, 500 F.3d 895, 912 (9th Cir. 2007).

In addition to materiality, Plaintiff must also "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Further, "if an allegation regarding the statement or omission is made on information and belief, the complaint must state with particularity all facts on which that belief is formed." *Id.* Misleading is not synonymous with incomplete. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Rather, it means that a statement or omission "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* "Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 899 F.3d at 1008–09 (citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014)).

Plaintiffs allege Defendants made materially false or misleading statements about (1) GRAIL's financial valuations; (2) Illumina's ability to "accelerate" Galleri; (3) the benefits of the acquisition; (4) Galleri and FDA submissions; (5) GRAIL revenue guidance; and (6) accounting treatment for GRAIL. *See generally* TAC. The Court will analyze each.

**i. GRAIL's Financial Valuations**

Plaintiffs allege that the GRAIL's financial projections on Illumina's Form S-4 in November 2020 were materially false and misleading because Illumina's internal valuations of GRAIL were substantially lower than the ones that were publicly presented. TAC ¶¶75–85, 367–372. Illumina Defendants argue that there was no misrepresentation because Form S-4 "expressly stated they were prepared by GRAIL, not Illumina" (ECF No. 84-1 at 14) while GRAIL Defendants argue that that they cannot be held liable for Illumina's statements (ECF No. 87-1 at 12–13). The Court agrees.

First, there was no misrepresentation on Illumina Defendants' part because GRAIL's financial projections and valuations on Form S-4 "were based on estimates, assumptions and judgements made by GRAIL management." TAC ¶ 369. In fact, Form S-4 expressly stated that "Illumina did not participate in the preparation of, or otherwise endorse or approve, the GRAIL Forecasts." Ex. 1 at 170, ECF No. 84-6.

Second, GRAIL Defendants cannot be held liable when Plaintiff pled no facts establishing that any GRAIL Defendant signed Illumina's statements before the acquisition closed. *Borteanu v. Nikola Corp.*, 2023 WL 11017679, at *5 (D. Ariz. Dec. 8, 2023) ("'maker liability' will only attach to Defendants for the SEC filings or press releases which they personally signed"). Even if GRAIL Defendants had signed Form S-4, GRAIL's financial projections fall squarely within PSLRA's safe harbor provision. 15 U.S.C. § 78u-5(c).

Generally, the safe harbor provision protects forward-looking statements so long as they are (i) identified as forward-looking and are accompanied by meaningful cautionary language, (ii) immaterial, or (iii) made without actual knowledge of falsity. 15 U.S.C. § 78u-5(c)(1). The safe harbor expressly covers "a statement containing a projection of

revenues," "a statement of future economic performance," and "any statement of the assumptions underlying or relating to any [such] statement." 15 U.S.C. §§ 78u-5(i)(1)(A), 78u-5(i)(1)(C), 78u-5(i)(1)(D). Here, the forecasts were accompanied by cautionary statements explaining that "[a]lthough the GRAIL Forecasts . . . are presented with numerical specificity, [they] . . . reflect assumptions, estimates and judgments that are inherently uncertain and . . . subject to significant business, economic, and competitive risks and uncertainties that could cause actual results to differ materially from those contained in the unaudited GRAIL Forecasts." Ex. 1 at 170, ECF No. 84-6. It further "caution[s] not to rely on the GRAIL Forecasts or other unaudited forecasted financial information included herein." *Id.* at 171. Therefore, GRAIL's financial projections were accompanied by meaningful cautionary and language, and the Court finds that they are protected forward-looking statements. Thus, Plaintiffs have not alleged sufficient facts to show that GRAIL's financial projections were materially false or misleading.

**ii. Statements about Illumina's Ability to "Accelerate" Galleri**

Plaintiffs allege that Defendants misrepresented Illumina's ability to "accelerate" Galleri's adoption because "Illumina lacked the capability to accelerate Galleri, including because Illumina lacked the critical manufacturing, commercial, sales, and marketing capabilities necessary to develop and sell Galleri" and Illumina never had any plan to accelerate Galleri's commercialization, regulatory approval, or payor reimbursement. TAC ¶¶ 346–351, 354–55, 357–59, 380–82, 384, 387–88, 392–93, 395–396, 398–99, 403–04, 407–10, 413–17, 419–20, 438–39, 444–45, 459–60. Defendants argue that these were optimistic statements about the benefits of the merger that constitute inactionable puffery, opinions, and/or forward-looking statements. ECF No. 84-1 at 14.

While statements about the acquisition's benefits at first seem like inactionable puffery and corporate optimism, when coupled with Illumina's touted capability, such statements may be actionable, material misrepresentation. For example, Plaintiffs allege that "when Illumina announced the acquisition, Defendant deSouza told investors that Illumina's 'reason to acquire [GRAIL] is because we have very clear line of sight how we

can accelerate the plan that they are on today'" and touted that "Illumina did in fact 'have a clinical sales team,' and also 'manufacturing regulatory, reimbursement, clinical labs, clinical sales and marketing' capabilities that were necessary to 'accelerate' Galleri's adoption." TAC ¶ 95. However, Plaintiffs have not sufficiently alleged facts to show that Defendants lacked the capacity. For instance, Plaintiffs allege "Illumina's Board and senior-most executives specifically discussed how Illumina lacked key infrastructure required to launch Galleri, and how entering the cancer-screening business would require Illumina to acquire and build new capabilities and expertise the Company did not have." *Id.* ¶ 99. However, this does not meet the heightened pleading requirements of Rule 9(b) and PSLRA because TAC does not specify *who* on Illumina's Board and senior-most executive discussed *what* specifically, *when* and *where* these discussions occurred, and *how* these discussions demonstrate that Defendants knew these statements were false or misleading. Accordingly, Plaintiffs have not sufficiently pled that Defendants' statements regarding Illumina's ability to accelerate Galleri's adoption were false or misleading.

**iii. Statements about the Benefits of the Acquisition**

Plaintiffs also allege that Defendants repeatedly misrepresented that the acquisition would bring about "synergies" and that Galleri's adoption would "save lives." TAC ¶¶ 373–76, 380, 383, 385–86, 389–92, 394–95, 397–98, 400, 403–05, 407–10, 412, 416, 418–19, 421, 425–26. Defendants argue that these statements are "textbook puffery" and inactionable opinions. ECF No. 84-1 at 14–16. The Court agrees.

Courts distinguish corporate puffery from misrepresentation. *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). "Puffing concerns expressions of opinion, as opposed to knowingly false statements of fact: When valuing corporations,[ ] investors do not rely on vague statements of optimism like good, well-regarded, or other feel good monikers. This mildly optimistic, subjective assessment hardly amounts to a securities violation." *Id.* (internal quotation marks and citation omitted). On the other hand, statements that are "capable of objective verification are not 'puffery' and can constitute material misrepresentation." *Id.*

Here, Defendants repeatedly stated that the acquisition "would result in various benefits, including among other things, operating efficiencies, synergies, and cost savings" (TAC ¶¶ 97–98, 373) and that the acquisition would "save "tens of thousands of lives" on numerous occasions (*id*. ¶¶ 66, 71, 73, 96, 134, 380, 395). First, such statements are vague statements of optimism that reasonable investors would not rely on. *See e.g.*, *Lamontagne v. Tesla, Inc.,* No. 23-CV-00869-AMO, 2024 WL 4353010, at *12 (N.D. Cal. Sept. 30, 2024), *aff'd sub nom. Oakland Cnty. Voluntary Employees' Beneficiary Ass'n v. Tesla Inc.*, No. 25-55, 2025 WL 3459471 (9th Cir. Dec. 2, 2025) (finding statements like the "autopilot is about as safe as a normal driver on average" were not misleading even where there were safety issues with the technology); *Jui-Yang Hong v. Extreme Networks, Inc.*, No. 15-CV-04883-BLF, 2017 WL 1508991, at *11 (N.D. Cal. Apr. 27, 2017) (finding statements that the merger would create "synergies" were not actionable).

Second, Plaintiffs' argument that these statements were materially false and misleading is easily rebutted by evidence. For instance, Plaintiffs claim that Defendants deSouza and Samad stated that "We do not expect material synergies to the transaction" in an internal September 2020 Illumina FAQ document (TAC ¶¶ 99, 110), thereby misrepresenting the investors about operating synergies. However, the actual document shows that Plaintiffs merely cherry-picked the first part of their responses and did not include the rest of their responses, which stated they expected "there will be opportunities for us to leverage GRAIL's machine learning and clinical trial expertise into other areas of the business." Ex. 26 at 10, ECF No. 84-31.

Plaintiffs also add that "FE5 recalled that, at the time the acquisition was announced, the Illumina Executive Defendants expected that the acquisition would result in hundreds of millions of dis-synergies." However, without more details as to who these "Executive Defendants" are, what those "dis-synergies" are, and how those expectations show falsity, such general statement does not meet the heightened pleading requirements of Rule 9(b) and PSLRA.

Moreover, Plaintiffs claim that there was no evidence that Galleri could save lives because "none of the Galleri studies came close to supporting [such] conclusions" and that real-world evidence from SFFCPF[2] and City of Mesa suggested that Galleri had no effect on saving lives. TAC ¶ 136. However, the City of Mesa testing round began in October 2021 (*id.* ¶ 125) and the San Francisco Firefighters testing round was conducted in December 2022 while the statements about the potential of the acquisition saving lives were made before these tests—in July 2021 (*id.* ¶ 66) August 2021 (*id.* ¶¶ 71, 96, 134, 135), and September 2021 (*id.* ¶ 73). Thus, Plaintiffs fail to provide "contemporaneous reports or data" showing that the statement was false or misleading when made. *Nursing Home Pension Fund Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).

Nevertheless, Plaintiffs allege that Defendant deSouza "internally admitted his statements that the acquisition would 'save lives' were not supported by any actual facts'" according to a "former member of Illumina's Executive Leadership Team" (TAC ¶ 139) and that GRAIL had a "policy of prohibiting GRAIL employees from publicly representing that Galleri 'saved lives'" (*id.* ¶¶ 283–284). These vague allegations by themselves are insufficient to satisfy the heightened pleading requirements under Rule 9(b) and PSLRA.

Accordingly, Plaintiffs fail to allege sufficient facts to show that Defendants' statements regarding the benefits of the acquisition were false or misleading. However, the Court will grant Plaintiffs' request for leave to amend so that they can plead detailed facts to show that Defendants' statements about the acquisition "saving lives" were false or misleading.

**iv. Statements about Galleri and FDA Submissions**

Plaintiffs allege that Defendants made materially false and misleading statements about Galleri's effectiveness and the FDA submissions. TAC ¶¶ 352–53, 355–56, 377–78, 389–90, 407–11, 436–37, 440–43, 446–49, 457–58, 461. Defendants contend that these

[2] SFFCPF is not defined in the TAC. *See generally* TAC. The Court presumes that this is referring to the testing done with San Francisco firefighters.

statements about Galleri's efficacy constitute inactionable opinions, puffery, and forward-looking statements. ECF No. 84-1 at 20–22. This Court agrees.

First, Plaintiffs improperly rely on testimonies and evidence from FTC proceedings that occurred in August 2021 (TAC ¶ 64) to argue that Defendants made false statements about Galleri's clinical effectiveness in September 2020. TAC ¶¶ 117, 352–53. Second, Plaintiffs rely on unidentified "FE2, FE3, and FE5," "[f]ormer GRAIL and Illumina employees," and "former industry consultant" who vaguely state that "it was widely understood at GRAIL and Illumina that Galleri would never obtain FDA approval for 50 cancers." *Id.* ¶¶ 119, 120, 132. But these general allegations do not satisfy Rule 9(b) and PSLRA's requirements to plead with particularity the "who, what when, where, and how" of the alleged fraud. *See Weston Fam. P'ship v. Twitter*, 29 F.4th 611, 619 (9th Cir. 2022). Therefore, Plaintiffs have not sufficiently alleged that Defendants' statements about Galleri and FDA submissions constitute material misrepresentation.

**v. Statements about GRAIL's Revenue Guidance**

Plaintiffs claim that after closing the acquisition, Defendants repeatedly issued false guidance for GRAIL, misrepresenting the sources of GRAIL revenue, and falsely stating that GRAIL was "on track" to meet its revenue targets. *See* TAC ¶¶422–24, 427–35. Defendants argue that these statements are inactionable puffery and protected forward-looking statements under PSLRA's safe harbor. ECF No. 84-1 at 22–23. The Court disagrees.

For example, Plaintiffs alleges that on January 10, 2022 at the JPMorgan Healthcare Conference, Defendant deSouza stated that "GRAIL expects strong revenue in the range of $70 million to $90 million as their Galleri test gains traction." TAC ¶ 143. At first, such statement seems like a forward-looking statement that is protected under the safe harbor provision; however, Defendants do not argue that such statement was accompanied by meaningful cautionary language. *See generally* ECF Nos. 84, 87. On the other hand, Plaintiffs allege that Defendants knew that the reported guidance was "unachievable" (TAC¶ 150): "before Illumina publicly reported the $70 to $90 million guidance, GRAIL's

SVP of Sales Michael Vicari objected to doing so and told GRAIL senior management that guidance was unsupportable based on GRAIL's sales experience to-date." *Id.* ¶ 149. In fact, "GRAIL sales employees responsible for Galleri sales during [2020 through 2022] confirmed Vicari's account and said that it was apparent to GRAIL's senior leadership that the reported guidance was unachievable." *Id.* ¶ 150.

However, the Court is not persuaded that Plaintiffs have sufficiently alleged facts to show that Defendants purportedly knew that the revenue guidance was false or misleading. While Plaintiffs allege that Vicari told GRAIL senior management that the guidance was unsupported, Plaintiffs fail to allege who at the senior management Vicari expressed his concern, when and where this communication occurred, and exactly what was discussed in order to meet the heightened pleading requirements under PSLRA and Rule 9(b). Accordingly, the Court will grant Plaintiffs' request for leave to amend so that they can plead detailed facts to show that Defendants' statements regarding GRAIL's revenue were false or misleading.

**vi. Accounting Treatment for GRAIL**

Plaintiffs allege that Defendants also misrepresented the accounting treatment for GRAIL in Illumina's quarterly and annual SEC filings. TAC ¶ 468. Specifically, Plaintiffs allege that Illumina improperly accounted for GRAIL under the cost method, instead of the equity method. *Id.* ¶ 470. Defendants contend that under a recent Ninth Circuit precedent, *Hunt v. PricewaterhouseCoopers LLP (PwC)*, 159 F.4th 603 (9th Cir. 2025), GAAP-based statement are inactionable opinions "when the underlying accounting provision requires judgment." ECF No. 84-1 at 9. The Court agrees.

Here, Plaintiffs take issue with Defendants' subjective judgment–Defendants' application of one method of accounting over another, but that is not enough to plead subjective falsity. *See e.g.*, *Hunt*, 159 F.4th at 617 ("accounting judgments" were "subjective opinions" and not "untrue facts or information"); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, 856 F.3d 605, 618 (9th Cir. 2017) ("Plaintiff's pleading of its own [accounting] calculations" with different conclusion did not allege

subjective falsity). Aside from disagreeing with Defendants' accounting judgment, Plaintiffs fail to allege that Defendants' subjective opinions were based on untrue statements of facts or information that they did not believe. *See Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184–85, 194 (2015).

Accordingly, the Court finds that Plaintiffs have not sufficiently alleged that Defendants' statements concerning accounting for GRAIL were false or misleading.

***

Because Plaintiffs have failed to plead a material misrepresentation or omission, Plaintiffs cannot state a claim under Section 10(b). Therefore, the Court **DISMISSES** Plaintiff's first claim.

**B. Section 10(b) and Rule 10b-5(a) and (c) (Claim 2)**

Plaintiffs' second claim is for Defendants' alleged scheme to defraud investors under Section 10(b) and Rule 10b-5(a) and (c). *See* TAC ¶¶ 496–505. These laws make it illegal to use any "scheme" to "defraud" or to "engage in any act" that "would operate as a fraud or deceit" upon another person "in connection with the purchase or sale of any security." *See* 17 C.F.R. § 240.10b-5(a), (c). A "scheme liability claim can depend on misstatements that also violate subsection (b)," and, when it does, the claims will often rise or fall together. *See Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022).

Here, Plaintiffs' scheme liability claim under Rule 10b-5(a) and (c) is basically a duplicate of their first fraud claim under Rule 10b-5(b). *See* TAC. ¶¶ 496–505 (alleging that Defendants' misleading actions "artificially inflated" Illumina stock, which Plaintiffs purchased, causing them to then "suffer losses when the stock price declined in response to the disclosure detailed herein."). This "scheme consists entirely of" the allegations underlying Plaintiffs' first claim under Rule 10b-5(b), so it "fails for the same reasons." *See Kang*, 620 F. Supp. 3d at 902; *In re AGS, Inc. Sec. Litig.*, No. 20-cv-1209-JCM-NJK, 2024 WL 581124, at *5 (D. Nev. Feb. 12, 2024) (finding that when the "same set of alleged facts form the basis of fraud under both theories of liability" and the "plaintiff fails to state

a claim for relief under claim one" for Rule 10b-5(b) liability, "the scheme liability claim necessarily fails"). Finding the same, the Court **DISMISSES** claim two.

**C. Section 20(a) (Claim 3)**

Under § 20(a) of the Exchange Act, "a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates a primary violation of federal securities law and that the defendant exercised actual power or control over the primary violator." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (internal quotation marks and citations omitted). Here, Plaintiffs allege that Illumina and GRAIL Executives, having considerable control and authority over their companies, are thus liable for any underlying federal securities violations. *See* TAC ¶¶ 507–20. However, since Plaintiffs have not sufficiently pled a § 10(b) violation, this claim is **DISMISSED** as well. *See NVIDIA Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) ("To establish a cause of action under this provision, a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5, and then show that the defendant exercised actual power over the primary violator."); *Zucco*, 552 F.3d at 1007 ("Section 20(a) claims may be dismissed summarily, [too], if a plaintiff fails to adequately plead a primary violation of section 10(b).").

**D. Leave to Amend**

If the Court determines that a complaint fails to state a claim, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990) (internal citation and quotations omitted); *see also Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). The Court finds that it is possible for Plaintiffs to correct the defects outlined above; therefore, Plaintiffs' request for leave to amend is **GRANTED**.

V. **CONCLUSION**

Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss TAC but with leave to amend. By **October 21, 2026**, Plaintiffs must file any amended complaint. If

Plaintiffs fail to do so by that date, the Court may enter a final order dismissing this case, based both on failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: September 30, 2026

Honorable Linda Lopez
United States District Judge